UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

M2 CONSULTING, INC.

Plaintiff,

v.

MRO SOFTWARE, INC.

Defendant.

C.A. No. 03-12589-GAO

### DEFENDANT/PLAINTIFF-IN-COUNTERCLAIM'S
### MOTION TO COMPEL DISCOVERY

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, Defendant/Plaintiff-in-Counterclaim MRO Software, Inc. ("MRO") respectfully submits this motion requesting that the Court order that M2 Software, Inc. ("M2"): (a) provide a sworn response to MRO's Interrogatories and supplement its Answers to Interrogatories Nos. 1, 3-6, 8-10, 13, 15-18, 20-23 and 25 with sufficient specificity and detail, and that (b) M2 be ordered to provide all documents responsive to MRO Document Requests Nos. 3-6, 14-17, 20, 22, 31, 33 and 40, and provide a sworn statement from its senior-most corporate officer certifying that M2 has fully responded to all of MRO's Document Requests.

Further, pursuant to Rule 37(a)(4), MRO asks that the Court require M2, or its attorneys (or both of them), to pay MRO the reasonable expenses incurred in making this motion, including attorneys' fees.

### PRELIMINARY STATEMENT

Plaintiff/Defendant-in-Counterclaim M2 commenced this lawsuit against MRO more than a year ago, seeking damages in excess of $8 million. The gravamen of M2's complaint

arises out of a distribution agreement (the "Agreement") under which MRO authorized M2 to host MRO's flagship software product, "MAXIMO" over the Internet. M2's claims include misrepresentation, breach of contract, promissory estoppel and unjust enrichment.[1]

According to M2, MRO made misrepresentations, inducing M2 to enter into the Agreement. During the course of the contract, M2 allegedly shared "proprietary information concerning the development and implementation of [M2's technology], including but not limited to confidential and proprietary scientific, technical, and business information concerning the development of and deployment of a computing infrastructure which M2 Consulting uses to host MAXIMO via the Internet." (Amended Complaint, par. 41).

In addition, M2 claims that it forbore from the opportunity to sell M2 to a third party based on MRO's representations (Complaint, par. 45), and that it invested "hundreds of thousands of dollars" to create a computer infra-structure in reliance on expected business from MRO. (Complaint, par. 47).

Despite the serious nature of its claims and the significant damages it is seeking, M2 has refused to provide meaningful responses to MRO's discovery requests. M2 has failed to serve sworn Interrogatory Answers, failed to identify its trade secrets and proprietary information or provide any documents relating to them, failed to identify the alleged fraudulent statements, failed to provide documents relating to the alleged third-party acquisition, and failed to produce documents related to M2's alleged investments in infrastructure. Moreover, where it has not

---

[1]  These counts are contained in M2's Amended Complaint, which the Court allowed on January 19, 2005. MRO's claim for "unjust enrichment" (Count VII in the Amended Complaint and Count II in the Complaint), is a claim for trade secret misappropriation by another name. M2 alleges that it owns valuable trade secrets, that these trade secrets were disclosed to MRO in confidence, and that MRO is using or plans to use these trade secrets. (Amended Complaint, pars. 109-122).

objected altogether, M2 has produced approximately forty thousand emails (apparently representing every email communication between M2 and MRO, as well as between M2 and its prospective or actual customers relating to MRO's MAXIMO product), and told MRO to find the responsive information in those files.

MRO has gone to great lengths to try to resolve the discovery matters raised in this motion, but has been unable to do so. After receiving M2's discovery responses, MRO's counsel held lengthy discovery teleconferences in an effort to resolve M2's objections, its failure to provide information, and its failure to provide signed Interrogatory Answers. However, even these conferences have failed to yield a response from M2. M2 has steadfastly refused to supply MRO with meaningful specifics regarding the core allegations in this case. As a result, MRO was required to make the present motion.

**ARGUMENT**

**I.    MRO's Document Requests and Interrogatories to M2**

On August 6, 2004, MRO served its First Request for the Production of Documents ("Document Requests"), on M2. (Exhibit A). M2 served its written Responses ("Responses") on September 13, 2004. (Exhibit B). Also on September 13, 2004, M2 produced approximately 1,800 pages of hard copy documents as a portion of its document production. M2 then produced two CDs and one DVD with additional documents. M2 provided MRO with the first of these two CDs on October 6, 2004, which included one enormous text file, lacking attachments. After several discovery conferences regarding this problem M2 agreed to provide its electronic documents in a new, readable (PST) format. On November 16, 2004, M2 produced a CD with one PST file containing approximately 1,000 e-mails, and on November 24, 2004, M2 produced a DVD with a PST file holding more than 39,000 e-mails.

3

On October 25, 2004, MRO served its First Set of Interrogatories ("Interrogatories") on M2. (Exhibit D). On December 3, 2004, M2 served a copy of its answers ("Answers") by facsimile (Exhibit D). However, the Answers were not signed under oath, and to this day, two months later, MRO has not received an original copy signed under oath.

On December 6, 2004, Kurt Bratten, Esq., attorney for MRO, sent a letter to Mark Resnick, Esq., attorney for M2, concerning numerous shortcomings in M2's Interrogatory Answers. On December 13, 2004, at MRO's urging, Mr. Bratten and Mr. Resnick held a lengthy teleconference (the "Discovery Conference") in an attempt to resolve M2's incomplete document production and deficient Interrogatory Answers. During the Discovery Conference M2's attorney agreed to provide an original version of M2's Interrogatory Answers signed under oath, and to supplement its responses to Interrogatories Nos. 9, 10, 17, 18, 22 and 25.

Mr. Bratten sent Mr. Resnick letters on December 15, 2004 and December 22, 2004, confirming the substance of the Discovery Conference, and requesting that M2 specify when it would fix its discovery failures. Mr. Bratten's letters of December 15, 2004 and December 22, 2004 are attached at Exhibits E and F, respectively. However, despite M2's agreement to provide a copy of its Interrogatory Answers signed under oath, supplement its responses to Interrogatories Nos. 9, 10, 17, 18, 22 and 25 and respond further to the matters discussed during the Discovery Conference on December 13, six weeks later M2 has failed to take any action at all. In fact, M2 has not even responded to the letters dated December 15 and December 22, 2004, effectively stonewalling discovery matters since mid-December 2004.

II.    **M2 Should be Ordered to Respond to MRO's Interrogatories With Specificity and in Detail**

M2's Answers to MRO's Interrogatories are grossly deficient.  M2 should be ordered to provide supplemental responses, and ordered to pay MRO's expenses in bringing this motion.

**MRO Has Refused to Provide Original Sworn Answers.**  Fed. R. Civ. P. Rule 33(b) requires that Interrogatory Answers be signed under oath.  Only objections may be signed by a party's attorney.  Ignoring this fundamental rule, on December 3, 2004, M2 served MRO, via facsimile only, a copy of its Interrogatory Answers signed only by counsel.  (Exhibit D).  During the Discovery Conference on December 13, 2004, M2's counsel agreed to correct this defect. However, to this date M2 has failed to serve original Answers signed under oath.

**M2 Has Failed to Correct Interrogatory Answers That It Admitted, in Conferences with MRO, Were Deficient.**  During the Discovery Conference M2's counsel acknowledged that his client's Answers to <u>Interrogatories Nos. 9, 10, 17, 18, 22 and 25</u> were deficient and agreed to supplement them.  (Bratten Letter of December 22, 2004; Exhibit F).  However, no supplemental responses have been served on MRO, and M2 has ignored letters requesting a date certain for supplemental responses, forcing MRO to move to compel even as to Interrogatory Answers which M2 itself promised to supplement.

**MRO Has Refused to Identify Fraudulent Statements on Which it Bases its Claims.** Counts I and II of the Amended Complaint allege fraud.  It is fundamental that a defendant accused of fraud be told what the fraudulent statements were.  M2, however, has failed to provide this information.  MRO's <u>Interrogatory No. 9</u> requests that M2 "identify every fraudulent statement, false promise or misrepresentation made by MRO to M2." (Exhibit C).  In response, M2 states that the information sought is "protected by the attorney-client privilege and

work product doctrine." (Exhibit D). M2 should be ordered to respond to this Interrogatory with specificity and detail.

**M2 Has Refused to Identify Proprietary Information.** Few legal principles are more certain than that a plaintiff claiming misappropriation of propriety information or trade secrets must identify with reasonable particularly the matters which it claims constitute proprietary information.[2]

It is with respect to this principle of law that M2's disregard for the discovery rules is most egregious. Interrogatory No. 6 seeks a detailed description of M2's alleged proprietary information and the identification of any relevant documents and persons involved in the communication of this information. (Exhibit C). M2's Answer to this Interrogatory fails to identify any documents or individuals involved in the communication of trade secrets, and it describes the alleged trade secrets in such superficial detail as to be useless to MRO. (Exhibit D).[3]

---

[2] "A defendant is entitled to know the bases for [the] plaintiff's charges against it. The burden is upon the plaintiff to specify those charges, not upon the defendant to guess at what they are." *Xerox Corp. v. Int'l Bus. Machs. Corp.*, 64 F.R.D. 367, 371-72 (S.D.N.Y. 1974) (ordering Xerox to "identify in detail all trade secrets and confidential information alleged to have been misappropriated by IBM" and to "key all documents or portions thereof to the specific trade secrets and confidential information alleged to have been misappropriated by IBM").

[3] M2 identifies its trade secrets, in their entirety, as follows:

"(1) MAXIMO Application Hosting Processes; (2) MAXIMO Application Hosting Procedures; (3) MAXIMO Application Hosting Configurations; (4) MAXIMO Application Hosting Services; (5) MAXIMO Application Hosting Pricing; (6) MAXIMO Application Hosting Marketing." (Exhibit D, Answer to Interrogatory No. 6)."

Rule 33 states that "[e]ach interrogatory shall be answered separately and fully in writing under oath. . . ." Fed. R. Civ. P. 33(b)(1). "Answers must be responsive, complete, and not evasive." 7 *Moore's Federal Practice* § 33.101 (3rd ed. 2003). "A sufficient answer generally entails a conscientious and good faith effort to comprehend the question and answer it explicitly." *Id.*

M2's Answers to MRO's <u>Interrogatories Nos. 17 and 18</u> are flatly unresponsive. Interrogatory No. 17 asks, "Describe in detail every item of technical information that M2 has provided to MRO, and for each such item provide the date, the nature of the information, the reason that M2 provided this information to MRO, the person and department within MRO that allegedly received this information, and identify every document concerning the item." (Exhibit C). Interrogatory No. 18 states, "Identify every communication M2 has had with MRO's Operations Center in London, Ontario." (Exhibit C). M2 objects to both Interrogatories on the grounds that they are "overbroad and unduly burdensome" and because they seek "information which is irrelevant and unlikely to lead to the discovery of admissible evidence in this action." (Exhibit D). M2 then states that the responses to these Interrogatories "can be derived from the relevant business records of M2." (Exhibit D).

It cannot be disputable that MRO is entitled to responses to these Interrogatories. First, Interrogatory No. 17 seeks information concerning technical trade secrets that M2 claims to have communicated to MRO and is directly relevant to M2's allegation that MRO unjustly enriched itself by using "commercially valuable trade secrets" developed by M2. (Amended Complaint, pars. 109-122). Interrogatory No. 18 concerns communications that M2 had with MRO's Operations Center, which serves as the center of MRO's hosting business. Therefore, the information sought with this Interrogatory is directly relevant to the allegations raised by M2. It is completely inappropriate for M2 to ask MRO to search M2's massive document production in order to find this information, which is of a nature that can only be identified by M2. M2 may not, as it apparently intends to do, dump tens of thousands of emails (amounting to hundreds of

---

It would be difficult to imagine an Interrogatory response that flies more in the face of these basic principles than M2's Answer to MRO's Interrogatory No. 6.

thousands of pages of paper) on MRO, and shift to MRO the burden to answer these Interrogatories based on information buried somewhere in those materials.[4]

**M2 Has Failed to Provide Information Critical to MRO's Defense to its Damage Claims.** Interrogatory No. 8 seeks a description of M2's reliance damages, including a detailed description of several actions that M2 refers to in the Complaint. (Exhibit C). M2's Answer to this Interrogatory provides only limited information regarding M2's investments made in reliance upon MRO's alleged promises, and fails to even respond to the sub-parts of the Interrogatory. (Exhibit D). Although M2's response to Interrogatory No. 8 refers MRO to certain "business records" which M2 claims to have produced in discovery, again this appears to be an improper attempt to force MRO to search through 40,000-plus emails and attempt to guess what business records support M2's claims.

**M2 Has Refused to Provide Discovery Concerning its Alleged $8 Million in Damages.** M2 has refused to provide MRO with basic information regarding its damages in response to Interrogatories Nos. 20 and 25. Interrogatory No. 20 states, "Identify every expenditure made by

---

[4] Courts have repeatedly rejected a party's invocation of Rule 33(d) under similar circumstances. Fed. R. Civ. P. 33(d) permits a party responding to interrogatories to specify business records from which the answer may be derived. However, the Rule provides that the "specification shall be in sufficient detail to permit the interrogating party to locate and identify, as readily as can the party served, the records from which the answer may be ascertained." Pointing to 40,000 emails clearly fails to satisfy this requirement. Since only M2 can identify its proprietary and confidential information, only M2 can identify the documents in which that information exists. *See, e.g., Xerox, supra*, 64 F.R.D. at 371-72 (finding list of documents alleged to contain, refer to, or incorporate by reference trade secrets was inadequate; ordering plaintiff to "identify in detail all trade secrets and confidential information alleged to have been misappropriated"); *In re Savitt/Adler Litig.*, 176 F.R.D. 44, 49 (N.D.N.Y. 1997) (granting motion to compel because the responding party's "answers to the interrogatories cannot fairly be derived from the records to which plaintiffs refer [because] [e]ach of the interrogatories at issue directs a plaintiff to 'state the facts' supporting various allegations in her complaint" and holding further that "resort to Rule 33(d) in response to these interrogatories was inappropriate").

M2 on equipment and other capital assets after MRO allegedly promised to promote M2's

solutions within MRO's sales force." (Exhibit C). In its response to Interrogatory No. 20, M2

directs MRO to the "relevant business records of M2, which have already been produced to

MRO." (Exhibit D). Again, asking MRO to divine M2's damages from forty thousand emails

violate Rules 33(d).

      Similarly, Interrogatory No. 25 states, "Identify, itemize, and describe in detail all

damages, expenses and losses you are claiming in this litigation and identify each document that

refers, relates to, evidences, or supports any damages claimed by you in this litigation." (Exhibit

C). M2 responded: "M2 objects to this interrogatory on the grounds that as worded, it seeks

information protected by the attorney-client privilege and work product doctrine, it is overbroad

and unduly burdensome, and it seeks information which is irrelevant and unlikely to lead to the

discovery of admissible evidence in this action." (Exhibit D). MRO is entitled to a description

and itemization of M2's damages in this action. M2's refusal to provide this information is

particularly disturbing since it represents an ongoing failure of M2 to comply with Rule

26(a)(1)(C). In its Initial Disclosures, served on MRO on July 9, 2004, M2 also failed to provide

a computation of damages as required by Rule 26(a)(1)(C). (M2's Initial Disclosures, Exhibit

G). M2's refusal to provide any information regarding its damages demonstrates a willful

disregard for its discovery obligations under Rules 26(a)(1)(C) and 33.

      **M2 Has Refused to Identify its Corporate Directors, Employees and Customers.**

MRO's <u>Interrogatories Nos. 3, 4, 5, 13, 15 and 16</u> plainly seek discoverable information,

however, M2 has refused to respond to these Interrogatories in any meaningful way. (See

Interrogatories, Nos. 3 ("Identify each officer and director of M2 . . ."), 4 ("Identify every

shareholder in M2 . . ."), 5 ("Identify every investor in M2 . . ."), 13 ("Identify every potential

customer to whom M2 has marketed MAXIMO hosting services . . ."), 15 ("State on a historical

basis, for each of the last five years, the number of employees employed by M2 . . ."), and 16

("identify each person who has been responsible for promotion, sales, marketing or technical

support of M2's promotion of M2's MAXIMO solution . . ."), Exhibit C). M2 has failed to

respond to Interrogatory No. 3 because it claims that this Interrogatory "seeks information which

is irrelevant and unlikely to lead to the discovery of admissible evidence." (Exhibit D).

Similarly, M2 has responded to Interrogatories Nos. 4, 5, 13, 15 and 16 by claiming that the

information sought is "overly broad and unduly burdensome" and "irrelevant and unlikely to

lead to the discovery of admissible evidence." (Exhibit D). M2's objections are entirely

baseless. Interrogatories Nos. 3, 4, 5, 13 and 16 seek to identify individuals or entities who are

likely to possess discoverable information. MRO is entitled to the identification of these people

and companies so that it will have the opportunity to conduct further discovery as it deems

appropriate. Additionally, the information sought with Interrogatory No. 13 is pertinent to

MRO's breach of contract counterclaim, and the data requested by Interrogatories Nos. 15 and

16 is directly relevant to M2's alleged reliance damages based on its purported agreement with

MRO. Thus, M2's objections as to the relevance of the information sought by Interrogatories

Nos. 3, 4, 5, 13, 15 and 16 are specious and M2 should be ordered to promptly provide specific

and detailed supplemental Answers thereto.

**M2 Has Frivolously Asserted Attorney-Client Privilege in Response to Proper**

**Interrogatories.** M2 has refused to provide substantive responses to MRO's Interrogatories

Nos. 21, 22 and 23, objecting, inexplicably, on the basis of attorney-client privilege.

Interrogatory No. 21 asks, "Explain any defense that M2 intends to assert to MRO's claims for

money owed by M2 under the Hosting Affiliate Agreement, to the extent that the obligations to

pay arose from and after the date of M2's request that MRO forgive amounts then outstanding under the Hosting Affiliate Agreement." (Exhibit C). <u>Interrogatory No. 22</u> states, "Identify each person you have interviewed or from whom you have obtained a written or recorded statement regarding any matters at issue in this litigation; and identify any statements that have been obtained." (Exhibit C). <u>Interrogatory No. 23</u> seeks information concerning "any statement, communication or testimony made by any employee or agent of MRO in the nature of an admission which [M2] expect[s] or intend[s] to rely upon or present as evidence in this matter." (Exhibit C). M2 claims that all three Interrogatories "seek information protected by the attorney-client privilege and work product doctrine." (Exhibit D). Interrogatory No. 21 seeks nothing more than an explanation of the basis for M2's defenses to MRO's counterclaim, information to which MRO is plainly entitled. Interrogatory No. 22 does not seek the substance of any statements which may implicate the attorney-client privilege or work product doctrine. Indeed, this Interrogatory merely seeks the identification of any persons from whom a statement has been taken and basic identifying information about any such statements. With regard to M2's further objection that the information sought by Interrogatory No. 22 is irrelevant, the identity of potential witnesses is discoverable under Fed. R. Civ. P. 26 as it may lead to the discovery of admissible evidence. Lastly, M2 cannot refuse to answer Interrogatory No. 23 on the basis of attorney-client privilege since this Interrogatory seeks information regarding any admissions made by MRO, not the mental impressions of M2's counsel concerning those admissions. There can be no dispute that M2's objections to Interrogatories Nos. 21, 22 and 23 are frivolous, and M2 should be ordered to provide specific and detailed responses.

**M2 Has Refused to Identify People With Knowledge Relevant to the Case.**

Similarly, M2 provides only a vague, incomplete Answer to <u>Interrogatory No. 1</u>. Interrogatory

No. 1 requests that M2 identify each person having personal knowledge of the allegations in the Complaint. (Exhibit C). M2's piecemeal response fails to set forth a complete list of individuals who possess personal knowledge of the allegations in the Complaint and does not fully identify the handful of individuals who are included. M2's own Complaint and Initial Disclosures implicate numerous individuals in the events giving rise to this litigation, but who are not identified in its Interrogatory Answer. (See Amended Complaint and Exhibit G). MRO's attempts to cooperatively obtain this information have been ignored.

**M2 Has Refused to Provide Complete Information on a Variety of Subjects.** M2's Answer to <u>Interrogatory No. 10</u> is incomplete. Interrogatory No. 10 states, "If M2 contends that MRO has forgiven monies owed to MRO under the 2000 Agreement or the 2002 Agreement, state the basis for that contention." (Exhibit D). MRO's Interrogatories require that M2, when requested to "state the basis" for an allegation, describe the facts that form the basis of the pertinent allegations and identify any documents, individuals and communications that are the source of the relevant information. (Interrogatories, Instructions and Definitions, Exhibit C). M2's response does not meaningfully identify any documents despite the fact that it refers to a letter that "was produced to MRO in discovery," but which is not identified in any way. (Exhibit D). As noted above, M2 has produced close to forty thousand email communications. It is inappropriate for M2 to refuse to identify the letter in question. In addition, M2's response repeatedly refers to discussions that "M2 had" with MRO personnel, without identifying the M2 personnel involved in the alleged waiver. MRO is entitled to a specific and detailed response to Interrogatory No. 10, including a description of the relevant facts and the identification of documents, persons and communications.

12

In conclusion, M2's Answers to MRO's Interrogatories are unresponsive and fail to satisfy M2's obligations under the Federal Rules of Civil Procedure. M2's failure to provide information that MRO is plainly entitled to, much of which forms the very basis of M2's claims in this action, demonstrates the fundamental nature of the deficiencies in M2's Answers. Further, M2's refusal to remedy numerous defects in its Interrogatory Answers, several of which it has openly acknowledged in discovery conferences, constitutes a pattern of discovery abuse. Therefore, MRO seeks an order from this Court requiring M2 to provide detailed and specific supplemental responses to Interrogatories Nos. 1, 3-6, 8-10, 13, 15-18, 20-23 and 25, and to pay MRO's costs in bringing this motion.

**III.    M2 Has Raised Frivolous Objections to MRO's Document Requests**

In addition to the extensive problems with M2's Interrogatory Answers, more than five months after being served with MRO's Document Requests M2 has failed to produce several categories of documents that bear directly on M2's claims in this action. (Document Requests, Nos. 3-6, 14-17, 20, 22, 31, 33 and 40, Exhibit A). Since October 13, 2004, MRO has complained on numerous occasions to M2 about its refusal to produce documents regarding a variety of issues, including but not limited to those set forth below:

1) M2's Complaint alleges that M2 decided not to sell its business to a third party (identified in Interrogatory responses as Indus International, Inc)., choosing instead to rely on MRO's alleged promise to promote M2's services. However, other than a few e-mails, M2 has provided no written correspondence concerning M2's negotiations and discussions with Indus. Specifically, M2 has failed to produce any of the documents or agreements typically created during negotiations regarding a potential acquisition, such as a letter of intent, confidentiality agreement, business plans, or financial offers or proposals from Indus. Unless M2 alleged this lost opportunity without a factual basis for its claims, then M2 has the information MRO seeks readily available.

2) There is a complete absence of documents evidencing M2's claims that it provided MRO with proprietary information or trade secrets.

13

3) M2 has produced no documents showing its investments made in reliance upon its alleged agreement with MRO.

Though M2 has acknowledged the existence of the documents set forth above in discovery conferences between counsel, it has failed to produce them. First, in its Responses to MRO's Document Requests and Interrogatory Answers, M2 admits the existence of the three categories of documents described above. Copies of M2's Responses to Document Requests and Interrogatory Answers are attached at Exhibits B and D, respectively. In its Responses to MRO's Document Requests concerning M2's alleged trade secrets, the potential acquisition of M2's business and its alleged reliance damages, M2 states that it "will produce copies of responsive non-privileged documents." (Responses, Nos. 3-6, 14-17, 20, 22, 31, 33 and 40, Exhibit B). M2 likewise admits the existence of these documents in its Interrogatory Answers. (Responses, Nos. 6-8, 17, 20 and 25, Exhibit D). Finally, in a letter dated December 9, 2004, M2's counsel admits that M2 possesses documents concerning all three categories of documents described above, and claims to have already produced them to MRO. (December 9, 2004 letter, Exhibit H). However, MRO has reviewed M2's document production and has found no such documents. Consequently, M2's promises and representations once again proved unreliable.

Central to M2's claims in this litigation are the disclosure of its alleged trade secrets and confidential business information, the lost opportunity to sell its business to a third party, and the investments it allegedly made in reliance upon the oral promises allegedly made by MRO. All four counts raised in M2's initial Complaint are based on these three factual matters. The foundation of M2's unjust enrichment count is its claim that MRO improperly obtained certain trade secrets or proprietary information from M2 and has unfairly benefited as a result. (Amended Complaint.) M2's promissory estoppel, violation of M.G.L. ch. 93A and its fraud

14

claims are also based, in whole or in part, on these factual allegations. (Amended Complaint.) MRO clearly is entitled to this information.

MRO has diligently attempted to resolve this dispute in a cooperative manner with M2. However, as noted above, M2 has been uncooperative and unresponsive. MRO's counsel held discovery conferences with M2's attorney on October 13, 2004, November 8, 2004 and December 13, 2004. From October 15, 2004 to December 22, 2004, MRO's attorneys have sent eight letters to M2's counsel describing in detail the documents sought and the basis for their relevance. (Exhibits E and F). M2 has failed to respond to MRO's complaints in any meaningful manner and has frequently provided no response or explanation at all. Indeed, after months of complaining to M2 in writing and during the Discovery Conference concerning this very issue, M2's counsel behaved as though this matter were being raised for the first time and stated that he needed to confer with his client when he became confused as to whether some of the documents sought with this motion even existed at all. Thereafter, M2's attorney ignored MRO's letters of December 15 and December 22, 2004 and, since then, has provided no further response. Consequently, MRO has been left with no choice but to seek an order from this Court compelling M2 to produce responsive documents .

### Conclusion

M2 has refused to provide information and documents that were plainly requested by MRO and which are critical to the defense of the claims raised in this action. M2's unjustifiable discovery failures, many of which it has openly acknowledged but refused to rectify, have prevented MRO from taking any deposition discovery, thus completely stalling discovery in the case. M2's responses to MRO's efforts to resolve this matter cooperatively have been ignored. M2's conduct constitutes more than isolated or inadvertent violations of the discovery rules. It

15

demonstrates a willful disregard for its discovery obligations under the Federal Rules of Civil Procedure. M2's conduct has resulted in wasted time and resources by this Court and MRO's counsel. Thus, the Court should order that M2 (a) provide a sworn response to all of MRO's Interrogatories and respond to Interrogatories Nos. 1, 3-6, 8-10, 13, 15-18, 20-23 and 25, with specificity and in detail, and that (b) M2 be ordered to provide all documents responsive to MRO Document Requests Nos. 3-6, 14-17, 20, 22, 31, 33 and 40, and provide a sworn statement from its senior-most corporate officer certifying that M2 has fully responded to all of MRO's Document Requests.

Lastly, the Court should order that M2 pay MRO's reasonable expenses incurred in bringing this motion, including attorneys' fees.

MRO SOFTWARE, INC.,

By its attorneys,

Lee T. Gesmer (BBO No. 190260)
Kurt Bratten (BBO No. 644730)
Gesmer Updegrove LLP
40 Broad Street
Boston, MA 02109
(617) 350-6800

Dated: February 1, 2005

16

## Local Rule 7.1 Certificate of Compliance

Counsel for MRO Software, Inc. hereby certifies that, on December 13, 2004, pursuant to Rule 7.1(A)(2) of the Local Federal Rules of Civil Procedure, he (1) has conferred with counsel for M2 Consulting, Inc. regarding the attached Motion, and (2) has attempted in good faith to resolve or narrow the issues presented.

Kurt Bratten

## Certificate Of Service

I, Kurt Bratten, hereby certify that on this 1st day of February 2005, a true copy of the foregoing document was served by overnight mail to Mark Resnick, Esq., Fee, Rosse & Lanz, P.C., 321 Boston Post Road, Sudbury, MA 01776.

Kurt Bratten

17