UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

M2 CONSULTING, INC.

    Plaintiff,

v.

MRO SOFTWARE, INC.

    Defendant.

C.A. No. 03-12589-GAO

**MRO SOFTWARE, INC.'S FIRST REQUEST
FOR THE PRODUCTION OF DOCUMENTS**

Pursuant to Fed. R. Civ. P. 34, defendant MRO Software, Inc. ("MRO") hereby requests that plaintiff M2 Consulting, Inc. ("M2") produce for inspection and/or copying the documents and things described below in its possession, custody or control, to be produced within thirty (30) days at the offices of Gesmer Updegrove, LLP, 40 Broad Street, Boston, MA 02109.

**Instructions and Definitions**

1. The term "**M2**" refers to plaintiff and it predecessors, successors, affiliates, officers, directors, employees, attorneys and agents.

2. The term "**MRO**" refers to defendant and its predecessors, successors, affiliates, officers, directors, employees, attorneys, and agents.

3. The term "**2000 Agreement**" means the "Agreement Between M2 Consulting, Inc. and PSDI for MAXIMO Application" entered into between PSDI and M2 on March 22, 2000.

4. The term "**2002 Agreement**" means the "Hosting Affiliate Agreement" entered into between MRO and M2 on November 4, 2002.

5. The term "**hosting**" means Internet hosting of MRO's MAXIMO software.

7. Every document that concerning the allegation in paragraph 14 of the Complaint that MRO made repeated representations to M2 that MRO would affirmatively market M2's MAXIMO Internet hosting capabilities through the use of MRO's North American sales force.

8. Every document concerning the allegations in paragraph 15 of the Complaint that MRO agreed with, and made repeated representations to, M2 that MRO would pay commissions to its North American sales force for successful sales of M2's MAXIMO Internet hosting services, including but not limited to documents that reflect conversations or communications with MRO officers, employees or agents.

9. All documents that concern meetings and/or conversations between employees or officers of M2 and employees or officers of MRO, including the meetings referenced in paragraphs 17, 18, 19, 20 21, 22, 27, 30 and 31 of the Complaint, including without limitation notes or documents taken or created in preparation for, during or following such conversations.

10. All documents concerning the development of market profiles, commission calculators, sales forecasts, and other data in preparation for launching the sales initiative, which are referenced in paragraph 22 of the Complaint.

11. The written correspondence to Bevington referenced in paragraph 23 of the Complaint.

12. All documents concerning the increase in the percentage of revenues paid by M2 to MRO, as alleged in paragraph 24 of the Complaint and the "sale initiative" referenced there.

13. All documents that support the allegation in paragraph 29 of the Complaint that the 2002 Agreement was not intended to govern the respective obligations of the parties in the sales initiative upon which MRO and M2 had allegedly agreed.

14. All documents that concern the disclosure of alleged M2 proprietary information to MRO, including but not limited to the alleged propriety information described in paragraph 33 of the Complaint.

15. All documents concerning the allegations in paragraphs 34, 35 and 36 of the Complaint, to the effect that M2 informed MRO of the proprietary and confidential information described in paragraph 33 of the Complaint, that MRO agreed not to disclose this information to third parties, and that MRO agreed not to use this information for purposes other than the joint efforts being engaged in by MRO and M2.

16. All documents concerning the lost sale opportunity described in paragraph 37 of the Complaint, including but not limited to all correspondence and communications of any kind (including but not limited to emails, agreements and draft agreements) with the "third party competitor" described in paragraph 37 of the Complaint.

17. To the extent not produced in response to the preceding request, all documents concerning any proposals, presentations, discussions or offers made for the acquisition of any portion of M2's business during the last five years, whether by purchase of stock or assets, including all communications relating to the commencement, due diligence, and the termination of any such discussions or offers, and further including all minutes of the Board of directors and all documents created in preparation for Board meetings, notes taken during Board meetings, and documents created following Board meetings.

18. All documents concerning the allegations contained in paragraphs 39 – 45 of the Complaint relating to MRO's alleged failure to announce the sales initiative, including the communications between MRO and M2 principals, board members and investors regarding the alleged imminent nature of the announcement.

19. All documents concerning the allegations contained in paragraphs 46 and 47 of the Complaint relating to MRO's announcement of its own Maximo Internet hosting business.

20. All documents concerning the alleged actions and forbearances from action described in paragraph 48 of the Complaint, including but not limited to all documents evidencing the monies alleged to have been spent by M2 in paragraphs 49(a) – (c), the allegedly confidential and proprietary business information described in paragraph 49(d), and M2's alleged forbearance from the opportunity to sell M2 to interested third parties.

21. All documentation, including but not limited to correspondence, emails, notes and memoranda, related to the possibility that MRO might purchase M2, including without limitation all documents and correspondence received from Indus International, Inc. or its affiliates or representatives or exchanged between M2 and Indus International, Inc. or its affiliates or representatives, and including without limitation all materials given to M2's board of directors, documents created in anticipation of board meetings, notes taken during board meetings, minutes of board meetings and documents created following Board meetings.

22. All materials prepared in contemplation of a sale of all or part of the business, including but not limited to both internal materials and those prepared for the benefit of business brokers, investors, bankers or potential buyers.

23. All business plans concerning M2.

24. All documents concerning the allegations contained in paragraph 25 and 26 of the Complaint, to the effect that once the increased fee arrangement was put in place, the sale initiative would be immediately announced to MRO's North American sales force.

25. To the extent not produced in response to the above requests, all communications between MRO and M2, including but not limited to correspondence, emails, notes concerning conversations or meetings and electronic recordings.

26. To the extent not produced in response to the above requests, any document concerning the allegations contained in the Complaint or M2's claims in this case.

27. All documents concerning M2's hosting customers, including but not limited to documents concerning the date that each customer first enrolled as an M2 customer, the date any customer terminated its business relationship with M2, and all fees paid by the customer, including hosting fees, licensing fees, and fees for services.

28. All documents evidencing payments made by M2 to MRO.

29. All documents concerning sales efforts made by MRO with respect to M2's hosted MAXIMO solution, and any sales leads generated by MRO with respect to M2's hosted MAXIMO solution.

30. All documents concerning sales leads generated by M2, independently of MRO, for M2's hosted MAXIMO solution.

31. All documents concerning decisions made by M2 since 2000 with respect to M2's budgets and with respect to the level of investment to be made by M2 in its hosting business, including but not limited to capital expenditures, long-term liabilities and personnel.

32. All documents concerning M2's sales strategies since 2000.

33. All analyses of M2's MAXIMO hosting business, including but not limited to all planning and valuation documentation prepared in connection with investments in or sale of the business.

34. Every contract or agreement for hosting services between M2 and a customer.

35. All marketing materials for M2's hosting services.

36. All budgets or budget analyses prepared by M2 since 2000, including drafts and memoranda of discussions regarding budget alternatives considered by M2.

37. All documents concerning correspondence between M2 and any actual or prospective customer of M2 concerning this litigation.

38. All sales proposals for M2's hosting service.

39. All correspondence with potential customers for M2's hosting service.

40. Every document concerning the alleged damages claimed by M2 in this case.

*[signature]*

Lee T. Gesmer (BBO No. 190260)
Lucash, Gesmer & Updegrove, LLP
40 Broad Street
Boston, MA 02109
(617) 350-6800

Dated: August 6, 2004

**CERTIFICATE OF SERVICE**

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail / by hand.

Date 8/6/04 *[signature]*

9

GESMER UPDEGROVE LLP    Fax:617-350-6878

## ** Transmit Conf. Report **

P.1                                                                Aug 6 2004 16:48

| Fax/Phone Number | Mode | Start   | Time  | Page | Result | Note    |
|------------------|------|---------|-------|------|--------|---------|
| 19784407650      | FINE | 6,16:48 | 3'22" | 11   | * O K  | BRDCAST |

| Fax/Phone Number | Mode | Start   | Time  | Page | Result | Note    |
|------------------|------|---------|-------|------|--------|---------|
| 12129974949      | FINE | 6,16:51 | 1'41" | 11   | # O K  | BRDCAST |

**GESMER UPDEGROVE LLP**
ATTORNEYS AT LAW
40 BROAD STREET
BOSTON, MASSACHUSETTS 02109-4310

Telephone: (617) 350-6800

Fax: (617) 350-6878

# FAX COVER SHEET

**To:** Michael Fee, Esq.              **Fax:** (978) 440-7650
      *Fee, Craig & Feeney*

      John M. Teitler, Esq.                  (212) 997-4949
      *Teitler & Teitler*

**Date:** August 6, 2004               **Pages:**  (including cover)

**From:** Lee T. Gesmer, Esq.

**Re:** M2 Consulting, Inc. v. MRO Software, Inc., C. A. No. 03-12589-GAO

**Comments:**