# FEE, ROSSE & LANZ, P.C.
*Attorneys at Law*

321 BOSTON POST ROAD
SUDBURY, MA 01776
978.440.7000
FAX: 978.440.7650
www.feelaw.com

MARK S. RESNICK (mresnick@feelaw.com)

December 9, 2004

<u>By Fax</u>

Kurt Bratten, Esq.
Gesmer Updegrove, LLP
40 Broad Street
Boston, MA
02109

    Re: <u>*M2 Consulting, Inc. v. MRO Software, Inc.*, United States District Court, District of Massachusetts, Civil Action No. 03-12589-GAO</u>

Dear Kurt,

    I am in receipt of your letter dated December 6, 2004 regarding your dissatisfaction with M2's responses to MRO's first set of interrogatories. Suffice it to say that I disagree that M2's responses are "grossly deficient" or that they "utterly fail to satisfy M2's obligations under the Federal Rules of Civil Procedure". As I am sure you can understand, it is impossible for me to respond to those types of sweeping allegations. You only address with specificity two specific M2 interrogatory responses and one category of responses.

    With respect to Interrogatory No. 9, M2's response is entirely appropriate to the interrogatory you propounded. It asks M2 to identify every fraudulent statement, false promise or misrepresentation made by MRO to M2. Your question clearly calls for the opinion of M2's counsel regarding its assessment of the facts and evidence in this case. The extent to which a particular statement will constitutes fraud is a legal conclusion, one which can only be determined by counsel. Asking M2's Council in effect to identify what statements constitute fraud in the case is therefore entirely inappropriate and seeks attorney work product which as you know is not discoverable. Although there may be a way to word this question so that the information it seeks does not impinge upon the work product doctrine, it is not up to M2 to write your interrogatory questions for you.

    With respect to Interrogatory No. 25, your question asks M2 to detail all damages expenses and losses and every document which relates to those losses. Once again, your question asks M2's counsel to identify actionable damages arising from MRO's conduct. That is also a legal conclusion which is protected by the attorney work product doctrine. The request is also obviously overbroad, in that it requests M2 to identify each and every

FEE, ROSSE & LANZ, P.C.

Kurt Bratten, Esq.
December 9, 2004
Page 2

scrap of paper which in any way "relates" to its damages. As worded, this requires M2 to literally search for and produce every scrap of paper which relates to its MRO relationship, its potential acquisition by Indus, and its lost opportunity damages. It is obviously overbroad and unduly burdensome, a deficiency which might be cured if MRO is willing to narrow the scope of this interrogatory and to word it in a way that would not require discovery of M2's protected attorney work product.

With respect to M2's response that the information sought in certain interrogatories can be derived from the relevant business records of M2, your objection is entirely without merit. Federal rule 33(d) specifically provides a party can specify the business records where such information or answer can be obtained. Not only did M2 specify the specific records - the documents produced in its production - but it has already provided those records to your client in discovery. M2's reference in its response to relevant business records should not and cannot be reasonably construed to include 31,000 e-mails which it also produced, and the answer clearly directs MRO to the hard copy which M2 has produced in this litigation, which as you know is but a fraction of the 31,000 e-mails which you reference in your letter. Those documents, which your client has already reviewed in detail, identify M2's potential purchaser (Interrogatory No. 7), M2's actions which it forbore from taking in reliance on MRO's misrepresentations (Interrogatory No. 8), M2's customers who have been provided with Maximo hosting services (Interrogatory No. 12), the versions of Maximo that have been in M2's possession (Interrogatory No. 14), the technical information provided by M2 to MRO (Interrogatory No. 17), and expenditures made by M2 on capital asset assets after MRO promised to promote M2's solutions with MRO's sales force (Interrogatory No. 20). Your complaint about this response omits a portion of rule 33(d) which specifically refers to the production of business records when "the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served". It is a sufficient answer to specify the records from which the answer may be derived. The Rule does not state that the answering party must identify the business records page by page, and consequently your complaint that M2 has not done so is specious.

I am available to hold a rule 7.1(A)(2) conference to discuss this matter, and in fact had schedule one with you which you requested we reschedule due to a scheduling emergency. Unfortunately, although I had hoped top be available, my schedule does not permit me to conduct this conference today. I am available to discuss this matter with you tomorrow at 1 p.m., or Monday any time between 9 a.m. and noon. At that time, I can also review with you the availability of the M2 personnel who you seek to depose.

Finally, I note that notwithstanding your representations during our very first discovery conference regarding the sufficiency of MRO's document production, MRO continues to produce responsive documents even as late as December 3, 2004. Had

FEE, ROSSE & LANZ, P.C.

Kurt Bratten, Esq.
December 9, 2004
Page 3

MRO's initial search been as comprehensive as you represented, there would be no need for MRO to continue to be producing documents to M2 at this late date. The fact that MRO continues to do so raises serious questions regarding the extent to which MRO is taking its discovery obligations in this case seriously. Notwithstanding the supplemental production, materials you have produced clearly evidence the existence of additional responsive documents, which your client apparently continues to withhold. I will address those deficiencies with you under separate cover. Since I am still reviewing documents which you produced to M2 less than a week ago, I am not sure whether I will have sufficient time to complete review to enable me to discuss these matters with you in the event that we have a rule 7.1(A)(2) conference Friday or Monday, but I anticipate the need to do so at some point next week.

Please let me know when you would like to discuss this matter further.

Very truly yours,

Mark S. Resnick

MSR:mas