UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

M2 CONSULTING, INC.

            Plaintiff,

v.                                                                             C.A. No. 03-12589-GAO

MRO SOFTWARE, INC.

            Defendant.

**ANSWER TO FIRST AMENDED COMPLAINT**

The defendant MRO Software, Inc. ("MRO"), by its attorneys, answers the First Amended Complaint in the above-captioned action as follows:

1.      The allegations in this paragraph of the Amended Complaint are legal allegations for which no response is required.

2.      MRO is without knowledge as to plaintiff's place of incorporation.  MRO admits that plaintiff has correctly identified its place of business.

3.      Admitted.

4.      Admitted.

5.      Admitted.

6.      MRO admits that this Court has venue under the express grant of exclusive jurisdiction and venue set forth in Section 10(h) of the Hosting Affiliate Agreement entered into between MRO and M2 on November 4, 2002.  This agreement was the second of two Hosting Agreements entered into between MRO and the plaintiff, and is referred to as the "2002 Agreement."  The earlier agreement, discussed below, is

referred to as the "2000 Agreement." MRO denies that it engaged in any "wrongful conduct" in Massachusetts.

      7.      Upon information and belief, MRO admits the allegations contained in the first sentence of this paragraph. As to the second sentence, MRO states that it has terminated the 2002 Agreement, and therefore any use of MRO's MAXIMO software program by M2 (except to support existing customers, as discussed in paragraph 8, below) is unauthorized and illegal.

      8.      Denied. Section 9(e) of the 2002 Agreement provides that M2's rights immediately cease upon termination of the 2002 Agreement, except "for 24 months or until the termination of existing agreements with [M2's] customers, whichever occurs first, solely to support any existing Customers at the time of the termination . . .." On October 24, 2003, MRO provided M2 with formal notice of breach by reason of nonpayment of monies owed under the 2002 Agreement. Pursuant to Section 9(d) of the 2002 Agreement, M2 had 30 days to cure the breach, which it failed to do, resulting in termination "for cause." In addition, on October 24, 2003, MRO provided M2 with notice of termination under the "at-will" termination provision, which was effective 90 days after written notice. Thus, in the alternative, MRO's right to serve as a third-party provider of the MAXIMO software was terminated on January 23, 2004.

Despite MRO's termination of the 2002 Agreement both for cause and under the at-will provision, M2 has continued to illegally hold itself out as a distributor of MRO's MAXIMO software, including by marketing itself on its Internet web site (www.m2consulting.com) as a "Consulting partner with MRO Software . . . [able to] bring the full benefits of MAXIMO to [users]."

9. MRO admits the definition of Internet hosting, but denies that M2 has any right to perform Internet hosting following termination of the 2002 Agreement.

10. MRO is without information sufficient to allow it to admit or deny the allegations.

11. MRO is without information sufficient to allow it to admit or deny the allegations.

12. MRO is without information sufficient to allow it to admit or deny the allegations.

13. Admitted.

14. Denied.

15. MRO admits that on March 22, 2000, MRO and M2 entered into an agreement titled "Agreement Between M2 Consulting, Inc. and PSDI for MAXIMO Application Hosting" (the "2000 Agreement"). MRO states that the 2000 Agreement speaks for itself. However, MRO notes that nothing in the 2000 Agreement precludes MRO (then known as "PSDI") from providing Application Hosting of MAXIMO itself, or through other third parties. Thus, M2 did not have exclusive rights to application hosting of MAXIMO under the 2000 Agreement. The 2000 Agreement was an "at-will" agreement, providing for termination by either party, without cause, on three months' written notice.

16. Denied.

17. Denied.

18. Denied. MRO told M2 that it would refer prospective customers to M2 that were not interested in licensing the MAXIMO software directly from MRO, at the

discretion of MRO. MRO had no legal obligation to refer customers to M2. MRO never represented that it would "affirmatively market" M2's MAXIMO hosting services, and MRO repeatedly told M2 that MRO would itself be entering the application hosting business and offering MAXIMO via Internet hosting.

    19.    MRO admits that the intent of the 2000 Agreement and the 2002 Agreement was to produce revenues for M2 and MRO. However, M2 has failed to pay MRO monies owed under the 2000 or the 2002 Agreement. MRO denies the remaining allegations as stated in this paragraph of the Amended Complaint. At no time did MRO make "representations" to plaintiff on which plaintiff could legally rely. MRO encouraged its sales force to refer companies to plaintiff that needed Internet hosting services, and which were not appropriate customers for the direct purchase of MAXIMO from MRO. Plaintiff was made aware of the fact that MRO encouraged its sales force to refer prospective customers to plaintiff. At the same time, both the 2000 and 2002 Agreements were non-exclusive, and MRO repeatedly told M2 that it expected to provide hosting services in the future. Therefore, M2 could not expect to rely on business referrals from MRO after it began providing this service.

    20.    Denied.

    21.    Denied.

    22.    Denied.

    23.    Denied.

    24.    Denied.

    25.    Denied.

    26.    Denied.

27. Denied.

28. MRO is without information sufficient to allow it to admit or deny the allegations.

29. Denied.

30. Denied.

31. Denied. MRO instructed parts of its sales force to refer customers to M2 who would not purchase a full MAXIMO license from MRO, but instead were interested only in hosting services. However, MRO did not make any "commitment" to "instruct its North American sales force to market affirmatively" M2's services. At all times relevant to this suit MRO told M2 that referring customers to M2 was a less desirable and less profitable alternative to selling the MAXIMO software directly, and therefore MRO could not make any "commitment" to M2. Moreover, MRO repeatedly told M2 that MRO would itself be hosting MAXIMO at some point in the future, and that M2 needed to prepare for this event, which would have the effect of ending most or all of its referrals to M2.

32. Denied.

33. Denied.

34. Denied.

35. MRO admits that it told M2 that the commission schedule in the 2000 Agreement did not provide sufficient revenues to MRO to pay a competitive commission to MRO's sales force, and that the percentage of revenues that M2 paid to MRO would have to increase from 20% to 50%. However, MRO denies that it told M2 that once the commission schedule in the 2000 Agreement was increased a "sales initiative" would be

5

announced by MRO. MRO denies the remaining allegations in this paragraph of the Amended Complaint.

    36.    Denied.

    37.    Denied.

    38.    Denied.

    39.    MRO denies that the 2002 Agreement was signed based on the "representations" alleged by M2. MRO admits that the 2002 Agreement was signed on November 4, 2002, and states that the Agreement speaks for itself. The 2002 Agreement was intended to govern all obligations of the parties with respect to the sale of MAXIMO hosting services by M2, and MRO's obligation to refer prospective customers to M2. The 2002 Agreement contains an Integration Clause (Section 10(k)), which provides that the 2002 Agreement "constitute[s] the complete and entire statement of all terms, conditions and representations of the agreement between [MRO] and [M2] with respect to its subject matters and supersedes all prior writings or understandings." MRO admits that the 2002 Agreement was negotiated between MRO personnel in Massachusetts and Rick Bevington.

    40.    Denied.

    41.    Denied.

    42.    Denied.

    43.    Denied.

    44.    MRO is without information sufficient to allow it to admit or deny the allegations in this paragraph of the Amended Complaint.

    45.    Denied.

46. MRO denies that M2 took any actions, or forbore from any opportunities based on representations by MRO. Moreover, MRO notes that all drafts of the 2002 Agreement (which was negotiated from May 1, 2002, until its execution on November 4, 2002) contained a provision that permitted either party to terminate at-will. MRO's first draft of the 2002 Agreement permitted termination at-will, upon as little as 30 days' written notice. M2 negotiated an increase in the at-will termination provision to 90 days' written notice, which was included in the final version of the 2002 Agreement. Given MRO's warning that it intended to provide hosting services directly, and the provision permitting MRO to terminate at-will on 90 days' notice, M2 could not have reasonably relied upon the 2002 Agreement or any oral representations by MRO.

47. MRO is without knowledge sufficient to admit or deny the expenditures alleged by M2 in this paragraph of the Amended Complaint, but it denies that any representations were made upon which M2 could have reasonably based such expenditures, and further denies that any such reliance was reasonable given the possibility of MRO entering the hosting market and the at-will termination provision in the 2002 Agreement.

48. Denied.

49. Denied.

50. Denied.

51. Denied.

52. Denied.

53. Denied.

54. Denied.

55. Denied.

56. MRO admits that in or about June 2003, it informed M2 that MRO would provide its own MAXIMO Internet hosting services, as had been discussed with M2 for years. MRO denies the remaining allegations in this paragraph. The 2002 Agreement does not provide M2 with any exclusivity rights, nor does it state that MRO would not compete with M2. Under the 2000 Agreement, MRO had the express right to provide MAXIMO Internet hosting services in competition with M2. At all times during M2's business relationship with MRO, M2 was at risk that MRO would provide its own MAXIMO Internet hosting service which would compete with M2.

57. MRO denies the allegations in the first sentence of this paragraph of the Amended Complaint. MRO admits that on or about June 17, 2003, MRO informed M2 that it would provide its own MAXIMO Internet hosting services, as had been discussed with M2 for years.

58. Denied.

59. Denied.

60. MRO admits that in 2004, it became aware that M2 was making representations and providing services which were unauthorized and illegal pursuant to the 2002 Agreement. In 2004, MRO learned that M2 was violating the terms of the 2002 Agreement by making false and misleading representations to some of MRO's existing customers and other third parties. MRO denies the remaining allegations in this paragraph of the Amended Complaint.

61. MRO admits that it contacted M2 and demanded that it stop providing Internet hosting of MRO's MAXIMO software to the Georgia Building Authority (the

8

"GBA") in violation of MRO's contract with the GBA and the 2002 Agreement. M2's allegations in this lawsuit do not permit it to violate the 2002 Agreement. MRO denies the remaining allegations in this paragraph of the Amended Complaint.

62. MRO admits that M2 has taken the position alleged in this paragraph of the Amended Complaint, however, MRO disputes this position.

63. With respect to the first sentence, MRO admits that it took the position described and states that nothing in the correspondence referenced provides M2 with a license to version 5.x of MAXIMO. In response to the second and third sentences of this paragraph of the Amended Complaint, the 2002 Agreement speaks for itself. MRO denies the remaining allegations in this paragraph of the Amended Complaint.

64. MRO denies the allegations in the first sentence of this paragraph of the Amended Complaint. MRO is without knowledge sufficient to admit or deny the remaining allegations in this paragraph.

65. MRO admits that Mr. Newfield spoke with Mr. Groppi, but denies that Mr. Newfield conveyed false and disparaging information regarding M2. MRO admits the allegations contained in item (i) and denies items (ii), (iii) and (iv) in the third sentence of this paragraph. MRO denies the allegations contained in the last sentence of this paragraph.

66. Denied.

67. MRO denies the first sentence in this paragraph. MRO is without knowledge sufficient to admit or deny the allegations in the second and fourth sentences of this paragraph of the Amended Complaint. In response to the third sentence of this paragraph, MRO admits that M2's counsel wrote to MRO's counsel and that MRO

informed M2 that it was not authorized to provide the services that it proposed to Grubb & Ellis Management Services, Inc. MRO denies the remaining allegations in this paragraph of the Amended Complaint.

68. MRO is without knowledge sufficient to admit or deny the allegations in this paragraph of the Amended Complaint.

69. MRO is without knowledge sufficient to admit or deny the allegations in this paragraph of the Amended Complaint.

70. MRO repeats its answers to the preceding paragraphs, and incorporates them herein by reference.

71. Denied.

72. Denied.

73. Denied.

74. Denied.

75. Denied.

76. Denied.

77. Denied.

78. Denied.

79. MRO repeats its answers to the preceding paragraphs, and incorporates them herein by reference.

80. Denied.

81. Denied.

82. Denied.

83. Denied.

84. Denied.

85. Denied.

86. MRO repeats its answers to the preceding paragraphs, and incorporates them herein by reference.

87. Denied.

88. Denied.

89. Denied.

90. MRO repeats its answers to the preceding paragraphs, and incorporates them herein by reference.

91. Denied.

92. Denied.

93. Denied.

94. Denied.

95. MRO repeats its answers to the preceding paragraphs, and incorporates them herein by reference.

96. Denied.

97. Denied.

98. Denied.

99. Denied.

100. Denied.

101. Denied.

102. Denied.

103. MRO repeats its answers to the preceding paragraphs, and incorporates them herein by reference.

104. Denied.

105. Denied.

106. Denied.

107. Denied.

108. MRO repeats its answers to the preceding paragraphs, and incorporates them herein by reference.

109. MRO is without knowledge or information sufficient to admit or deny the allegations.

110. MRO is without knowledge or information sufficient to admit or deny M2's experience as a pioneer in the field of Internet application service hosting but denies that M2 gained this alleged experience by hosting MAXIMO via the Internet.

111. MRO is without knowledge or information sufficient to admit or deny the allegations.

112. MRO is without knowledge or information sufficient to admit or deny the allegations.

113. Denied.

114. Denied.

115. Denied.

116. Denied.

117. MRO admits that it is offering MAXIMO via Internet hosting, but states that it has repeatedly told M2 that it would do so. MRO denies the remaining allegations in this paragraph of the Amended Complaint.

118. Denied.

119. Denied.

120. Denied.

121. Denied.

122. Denied.

123. MRO repeats its answers to the preceding paragraphs, and incorporates them herein by reference.

124. The allegations in this paragraph are legal allegations for which no response is required.

125. The allegations in this paragraph are legal allegations for which no response is required.

126. The allegations in this paragraph are legal allegations for which no response is required.

127. Denied.

128. Denied.

129. Denied.

130. Denied.

131. MRO repeats its answers to the preceding paragraphs, and incorporates them herein by reference.

132. Denied.

133. Denied.

134. Denied.

135. Denied.

136. MRO repeats its answers to the preceding paragraphs, and incorporates them herein by reference.

137. The allegations in this paragraph are legal allegations for which no response is required.

**Affirmative Defenses**

1. Plaintiff's claims are barred by the terms of the 2002 Agreement, including but not limited to the Integration Clause in paragraph 10(k).

2. Plaintiff has failed to state factual and legal allegations sufficient to constitute any cause of action against MRO.

3. Plaintiff has failed to state fraud with particularity, as required by Fed. R. Civ. P. 9(b).

4. Plaintiff's claims are barred by the doctrines of unclean hands, estoppel, laches and waiver.

5. Plaintiff's breach of contract claim is barred by a lack of consideration.

6. Recovery by plaintiff is barred, in whole or in part, in that, on information and belief, plaintiff failed to minimize its damages (if any have been suffered).

WHEREFORE, defendant MRO Software, Inc., asks that the Court:

1. Dismiss the Amended Complaint, with plaintiff recovering nothing thereby from MRO;

2. Award MRO its attorneys' fees;

3. Award MRO its cost of suit; and

4. Award such other and further relief as the Court deems just and proper.

Respectfully Submitted,

/s/ Kurt Bratten
Lee T. Gesmer (BBO No. 190260)
Kurt Bratten (BBO No. 644730)
Gesmer Updegrove LLP
40 Broad Street
Boston, MA 02109
(617) 350-6800

Dated: February 8, 2005