UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| M2 CONSULTING, INC., | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 03-12589-GAO |
| MRO SOFTWARE, INC., | ) |
| Defendant. | ) |

**AFFIDAVIT OF MARK S. RESNICK**

I, Mark S. Resnick, do hereby depose and state as follows:

1. I am an attorney and a member in good standing of the bar of the Supreme Judicial Court of the Commonwealth of Massachusetts, BBO # 559885.

2. I am counsel to the Plaintiffs in the above-captioned action.

3. MRO's initial document production contained relatively few documents. It included hard copy prints outs of email communications between the parties, in "text file" format. It contained almost no email. M2's counsel brought these deficiencies to MRO's attention, and has continued to do for a many months. On January 18, 2004, M2's counsel wrote to MRO's counsel outlining 34 separate areas where MRO's production was incomplete. MRO responded by promising to look into the deficiencies, but to date MRO has neither made a supplemental production nor informed M2 that its search is complete and no responsive documents exist.

4. In response to clarification of certain document requests, M2 produced email communications between the parties as electronic documents on a DVD. This DVD contained approximate 39,000 separate emails, in text format – the same format MRO used to produce hard copies of email to M2. The production of the DVD and CD brought M2's total document production to more than 42,000 pages of material.

5. On several occasions, M2's counsel discussed with MRO's counsel the exchange of privileged document logs, describing by type and privilege all documents withheld from production pursuant to the assertion of any privilege. MRO's counsel stated that MRO did not want to compile or exchange privilege logs. M2's counsel agreed with MRO's request that privilege logs not be exchanged.

6. Notwithstanding M2's extensive production, MRO continued to complain that it was not extensive enough. In September, 2004, M2's counsel had an extensive discovery conference with MRO's counsel regarding document production issues. MRO's counsel complained that M2's document production was not sufficiently extensive. MRO's counsel also complained that the text format email production appeared to have omitted certain email attachments, and that the format was difficult for his office information technology systems to use. M2 responded by requesting that MRO identify the missing attachments, and offered to produce the email documents from the M2 DVD in hard copy. MRO complained that a hard copy production would also be cumbersome for its counsel to work with.

7. MRO's counsel requested that M2 duplicate its email production, but that this time it utilize a "PST format", which would work better with MRO's counsel's computer system. In an effort to address MRO's concerns, M2 duplicated its email production,

verified the attachments, and produced to MRO another CD on November 16, 2004, and another DVD on November 24, 2004, both with the same emails it produced earlier, this time formatted in PST format.

8. MRO continued to complain throughout the fall of 2004, that M2's document production was insufficient. In November, 2004, counsel for M2 and MRO had another discovery conference, where MRO's counsel once again inquired about the confidential and proprietary business information M2 claimed had been misappropriated. M2's counsel explained that the information at issue was not highly technical data or computer code, but rather business process information, including but not limited to application hosting processes, application configurations, pricing models, and marketing strategies. M2's counsel specifically stated that no technical documents had been produced responsive to this request, because no such documents existed. M2's counsel went on to explain that the types of information which M2 claimed had been misappropriated were contained in the email interaction between the parties' employees, was therefore contained in the documents already produced. Following this explanation by M2's counsel, MRO's counsel claimed to understand both the nature of M2's claims, and the documentation which had been produced in support.

9. Although counsel for the parties had numerous discussions regarding document production issues and MRO's dissatisfaction with M2's interrogatory responses, MRO did not agree to narrow or meaningfully clarify its requests.

10. During one such discovery conference, M2's responses to Interrogatories 9, 10, 17, 18, 22, and 25 were discussed. M2's counsel did not admit that the responses were

3

deficient. Rather, counsel for both sides discussed MRO's belief that they were deficient and M2's counsel agreed only to consider whether, in light of the discussion, there was any way in which M2 could address MRO's objections.

11. MRO served 25 interrogatories on M2 on October 25, 2004. In December 2004, counsel for the parties had a discovery conference. MRO's counsel requested that M2 supplement virtually every response and that it waive its objections, taking the positions that none of M2's objections were appropriate, and virtually every answer was deficient in some way. MRO's counsel threatened that unless M2 answered the vast majority of the interrogatories to its satisfaction, it would move to compel. M2 offered a compromise, and agreed to investigate the possibility, in light of certain clarifications provided by MRO's counsel supplementation of its responses to Interrogatory Nos. 9, 10, 17, 18, 22, and/or 25 would be possible. M2's counsel informed counsel for MRO that M2's CEO, Rick Bevington ("Mr. Bevington") was recuperating from surgery, and that since he was the contact for coordinating the information sources needed to produce this potential supplementation, any response regarding potential supplemental responses would take some time. MRO's counsel agreed that no specific deadline would be set for receipt of M2's decision regarding potential supplemental responses.

12. At the same time that MRO was threatening to move to compel, M2 was pressing MRO to finish its document production and to make its witnesses available for depositions.

13. On January 18, 2004, I wrote to counsel for MRO outlining deficiencies in MRO's document production. MRO eventually responded on January 27th by indicating that

4

it was searching for the documents but that the references to responses in the email notwithstanding, the documents simply might not exist.

14. During a discovery conference in December, 2004, MRO's counsel reminded me that M2's interrogatory signature had not been signed under the penalty of perjury. I informed MRO's counsel that not only would M2 provide a sworn response to its interrogatory responses, but also provided assurances that the responses would not change.

SIGNED UNDER THE PENALTIES OF PERJURY THIS 16TH DAY OF FEBRUARY, 2005.

_____
Mark S. Resnick

## CERTIFICATE OF SERVICE

I, Mark S. Resnick, Esq., hereby certify that I have on the 16th day of February, 2005, served, by fax and first class mail, a copy of the foregoing document upon:

Lee Gesmer, Esquire
Gesmer Updegrove LLP
40 Broad Street
Boston, MA 02109 - 4310

_____