UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| M2 CONSULTING, INC., | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | )Civil Action No.  03-12589-GAO |
| v. | ) |
| | ) |
| MRO SOFTWARE, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF
INTERROGATORIES

Pursuant to Fed. R. Civ. P. 33, M2 Consulting, Inc. ("M2") hereby responds to the First Set of Interrogatories propounded by the defendant, MRO Software, Inc.

Interrogatory No. 1:

Identify, by name, last known address, and telephone number, each person known to you (or to any person acting on your behalf) to have personal knowledge of any facts or matters alleged by you in the Complaint. With respect to each such person, specify in detail the matters as to which you believe that person has knowledge.

Response to Interrogatory No. 1:

In addition to the MRO personnel with whom M2 dealt, the following individuals are known to have personal knowledge of and matters alleged in the Complaint.

1.    T. R. Bevington
       43 Jefferson Parkway
       Newnan, GA 30263
       All relevant matters.

2.    Jeff Foley
       43 Jefferson Parkway
       Newnan, GA 30263
       Agreements.

3.    Thayer Stewart
      96 Cross Ridge Road
      New Canaan, CT 06840
      MRO Commitments by Parker, Drapeau, and Williams.

4.    Dave Bigler
      1592 Reid's Ferry Road
      Marietta, GA 30062
      MRO Commitments by Parker, Drapeau, and Williams.

5.    Tom Schulte
      890 Secret Grove Drive
      Sugar Hill, GA 30518
      MRO Commitments by Moore, Parker, Miciek, and Kasper.

6.    Tony Prelec
      292 Hufnagel Road
      Harmony, PA 16037
      MRO Commitments by Miciek, Leone, and Kasper.

INTERROGATORY NO. 2:

    With respect to each communication, described in the Complaint that was made
by an employee or representative of MRO to an employee or representative of M2 where
either the speaker or the recipient of the statement is not identified by name, identify the
speaker or the recipient. By way of example, paragraph 25 of the Complaint states that
"Statements were made by MRO to M2Consulting throughout the summer of 2002." In
this example M2 should identify the MRO employee or representative who made the
alleged statements, and the M2 employees or representatives who heard the alleged
statements.

Response to Interrogatory No. 2:

    M2 objects to this interrogatory on the grounds that, as worded, it is overbroad

and unduly burdensome. Subject to and without waiver of these objections, M2 states as

follows. Communications in November 2000 were made by Moore, Leone & Kasper to

Bevington. Communications in October 2001 were made by Drapeau, Parker to

Bevington and Stewart. Communications in August 2002 were made by Parker,

Williams to Bevington and Stewart. Communications in Winter/Spring 2003 were made

by Parker to Bigler and Bevington. In addition, Ray Miciek made communications with

many M2 employees throughout the referenced time periods, as did Parker.

INTERROGATORY NO. 3:

Identify each officer and director of M2 from January 1, 1999 to the present, and
state (i) the position held and (ii) the dates the position was held.

Response to Interrogatory No. 3:

M2 objects to this interrogatory on the grounds that it seeks information which is

irrelevant and unlikely to lead to the discovery of admissible evidence in this action.

INTERROGATORY NO. 4:

Identify every shareholder in M2 from January 1, 2000 to the present, and for
each such person state the number of shares held during that time period (or any part of
that time period) and the percentage ~ outstanding shares represented by the number of
shares.

Response to Interrogatory No. 4:

M2 objects to this interrogatory on the grounds that it is overbroad and unduly

burdensome, and that it seeks information which is irrelevant and unlikely to lead to the

discovery of admissible evidence in this action.

INTERROGATORY NO. 5:

Identify every investor in M2, and state the date and the amount of the
investment.

Response to Interrogatory No. 5:

M2 objects to this interrogatory on the grounds that it is overbroad and unduly

burdensome, and that it seeks information which is irrelevant and unlikely to lead to the

discovery of admissible evidence in this action.

INTERROGATORY NO. 6:

Describe in detail the proprietary and confidential. information belonging to M2 that you allege was communicated to MRO, and as to each such item provide the following information:

(a)     State who at M2 provided the information, who at MRO received the information and the date of the communication.

(b)     Identify each document that concerns the communication of the alleged proprietary and confidential information.

(e)     State the basis for your belief that the information is proprietary and confidential.

Response to Interrogatory No. 6:

M2 objects to this interrogatory on the grounds that, as worded, it is overbroad

and unduly burdensome.

Subject to and without waiver of these objections, M2 states as follows. M2

alleges the following categories of proprietary and confidential information were

communicated to MRO: (1) MAXIMO Application Hosting Processes; (2) MAXIMO

Application Hosting Procedures; (3) MAXIMO Application Hosting Configurations; (4)

MAXIMO Application Hosting Services; (5) MAXIMO Application Hosting Pricing; (6)

MAXIMO Application Hosting Marketing. This information was proprietary to M2,

because M2 created it. This information did not exist prior to M2's development of it.

The information in all the above referenced categories was communicated to MRO by

M2 constantly throughout the M2's relationship with MRO by M2 staff. Transmittals

between M2 and MRO were marked "Confidential". M2 also had a Confidentiality

Agreement in place with MRO which required this information to be kept confidential.

M2 personnel also informed MRO personnel that this information was not to be used by

MRO to compete with M2.

4

INTERROGATORY NO. 7:

With respect to the "third party competitor" that "indicated an interest in and pursued the purchase of" M2, referenced in paragraph 37 of the Complaint and the interested third parties" referenced in paragraph 49(e)(the "potential purchasers"):

(a)    identify each potential purchaser, and every employee or representative of the potential purchasers with whom M2 communicated;

(b)    identify any business broker or investment banker that acted as an intermediary between M2 and the potential purchasers;

(c)    identify all documents concerning M2's dealings with the potential purchasers.

Response to Interrogatory No. 7:

The potential purchaser was Indus International.  Tom Madison was its Chief Executive Officer.  Jeff Babka was its Chief Financial Officer.  Trey Huffman was its Director of Finance.  Larry Hageman was its Executive Vice President of Sales & Marketing.  Craig Ferris was its Vice President of Sales and Adam Batani was its General Counsel.  M2 communicated with all these individuals to some extent during its discussions with Indus. No brokers were used in the transaction.  Pursuant to Fed. R. Civ. Proc. 33(d) M2 states that the answer to subsection (c) of this interrogatory can be derived from the relevant business records of M2, which have already been produced to MRO.

INTERROGATORY NO. 8:

With respect to the allegations in paragraph 48 and 49 of the Complaint regarding actions taken by M2, and actions M2 forbore from taking, in reliance on representations made by MRO:

(a)    Describe in detail the alleged creation and completion of the computer infrastructure and identify every document concerning the alleged expenditures;

(b)    Describe in detail the alleged expansion of M2's workforce, and specifically identify each individual hired, the date of hire, the salary at which the individual was hired, and the date the individual was terminated,

(c)    Identify every document concerning the marketing related materials and the marketing related personnel. With respect to personnel, identify each. individual hired, the date of hire, the salary at which the individual was hired, and the date the individual was terminated. With respect to any ad agency or other contractor, identify the contractor and identify all documents concerning the services provided, and monies paid to, the contractor.

Response to Interrogatory No. 8:

Pursuant to Fed. R. Civ. Proc. 33(d) M2 states that the answer to subsection (a) of this interrogatory can be derived from the relevant business records of M2, which have already been produced to MRO.

M2 expanded its work force as follows: Ken Norwood – 5/2000 through 1/2001 at a salary of approximately $30,000 per year; Tony Prelec – 12/2000 through 10/2001 at a salary of approximately $105,000 per year; Neal Pye – 8/2000 through 10/2003 at a salary of approximately $70,000 per year; Tom Schulte – 10/2000 through 10/2001 at a salary of approximately $100,000 per year; Mike Garber – 6/2001 through 10/2001 at a salary of approximately $40,000 per year; and Suzanne English – 6/2001 through 9/2003 at a salary of approximately $28,000 per year.

Pursuant to Fed. R. Civ. Proc. 33(d) M2 states that the answer to subsection (c) of this interrogatory can be derived from the relevant business records of M2, which have already been produced to MRO.

INTERROGATORY NO. 9:

With respect to the allegations of fraud contained in the complaint, identify every fraudulent statement, false promise or misrepresentation made by MRO to M2.

Response to Interrogatory No. 9:

M2 objects to this interrogatory on the grounds that, as worded, it seeks information protected by the attorney-client privilege and work product doctrine.

INTERROGATORY NO. 10:

If M2 contends that MRO has forgiven monies owed to MRO under the 2000 Agreement or the 2002 Agreement, state the basis for that contention.

Response to Interrogatory No. 10:

M2 communicated by letter to Drapeau providing reasons for the request waiving fees under 2000 Agreement. This letter was produced to MRO in discovery. M2 had discussions regarding this subject with Drapeau in November 2002, who at that time said that the decision was Williams'. That same day M2 had discussions with Williams in person and he approved the waiver and agreed not to let the situation develop again. Based on those statements, M2 confirmed the decision and conveyed the decision to Nancy Gilroy and who then took payment out of the 2002 Agreement.

INTERROGATORY NO. 11:

Identify every payment of monies made by M2 to MRO, and as to each such payment state the date and amount, and the basis for the payment.

Response to Interrogatory No.11:

M2 paid the amount of $5,785.50 to MRO for the November 2002 Hosting obligation. MRO had resisted attempts to make payments previously, and refused to issue invoices when they were requested by M2. Consistent with the agreement with Williams to waive fees in 2000 Agreement and not let the situation develop again, M2 proactively paid in month one following those discussions and paid without an invoice. MRO refused to provide any invoices thereafter. Payments in excess of $200,000.00 for

other software and services has been made by M2 to MRO when properly invoiced by

MRO, but those payments are not in dispute.


INTERROGATORY NO. 12:

Identify every customer to whom M2 has provided MAXIMO hosting services
from November 24, 2003 to the present, and as to each such customer state the hosting
fees paid by the customer to M2.

Response to Interrogatory No. 12:

Pursuant to Fed. R. Civ. Proc. 33(d) M2 states that the answer to this interrogatory

can be derived from the relevant business records of M2, which have already been

produced to MRO.


INTERROGATORY NO. 13:

Identify every potential customer to whom M2 has marketed MAXIMO hosting
services since November 24, 2003, and identify every document concerning such
marketing.

Response to Interrogatory No. 13:

M2 objects to this interrogatory on the grounds that it is overbroad and unduly

burdensome, and that it seeks information which is irrelevant and unlikely to lead to the

discovery of admissible evidence in this action.


INTERROGATORY No. 14:

Identify every version of MAXIMO that M2 has in its possession (for
example, version 5.1 .X), and as to each such version of MAXIMO state (i) the date it
came into M2'c possession and (ii) the contract with MRO under which M2 came into
possession of this version.

Response to Interrogatory No. 14:

Pursuant to Fed. R. Civ. Proc. 33(d) M2 states that the answer to this interrogatory can be derived from the relevant business records of M2, which have already been produced to MRO.

INTERROGATORY NO. 15:

State on a historical basis, for each of the last five years, the number of employees employed by M2, and provide a census of employee positions (e.g., number engaged in development, sales, pre—sales, sales engineering, support)

Response to Interrogatory No. 15:

M2 objects to this interrogatory on the grounds that it is overbroad and unduly burdensome, and that it seeks information which is irrelevant and unlikely to lead to the discovery of admissible evidence in this action.

INTERROGATORY No. 16:

Please identify each person who has been responsible for promotion, sales, marketing or technical support of M2's promotion of M2's MAXIMO solution from 2000 to the present, and as to each such person state (i) dates of employment or business relationship with M2 (if, for example, the person was an independent contractor), (ii) the person's responsibilities and (iii) the person's compensation. If the person's compensation changed at any time, state the dates and amounts of compensation.

Response to Interrogatory No. 16:

M2 objects to this interrogatory on the grounds that, as worded, it is overbroad and unduly burdensome, and that it seeks information which is irrelevant and unlikely to lead to the discovery of admissible evidence in this action.

INTERROGATORY NO. 17:

Describe in detail every item of technical information that M2 has provided to MRO, and for each such item provide the date, the nature of the information, the reason

that M2 provided this information to MRO, the person and department within MRO that allegedly received this information, and identify every document concerning the item.

Response to Interrogatory No. 17:

M2 objects to this interrogatory on the grounds that it is overbroad and unduly burdensome, and that it seeks information which is irrelevant and unlikely to lead to the discovery of admissible evidence in this action. Without waiving and subject to these objections, M2 states as follows. Pursuant to Fed. R. Civ. Proc. 33(d) M2 states that the answer to this interrogatory can be derived from the relevant business records of M2, which have already been produced to MRO.

INTERROGATORY NO. 18:

Identify every communication M2 has had with MRO's Operations Center in London, Ontario.

Response to Interrogatory No. 18:

M2 objects to this interrogatory on the grounds that it is overbroad and unduly burdensome, and that it seeks information which is irrelevant and unlikely to lead to the discovery of admissible evidence in this action. Subject to and without waiver of these objections, M2 states that to the extent any documents in M2's possession evidence any such communications, M2 has already produced them to MRO in discovery, and therefore pursuant to Fed. R. Civ. Proc. 33(d) M2 states that the answer to this interrogatory can be derived from the relevant business records of M2.

INTERROGATORY NO. 19:

State the version of MAXIMO that M2 hosts for the benefit of its customers, and if M2 is hosting more than one version of MAXIMO, identify the customers for which M2 is hosting version 4.X, and those for which it is hosting version 5 .X.

Response to Interrogatory No. 19:

| Rev. 5.2 | Rev. 4.1.1 |
| --- | --- |
| ABS | ABS |
| BRCS | AT&T |
| Battelle | Washington Group |
| JCI | CB Richard Ellis |
| Delta Air Lines | MacFarlan |
| Excel Services | New Orleans Convention Center |
| GRS | NSTAR |
| Globe Ground | Reckson |
| Hyatt | |
| New Flyer | |
| One Source | |
| Pepco | |
| RNM | |
| Starrett | |

INTERROGATORY NO. 20:

Identify every expenditure made by M2 on equipment and other capital assets after MRO allegedly promised to promote M2's solutions within MRO's sales force.

Response to Interrogatory No. 20:

Pursuant to Fed. R. Civ. Proc. 33(d) M2 states that the answer to this interrogatory can be derived from the relevant business records of M2, which have already been produced to MRO.

INTERROGATORY NO. 21:

Explain any defense that M2 intends to assert to MRO's claims for money owed by M2 under the Hosting Affiliate Agreement, to the extent that the obligations to pay arose from and after the date of M2's request that MRO forgive amounts then outstanding under the Hosting Affiliate Agreement.

Response to Interrogatory No. 21:

M2 objects to this interrogatory on the grounds that, as worded, it seeks

information protected by the attorney-client privilege and work product doctrine.

INTERROGATORY NO. 22:

Identify each person you have interviewed or from whom you have obtained a
written or recorded statement regarding any matters at issue in this litigation; and identify
any statements that have been obtained.

Response to Interrogatory No. 22:

M2 objects to this interrogatory on the grounds that as worded, it seeks

information protected by the attorney-client privilege and work product doctrine, it is

overbroad and unduly burdensome, and that it seeks information which is irrelevant and

unlikely to lead to the discovery of admissible evidence in this action.

INTERROGATORY NO. 23:

State whether you are aware of any statement, communication or testimony made
by any employee or agent of MRO in the nature of an admission which you expect or
intend to rely upon or present as evidence in this matter. Please provide the following
information regarding each such statement, communication or testimony:

(a)    Identify each person making the statement, communication, or testimony;

(b)    Identify each person who received and/or heard the statement, communication or
testimony;

(c)    State the time, date and place of the statement, communication, or testimony;

(d)    Describe specifically the statement, communication or testimony; and

(e)    Identify each and every document referring or relating to tize??? statement,
communication or testimony.

Response to Interrogatory No. 23:

M2 objects to this interrogatory on the grounds that as worded, it seeks

information protected by the attorney-client privilege and work product doctrine.

INTERROGATORY NO. 24:

Identify each person you expect to call as an expert witness at the trial and, with
respect to each such person:

(a)    Describe in detail the subject matter on which the person is expected to testify;

(b)    State in detail the substance of the facts to which the person is expected to testify;

(c)    State in detail the substance of all opinions to which the person is expected to
testify; and

(d)    State in detail the grounds for each opinion.

Response to Interrogatory No. 24:

M2 objects to this interrogatory on the grounds that as worded, it seeks to compel

M2 to produce information in advance of the deadlines established by the parties for the

submission of expert reports in this case.  Further answering and subject to the above

objection, M2 states that it has not yet identified the what experts, if any, it intends to call

at the trial of this action.

INTERROGATORY NO. 25:

Identify, itemize, and describe in detail all damages, expenses and losses you are
claiming in this litigation and identify each document that refers, relates to, evidences, or
supports any damages claimed by you in this litigation.

Response to Interrogatory No. 25:

M2 objects to this interrogatory on the grounds that as worded, it seeks

information protected by the attorney-client privilege and work product doctrine, it is

overbroad and unduly burdensome, and that it seeks information which is irrelevant and

unlikely to lead to the discovery of admissible evidence in this action.

M2 Consulting, Inc.

By: _____

Chief Executive Officer

As to Objections:

M2 Consulting, Inc.
By its Attorneys
Fee, Rosse & Lanz, P.C.

By: _____
Mark S. Resnick, Esq. (BBO# 559885)
Fee, Rosse & Lanz, P.C.
321 Boston Post Road
Sudbury, MA 01776
(978) 440-7000

DATED: December 3, 2004

## CERTIFICATE OF SERVICE

I, Mark S. Resnick, Esq., hereby certify that I have on the 3rd day of December
served, by fax and first class mail, a copy of the foregoing document upon:

Lee Gesmer, Esquire
Gesmer Updegrove LLP
40 Broad Street
Boston, MA 02109 - 4310