# ~~TERM SHEET~~

## INDUS INTERNATIONAL and M2 CONSULTING

### August 19, 2002

| | |
|---|---|
| **1. Parties** | Indus International, Inc. ("Indus") and M2 Consulting, Inc. ("M2") are the sole parties to the agreement(s) contemplated by these terms. |
| **2. Consulting Agreement; Term** | The parties agree to negotiate a mutually agreeable professional services agreement under which M2 will provide Indus with the professional services described in Section 4 of this term sheet. The professional services agreement will have a term of three weeks from the date of execution. |
| **3. M2 Professional Services** | M2 currently offers professional services through its employees to its existing customers and prospective customers. In the course of these services, M2 provides software implementation, customization, and best practices consulting. |
| **4. Professional Services Deliverable to Indus** | M2 will provide professional services to Indus for purposes including but not limited to the following:<br>- Sales Support<br>- Market Analysis<br>- Consulting<br>- Product Design Input |
| **5. Fees for Professional Services** | Indus will pay M2 a one-time retainer fee of $100,000 for the professional services described in Section 4 above. Indus will pay this sum within five working days of receipt of invoice from M2. |
| **6. Acquisition** | Indus and M2 are interested in negotiating a business transaction under which Indus would acquire all or a portion of M2, the form and substance of such transaction to be mutually agreed upon (the "Potential Transaction"). In order to facilitate the negotiation of the Potential Transaction, M2 and its shareholders shall provide Indus with full access to M2, its personnel, properties, contracts, books and records and all other documents and data, subject to Section 7 below. Subject to the completion of its due diligence by Indus, the parties contemplate entering into Letter of Intent to describe the agreed upon terms of the Potential Transaction, to be followed by the negotiation of definitive agreements related to the Potential Transaction. |
| **7. Confidentiality** | The contents of this term sheet shall be subject to that certain Mutual Confidentiality Agreement entered into between Indus and M2 as of June 21, 2002. Indus and M2 agree to obtain the other's consent prior to any press releases or other public disclosures related to this term sheet. |

Except for the Confidentiality provisions set forth in Section 7 above, this Term Sheet is non-binding and does not create any obligation of either party; no such binding obligation shall arise until the parties have entered into definitive agreements related to (i) professional services contemplated under Section 2 through 5 above or (ii) the Potential Transaction contemplated under Section 6 above.

**INDUS INTERNATIONAL, INC.**

By: _[signature]_

Print Name: LARRY HINGEWOOD

Title: SVP InSite Business Unit

Address:

Indus International, Inc.
3301 Windy Ridge Parkway
Atlanta, Georgia 30339

Phone: (770) 989-4000

**M2 CONSULTING, NC.**

By: _[signature]_

Print Name: T. R. BEVINGTON

Title: President / CEO

Address:

M2 Consulting
57- B Jefferson Parkway
Newnan, GA 30263

Phone: (770) 253-1183

## Iris Martin

| | |
|---|---|
| From: | Adam.Battani@indus.com |
| Sent: | Tuesday, August 20, 2002 1:29 PM |
| To: | Rick Bevington |
| Cc: | Trey.Huffman@indus.com; sortwein@alston.com |
| Subject: | Indus International, Inc.; Due Diligence Request |



M2.Due diligence
request list....

Mr. Bevington:

Per the non-binding term sheet dated August 19, 2002 between Indus and M2, attached is Indus' due diligence request list. The list of requested materials is quite lengthy. Please understand, however, that the list is designed to cover a wide range of possible circumstances. It is likely, therefore, that certain of the requests are inapplicable to M2 and its business. We apologize in advance as to these matters, and we urge you to
let us know which requests are inapplicable and any requests which may be overly burdensome. We will do our best to accommodate you.

Once you have had a chance to review this list and you have begun to assemble the materials, please call me at 770-989-4061 or Trey Huffman at 770-989-4459 to discuss the logistics of forwarding copies to Indus or
setting up a data room to review the documents. Also, for your
information, the law firm of Alston & Bird will be assisting Indus in the
due diligence process. Our primary lawyer contact at Alston & Bird is
Scott Ortwein and his direct dial is 404-881-7936. If M2 plans to engage counsel in this process I would appreciate receiving his or her contact information so that I can pass it along to Mr. Ortwein.

An original signed copy of this letter will follow by Federal Express. We look forward to working with you on this project.

Regards,
Adam Battani
General Counsel

(See attached file: M2.Due diligence request list.08.20.02.DOC)

*******************************************

This email message and all attachments transmitted with it are for the sole use of the intended recipient(s) and may contain confidential and privileged information. Please DO NOT forward this email outside of the recipient's Company unless expressly authorized to do so herein. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

Any views expressed in this email message are those of the individual sender except where the sender specifically states them to be the views of Indus International, Inc.
*******************************************

1

August 20, 2002

Rick Bevington
M2 Consulting, Inc.
57-B Jefferson parkway
Newnan, GA 30263

    Re:    Due Diligence Request

Dear Mr. Bevington,

    Per the non-binding term sheet dated August 19, 2002, the following is our due diligence request list. The list of requested materials is quite lengthy. Please understand, however, that the list is designed to cover a wide range of possible circumstances. It is likely, therefore, that certain of the requests are inapplicable to the Company and its business. We apologize in advance as to these matters, and we urge you to let us know which requests are inapplicable and any requests which may be overly burdensome. We will do our best to accommodate you.

    Please understand that this is an initial request and that we may request additional information as we progress through our due diligence. In addition, please regard this letter as a continuing request so that any documents or information which come into existence prior to the completion of our due diligence review and which would be covered by this request will also be forwarded or made available to us by you.

    As used in the list below, the term "Company" includes M2 Consulting, Inc., any predecessor and any subsidiary or other entity in which M2 Consulting, Inc. owns or currently proposes to acquire a 10% or greater equity interest. Accordingly, documents requested as to the "Company" should be furnished for both M2 Consulting, Inc. and for any such other entity if applicable.

    1.    <u>Corporate</u>.

        a.    Articles of Incorporation of the Company and any amendments to date.

        b.    Bylaws of the Company and any amendments to date.

        c.    Minutes of all meetings of the Board of Directors, all Board committees and the shareholders of the Company during the last three years.

        d.    A sample of each type of agreement, together with copies of each plan, relating to outstanding options, warrants or other rights of non-employees to acquire stock or other securities of the Company. A schedule of outstanding options and warrants specifying date issued, name of optionee or warrant holder and exercise price.

        e.    All shareholder, voting, repurchase, registration rights or other agreements with respect to securities of the Company.

        f.    A description of the capital structure of the Company, its subsidiaries and affiliates, including a list of the percentage ownership of each class of stock held by the Company

ATL01/11260132v1

with respect to any subsidiary, joint venture, etc. and a description of any intercompany transactions.

g. A list of all material acquisitions, dispositions, mergers, consolidations and reorganizations in the past three years, together with all material documents or closing binders relating to any such events. Please also describe any current plans for any events of the type described above.

2. Operations.

a. All outstanding business contracts or arrangements, including in particular contracts or arrangements with customers and suppliers. Without limiting the generality of the foregoing, this includes all contracts for services with your end-user customers, all equipment leases, your agreement(s) with Cable & Wireless and unredacted copies of all agreement(s) with MRO, Inc and its predecessors.

b. A list of the customers of the Company, including, for each, revenues generated for each of the past three years.

c. A list of vendors and suppliers of the Company.

d. A description of all subcontracts with others.

e. All loan agreements, indentures, promissory notes, guaranty agreements, security agreements, or other documents (including material correspondence between and compliance reports to lenders or creditors) relating to any outstanding or proposed indebtedness of the Company, or of any person as to which the Company may be a surety or guarantor or as to which it otherwise might become liable.

f. Any other material contracts to which the Company is a party and any other documents containing any restrictions on financing, borrowing or the issuance or offering of any securities of the Company.

g. All joint venture, strategic alliance and partnership agreements to which the Company is a party.

h. All marketing, distribution and franchising agreements to which the Company is a party.

i. The Company's accounting policy manual.

j. A list of all other written policies, procedures, guidelines, manuals and rules of the Company.

k. A list of states and countries in which the Company is qualified to do business, owns or leases any property, maintains any assets or has registered any trade names.

l. A list of states and countries in which the Company maintains an office or an agent who is a resident of such jurisdiction.

m. A list of states and countries in which the Company files tax returns.

      n.    A list of all trade names under which the Company has transacted business during the past five years and jurisdictions in which such trade names are registered.

      o.    A description or schedule of all insurance policies in effect, including (i) fire, casualty and public liability insurance, (ii) automobile insurance, (iii) title insurance, (iv) workers compensation insurance, (v) business interruption insurance, (vi) product liability insurance, (vii) key-man insurance, (viii) directors' and officers' ("D&O") liability insurance and (ix) any other significant insurance policies presently in effect or proposed to be purchased.

3.    <u>Properties and Assets</u>.

      a.    A list and description of each of the Company's offices, plants, branches, facilities, indicating location, year opened, whether the location is leased or owned, annual lease payments or net book value, and any planned expansion of such location, together with copies of all documents utilized in the acquisition by the Company of its interest in such properties, including all leases.

      b.    A list and description of all other real property ever owned or leased by the Company or by any joint venture or partnership in which the Company participates.

      c.    Copies of all notices of violation or requests for information from any federal, state or local governmental agency or authority ("Agency"), notifications or reports submitted to an Agency, and material correspondence with any Agency in connection with matters relating to pollution, protection of the environment and human health and safety, underground storage tanks ("USTs"), asbestos, or pesticides or agricultural chemicals ("environmental matters"), as well as any permits, licenses, certificates, authorizations, or approvals with respect to environmental matters. Note: all questions involving environmental matters should be answered with respect to all <u>currently</u> owned or used real property, and with respect to <u>previously</u> owned or used real property.

      d.    A list and description of any hazardous or toxic or regulated materials which are or have been stored, treated, placed, held, located, released or disposed or on, under or at the Company's real property, including but not limited to materials in USTs and any pesticides, herbicides, or agricultural chemicals applied or released to the land, or the transportation of any such materials from such property to any off-site location, as well as any related manifests, permits, certificates, authorizations, or approvals.

      e.    A copy of any reports, soil or water or asbestos sampling or analytical data, UST testing data and closure or release notifications and reports, or other written documents or materials regarding environmental matters which relate to the Company or its real property.

      f.    A schedule of patents, patent applications, trademarks, service marks, trade names, brands, copyrights or other intellectual property rights that relate to the Company's operations or name, owned, licensed or otherwise used by the Company in the operation of its business.

4.    <u>Management and Employees</u>.

      a.    Current organizational chart for the Company.

      b.    A list of the names and ages of all of the directors, executive officers and key employees of the Company, indicating all positions and offices with the Company held by

3

such persons, their current annual compensation from the Company, any family relationships among them, any arrangements or agreements between them and the Company (other than employment agreements), and the total number of employees (both full and part time) of the Company.

      c.    All employment, severance, change of control, indemnification or similar contracts between the Company and its management employees or directors, and a list of all non-management employees under contract together with copies of all standard forms of employment contracts for such persons.

      d.    All consulting, non-disclosure or non-competition agreements in effect.

      e.    A list and copy of all employee benefit plans, such as stock option plans, profit sharing plans, pension plans, group or key man life insurance plans, health plans, retirement plans, medical plans and similar arrangements or employee policies, together with any summary plan descriptions, prospectuses, IRS determination letters and all other reports or filings regarding such plans.

      f.    All collective bargaining contracts with any unions or other organizations representing employees of the Company, any correspondence relating to such contracts and any information or documentation relating to any strike, slowdown, picketing, work stoppage or organizing activity by any union or other group of employees of your facilities, as well as any secondary boycott or any lockout for the last three years.

5.    <u>Claims and Litigation</u>.*

      a.    A description (including any amount claimed) of all pending or threatened claims, litigation, administrative proceedings or governmental investigations or inquiries to which the Company or officers or directors of the Company are a party (whether as plaintiff or defendant) or which otherwise affect the Company, including claims by employees.

      b.    A description of any outstanding judgments against the Company and any consent decrees, settlement agreements or other decrees, agreements or orders to which the Company is a party or is bound and which require or prohibit any future activities.

      c.    A list of any claims made, the date of the claim, the nature of the claim, and the amount of the claim under: (i) any D&O insurance policy, (ii) any bankers' blanket bond policy or (iii) any other insurance policy covering the Company.

      d.    A description of any bankruptcy, criminal, or other judicial proceeding pending, expected, or completed within the past two years involving any of the Company's officers, directors, persons nominated to those positions, or other key employees.

6.    <u>Securities and Regulatory Compliance</u>.

      a.    All registration statements, prospectuses, offering memoranda and related documents regarding any public or private offering of securities (whether or not completed) from 1998 to date.

---

* Please consult with your counsel regarding whether compliance with this request might result in the loss of the protection of the attorney-client privilege for all or part of the information covered by this request.

ATL01/11260132v1

b.  All proxy statements, information statements, annual and interim reports to shareholders by or relating to the Company in the past three years.

c.  A list of all reports, filings, notices, citations, violations, claimed violations, etc. relating to matters involving any federal, state or local laws, agencies or regulatory authorities (including, without limitation, environmental laws, consumer laws, occupational health and safety laws, immigration and naturalization laws and workers compensation laws) in connection with the business of the Company.

d.  Any business licenses and other permits which are necessary to operate the Company's business.

7.  Financial and Tax.

a.  Audited financial statements for the last three fiscal years, including balance sheets, income statements, statements of cash flows and statements of shareholder equity.

b.  Unaudited financial statements for the period between the last audited financial statements and June 30, 2002, including balance sheet, income statement, statement of cash flows and statement of shareholder equity.

c.  All business plans, including the Company's most recent five-year business plan (or shorter period if no five-year plan exists) and all related financial projections.

d.  All management reports and analyses regarding product and service profitability, sales, expenses and budgets.

e.  All accountants' reports to management and attorneys' responses to audit inquiries relating to the Company for the past five fiscal years.

f.  All federal tax returns of the Company and any correspondence with the Internal Revenue Service for the past three fiscal years.

g.  A description of any outstanding audits, contests, notices, or deficiencies related to federal or state taxes.

h.  A copy of all federal payroll/unemployment tax filings within the last three years.

i.  A schedule showing estimated tax payments for the current year.

j.  Copies of any written tax sharing/allocation agreements and a summary of any unwritten tax sharing agreement.

k.  To the extent not otherwise provided, copies of all other material agreements, memoranda, opinions, and other documents relating to taxes, including a description of any tax planning strategies or opportunities that are being contemplated.

l.  A description of all withholding tax obligations or outstanding liabilities, excluding withholding obligations related to dividend distributions.

m.  A summary schedule of the undistributed accumulated foreign earnings and profits by foreign entity.

5

      n.    All state tax returns and other filings of the Company, including filings for sales, use, franchise, income, payroll/unemployment, real property taxes, and any correspondence with the relevant state taxing authority for the past three fiscal years.

      o.    A description of any reseller arrangements and the policy relating to related taxes.

      p.    A description of any federal and state tax audits and the results, including any IRS determination letters, since 1997.

8.    <u>Miscellaneous</u>.

      a.    Copies of any reports and of any articles from financial or other publications concerning the Company during the past year.

      b.    A list of the names of all counsel, consultants or other advisers and the area with respect to which they advise the Company.

      c    Any other information or document which in your judgment should be considered and reviewed by us in our consideration of the proposed transaction.

Once you have had a chance to review this list and you have begun to aswsemble the materials, please call Adam Battani at 770-989-4061 or Trey Huffman at 770-989-4459 to discuss the logistics of forwarding copies to Indus or setting up a data room to review the documents.

Sincerely,

Adam Battani
General Counsel

*Handwritten note (left side):* "These were guys we hired to do due diligence"

**ERNST & YOUNG**

Steven J. Krouskos
Partner
Southeast Area Transaction Support Practice Leader

- Ernst & Young LLP
  Assurance and Advisory
  Business Services
  Suite 2800
  600 Peachtree Street
  Atlanta, Georgia 30308-2215

- Phone: (404) 874-8300
  Direct: (404) 817-5090
  Fax: (404) 541-7123
  Mobile: (678) 852-6970
  Home: (770) 645-6842
  steve.krouskos@ey.com

**ERNST & YOUNG**

Craig Hallenbeck
Manager
Transaction Support

- Ernst & Young LLP
  Corporate Finance
  Becket House
  1 Lambeth Palace Road
  London
  SE1 7EU

  www.ey.com/uk

- Direct Tel: +44 (0)20 7951 6499
  Direct Fax: +44 (0)20 7951 3066
  Mobile: +44 (0)7939 159 538
  Home Tel: +44 (0)20 7373 2784
  challenbeck@uk.ey.com

PTO

**ERNST & YOUNG**

David K. Lee
Transaction Support

- Ernst & Young LLP
  Assurance and Advisory
  Business Services
  Suite 2800
  600 Peachtree Street
  Atlanta, Georgia 30308-2215

- Phone: (404) 874-8300
  Direct: (404) 817-4325
  Fax: (404) 541-7123
  Cell: (770) 335-1498
  Home: (404) 929-9909
  EY/Comm: 7435330
  dave.lee@ey.com

**Rick Bevington**

From: Trey.Huffman@indus.com
Sent: Monday, September 16, 2002 3:42 PM
To: Rick Bevington
Cc: Adam.Battani%INDUS@indus.com
Subject: RE: Agreement



M2.Review.091602
.ppt

Rick,

I'd like to talk with you at your earliest opportunity about the attached
proposed deal terms.  I have not forwarded formal documentation because the
terms are different than those we discussed last week.  Before forwarding
such documents, I wanted to discuss with you the reasons behind the
differences.

Thanks,

Trey

(See attached file: M2.Review.091602.ppt)


Trey Huffman
Director of Finance
InSite Business Unit
770 989 4459

1

# Indus International, Inc.

## Review of Potential Acquisition of M2 Consulting

### September 16, 2002

Deal Proposal



Indus International, Inc.
Proprietary and Confidential Information

1

## Proposed Deal

- Aggregate purchase price of $5.65 million consisting of
  - Combination of cash and stock at closing, plus assumption of debt
  - Potential post-closing earn-out payments based on performance

- Initial payment of $2.15 million at closing
  - $0.65 million in debt
  - $0.50 million in cash
  - $1.00 million in Indus stock

- Subsequent payments targeted at $3.50 million, based on four performance criteria
  - Revenue performance, with target payment of $280,000, payable in cash
  - Existing customer conversion, with target payment of $1,120,000, payable in cash
  - New customer contracts, with target payments of $1,050,000, payable in cash
  - New InSite customer bonus, with target payments of $1,050,000, payable $550,000 in cash, $500,000 in Indus stock

- Indemnification of $0.50 million, a portion of the stock for initial payment to be held in escrow

- Rick Bevington and Jeff Foley to sign employment agreements with Indus

