UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

M2 CONSULTING, INC.

Plaintiff,

v.                                              C.A. No. 03-12589-GAO

MRO SOFTWARE, INC.

Defendant.

**AFFIDAVIT OF JAMES BATTLE IN SUPPORT OF
MRO SOFTWARE, INC.'S MOTION FOR EXPEDITED DISCOVERY**

I, JAMES BATTLE, do hereby depose and state as follows:

**Personal Background**

1.      My name is James Battle.  I am the Vice President of Product

Development for MRO Software, Inc. ("MRO"), the defendant and plaintiff-in-

counterclaim in this action. The facts in this affidavit are based upon my personal

knowledge, except where I have indicated otherwise.

2.      For the last 12 years, I have worked at MRO.  MRO is a public company

whose customers use its products and services for strategic asset management, including

the procurement, deployment, tracking, and maintenance of high-value capital assets such

as manufacturing plants and office space.  During my tenure at the company, I have been

the MAXIMO Product Manager, Director of the Product Management Group, Director of

Product Development, and Vice President of Product Development.

3.      As Vice President of Product Development at MRO, I oversee the

technical development of the company's MAXIMO product line, and have ultimate

responsibility for the company's programming team. I am intimately familiar with the development, operation and installation of MAXIMO, MRO's flagship product and the software at the heart of this litigation.

## MAXIMO

4.      Companies use MAXIMO to maintain their high-value capital assets. For example, a company might use MAXIMO to address facilities management needs, such as maintaining warehouses or office space.

5.      Until December 2001, MAXIMO was not "web architected." In other words, it was not designed to be run over the Internet. Customers typically licensed the software themselves, and ran it internally on their own computer networks.

6.      Some customers, however, wanted the benefits of MAXIMO without having to license and run the software themselves. They favored the "application service provider" or "ASP" model, whereby another company would run and maintain the software, and provide them with remote access to it over the Internet.

7.      The advantages of the ASP model are varied. In some cases, customers do not have the infrastructure or technical expertise to maintain the software themselves; in others, they believe the service model offers them cost savings over licensing; and in still others, they want the flexibility of being able to access their data from any computer with an Internet connection.

8.      Early versions of MAXIMO could be run over Internet connections on an ASP basis, but the process was not seamless. Running MAXIMO in this fashion typically required specialized software on the end user's computer, which often led to configuration, compatibility and performance issues. The situation was not ideal.

9.      This changed in December 2001 with the release of MAXIMO version 5 – the first "web architected" version of MAXIMO.  Using MAXIMO 5.2 (which is the current version), customers subscribing to a MAXIMO service provider can access the program directly from an ordinary Internet Explorer web browser, without the need for specialized software.

### MAXIMO's JSP Files

10.      MAXIMO 5.2 offers this web-architected capability largely through the use of specialized programs called "JavaServer Pages" or "JSP files."  The JSP files instruct MAXIMO how to create screens for the user.  Each time the MAXIMO system needs to present a screen, it references the appropriate JSP file, which then is used to generate commands that are sent to the user's web browser.  In other words, the JSP files are the programs that construct the interface – the screens – between the user and the rest of the MAXIMO system.

11.      The MAXIMO system comes with 822 JSP files.  These JSP files contain more than 40,000 lines of code, and comprise more than 63 megabytes of data – enough to fill approximately 45 floppy disks.

### Customization of MAXIMO

12.      MAXIMO is high-end enterprise software targeted at large companies which must manage numerous facilities and other high-cost assets, so it is not surprising that almost all customers who use it demand that the software be configured to suit their needs.  For example, a customer may want additional fields added, so the system can track information that is specific to it.  Or, a customer may want the layout of a screen modified, to conform to its own specialized reporting requirements.

13.     I am personally familiar with dozens of MAXIMO installations, and I cannot recall a single one that did not involve some degree of user-specified configuration.  Based on my own experience, I believe that virtually all MAXIMO installations are customized in some way.

14.     With MAXIMO 5.2, the screen configuration process involves modification of the JSP files.  For example, if a field is added, the appropriate JSP files must be changed so that the new field is displayed on screen, and so data can be entered into it.  If screen layouts are altered, again, the JSP files must be adjusted so that the data is properly displayed.

15.     Because of the way the MAXIMO system works, an application service provider must separately store a complete set of JSP files for every uniquely configured customer.  This is because, for any particular customer, the MAXIMO system looks for all the JSP files in a single location.  The files unique to that customer must accompany the remaining, unmodified JSP files in a single set.

16.     As a result of this requirement, an application service provider with multiple customers must copy more than 800 MAXIMO files for each customer with a uniquely configured installation, regardless of the degree of customization.  See Tab A, Diagrams 1 and 2.

**Non-JSP Files**

17.     A MAXIMO service provider may also wish to copy non-JSP MAXIMO files for each uniquely configured user installation.  While many of MAXIMO's non-JSP components can be set up to service several customers, each with a different set of JSP files, doing so can be complex and time-consuming.

18.    In contrast, it is much easier to set up new customers with their own complete copies of all MAXIMO files.  Doing so requires additional disk space on the server, but the cost is nominal.  A full MAXIMO installation (not including user data) is generally less than 300 megabytes in size.  At current prices, this represents less than $1 worth of storage space on a typical server.  Consequently, putting aside questions of copyright infringement and license limitations, there is incentive for an application service provider to make a complete copy of all MAXIMO files for each customer it supports.  See Tab A, Diagram 3.

### M2 as Application Service Provider

19.    Both MRO and plaintiff M2 Consulting, Inc. ("M2") are "application service providers" that offer MAXIMO to customers over the Internet.

20.    Under a license agreement ("License Agreement") between M2 and MRO, MRO licensed a single copy of MAXIMO to M2.  I understand that MRO terminated the license according to its terms on or about November 2003 (or, at latest, January 2004), and M2 retained the right to continue to use its copy of MAXIMO for 24 months, but only to service its then-existing customers under then-existing contracts.

21.    In connection with discovery conducted in this litigation, I also understand that M2 has produced documents that show that it is offering MAXIMO to customers other than those permitted under the License Agreement.  These customers include Hyatt Regency Huntington Beach Resort and Spa ("Hyatt") and Brooks Range Contract Services, Inc.

22.    M2's discovery production includes an email from it to Hyatt, instructing Hyatt how to log onto MAXIMO through M2's web site.  A copy of that email is attached

to the Verified Amended Counterclaim at Exhibit 8.  It directs Hyatt to the following

Internet web page address:

*http://hyatt.m2mantis.com/MAXIMO/jsp/common/system/login.jsp.*

That web page located at that address, a copy of which is attached at Exhibit 8 to the

Verified Amended Complaint, is a log in screen for MAXIMO 5.2.  I believe this makes

clear that M2 is offering MAXIMO 5.2 to Hyatt on an ASP basis.

## Evidence of Copying

23.    In its Verified Amended Counterclaim, MRO has alleged that M2 has

engaged in copyright infringement with respect to the MAXIMO software.  It anticipates

bringing a motion for a preliminary injunction on that basis, to preclude M2 from

improperly copying MAXIMO files without license or authorization, or using improperly

copied files to service its customers.

24.    In connection with that motion, MRO will necessarily present evidence

that M2 has, indeed, copied MAXIMO files in violation of the Copyright Act.  MRO

already has evidence that M2 is offering MAXIMO to customers outside the scope of the

License Agreement.  While this fact alone makes it highly likely that M2 has copied

MAXIMO files owned by MRO without its permission, an examination of M2's

computer servers can more clearly and definitively establish such copying.

25.    MRO is seeking expedited discovery to examine M2's computer servers

and related equipment for evidence of such copying.  Such an examination should reveal

(1) what customers M2 is servicing that fall outside the scope of the License Agreement;

(2) whether M2 has copied MRO's JSP files in order to service those customers; and (3)

whether M2 has copied other MAXIMO files, either to service those customers or for some other purpose.

26.    Based upon my experience and my knowledge of MAXIMO, I believe that such discovery can be conducted without materially disrupting M2's ability to service its customers or M2's customers' ability to access their data through MAXIMO.  I estimate that, with the appropriate cooperation of M2 personnel, this can be accomplished in two business days.

Signed under the pains and penalties of perjury this 23rd day of March 2005.

/s/  James Battle
James Battle