UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| M2 CONSULTING, INC.<br><br>                    Plaintiff,<br><br>v.<br><br>MRO SOFTWARE, INC.<br><br>                    Defendant. | C.A. No. 03-12589-GAO |

**MRO SOFTWARE, INC.'S OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL**

Defendant/Plaintiff-in-Counterclaim MRO Software, Inc. ("MRO") hereby

submits this Opposition to Plaintiff/Defendant-in-Counterclaim M2 Consulting, Inc.'s

("M2") Motion to Compel MRO to Produce Documents (the "Motion").  M2's Motion

should be denied based on the following:

- MRO has completed its search for documents and has provided a written
  Certification (Exhibit A) of the same to M2's counsel.  This Certification takes
  the form requested in M2's Motion, and therefore this part of the Motion is moot.

- M2's request for unfettered access to MRO's servers must be denied because it is
  based entirely on speculation and fails to provide anything even remotely
  approaching a reasonable basis for this extraordinary relief.  Such an extreme
  departure from the normal discovery process requires some demonstrable pattern
  of actual discovery abuse and should not be used as a discovery verification
  procedure, as requested by M2.  M2 cannot satisfy its burden because MRO has
  more than fulfilled its discovery obligations.  Further, M2's request is patently

overbroad and, if granted, would permit access to privileged, confidential and
irrelevant data to which it is not entitled under any circumstances.

- Filed concurrently with this Opposition is MRO's Motion for Protective Order,
which seeks to amend the existing Confidentiality Stipulation to include an
"attorney's eyes only" level of confidentiality.  MRO's Motion for Confidentiality
Stipulation addresses M2's Motion to the extent it seeks MRO's "attorney's eyes
only" documents and is incorporated herein.

- M2's request for expenses associated with its Motion must be denied because
MRO's position is substantially justified.  As an additional basis for the denial of
its Motion, M2 failed to confer and attempt to narrow the issues of access to
MRO's email servers and the requested certification concerning MRO's
document production, prior to filing its Motion..

M2's Motion was not precipitated by MRO's conduct, but rather, by M2's failures
to communicate and explore other less intrusive alternatives to the relief sought therein.
M2's Motion is baseless and should be denied in its entirety, with an award of expenses
to MRO for having to oppose this frivolous Motion.

## BACKGROUND

In December 2003, M2 commenced this action based on claims for promissory
estoppel, unjust enrichment, violation of M.G.L. ch. 93A and fraud.  MRO answered the
Complaint and filed a counterclaim for breach of contract.  On January 19, 2005, M2's
Amended Complaint (the "Amended Complaint") greatly expanded its allegations against
MRO by adding a new defendant, Craig Newfield, general counsel to MRO, numerous
new factual allegations and six new causes of action, including a request for injunctive

relief against MRO.  On March 25, 2005, MRO filed a Motion for Leave to File a

Verified First Amended Counterclaim (the "Verified Amended Counterclaim").  If this

Motion is granted, MRO's Verified Amended Counterclaim will add substantial new

legal and factual allegations, including claims for trademark and copyright infringement,

false advertising and unfair competition and trade practices.

In August 2004, MRO and M2 both served their First Request for the Production

of Documents (the "Document Requests").  On September 7, 2004, MRO served M2 with

its written Responses and Objections.  M2's written Responses and Objections to MRO's

Document Requests were served on September 13, 2004.

MRO and M2 recognized the need for a Confidentiality Stipulation based on the

anticipated exchange of confidential business information during discovery.  The parties

negotiated and entered into a "Stipulated Confidentiality Protective Order" (the

"Confidentiality Stipulation"), which was executed by the parties on September 13, 2004.

The Confidentiality Stipulation has not been entered as an Order of this Court.  The

Confidentiality Stipulation does not provide for an "attorney's eyes only" level of

confidentiality whereby the parties can designate and produce documents to the opposing

party's counsel, without their disclosure to the opposing party.

In response to MRO's Document Requests, M2 initially produced approximately

1,800 pages of hard copy documents on September 13, 2004.  However, M2's initial

document production was plainly missing significant categories of responsive documents,

such as email communications.  Only after numerous discovery conferences and various

letters complaining to M2's counsel, did M2 actually provide the vast majority of its

document production.  (Affidavit of Kurt E. Bratten Concerning MRO Software, Inc.'s

Production of Documents ("Bratten Aff.,"), pars. 4-8, 11.) M2 produced most of its documents in electronic format. First, M2 provided MRO with a CD on October 6, 2004 which contained an enormous text file purporting to contain over 30,000 emails. (Bratten Aff., par. 4.) This text file contained no email attachments, nor any separation or page breaks with which to distinguish one email from another. (Bratten Aff., par. 4.) Moreover, the unwieldy size and format of the text file presented unreasonable technical difficulties and was unusable as produced. After several letters and discovery conferences regarding this deficiency, M2 agreed to provide its electronic documents in a new, more suitable (PST) format. (Bratten Aff., par. 5-6, 8.) Finally, on November 16, 2004, M2 sent MRO a CD with a PST file containing approximately 1,116 emails, and on November 24, 2004, M2 sent a DVD with a PST file holding approximately 39,174 emails. (Bratten Aff., pars. 8, 11.)

On September 13, 2004, MRO produced approximately 1,000 pages of documents in response to M2's Document Requests. (Bratten Aff., par. 3, Ex. A.) On October 13, 2004, counsel for the parties conferred about several discovery matters. (Bratten Aff., par. 5.) During this conference, both parties raised issues with the other's production of documents and counsel for both parties agreed to provide additional documents. (Bratten Aff., par. 5.) Also during this conference, MRO's counsel agreed that MRO would conduct a further search of its records based on complaints raised by M2, and that it would produce relevant documents that it located. (Bratten Aff., par. 5.) MRO subsequently produced documents found as a result of this further search of its records. (Bratten Aff., par. 10.) Based on the search it agreed to conduct during the October 13, 2004 conference, MRO produced documents to M2 on November 17, 2004

(approximately 844 pages), November 23, 2004 (3 pages) and December 3, 2004 (171 pages).  (Bratten Aff., par. 10.)

During its search for documents, MRO identified a document titled the "Global Price Book" which contains highly confidential and competitive information about MRO's business.  This document is strictly for the internal use of authorized MRO employees.  (Affidavit of Craig Newfield in Support of Motion for Protective Order ("Newfield Aff."), par. 2.)  The parties have agreed to the "attorney's eyes only" designation with respect to the Global Price Book.  (Bratten Aff., pars. 9, 15.)  When MRO searched its records in response to the parties' October 13, 2004 conference and other informal requests made by M2, it discovered additional highly confidential documents that should be treated as "attorney's eyes only" documents.  (Bratten Aff., par. 14.)  Like the Global Price Book, these documents contain detailed and highly confidential competitive information about MRO's business, such as its pricing, sales and marketing strategies, the development of these strategies and MRO's prospective and actual hosting customers.  (Newfield Aff., par. 2.)

Many of MRO's "attorney's eyes only" documents were collected in response to a January 18, 2005 letter (the "January 18 Letter") from M2's counsel.  (Bratten Aff., pars. 12-14.)  A copy of the January 18 Letter is attached to the Affidavit of Kurt Bratten as Exhibit D.  The January 18 Letter requested documents concerning 34 different issues or topics, none of which were identified by M2 as relating to M2's Document Requests. (Bratten Aff., par. 12, Ex. D.)  In fact, in many instances the January 18 Letter sought documents that had not been requested by M2's Document Requests, including documents concerning M2's new allegations in its Amended Complaint.  (Bratten Aff.,

Ex. D.)  Exceeding its discovery obligations in an effort to cooperatively resolve a case that has become mired in a "discovery quagmire," MRO searched for and produced approximately 1,119 pages of documents in response to the January 18 Letter.  (Bratten Aff., par. 13.)

Until very recently, the parties have been attempting to cooperatively resolve the matter of the treatment of MRO's "attorney's eyes only" documents.  (Bratten Aff., pars. 9, 15-16, Ex. C.)  MRO's counsel sent several draft agreements to M2's counsel in the hope of finding a mutually agreeable solution.  (Bratten Aff., par. 9, Ex. C.)  On March 18, 2005, counsel for the parties conferred concerning this issue and M2 refused to agree to an "attorney's eyes only" designation for certain documents which MRO believed warranted that level of confidentiality.  (Bratten Aff., par. 15.)  During this conference, MRO's attorney asked M2's counsel if M2 would agree to an "attorney's eyes only" designation not only for the Global Price Book, but also for draft portions of the Global Price Book and correspondence and other documents concerning its formulation. (Bratten Aff., par. 15.)  M2's counsel said that he would have to speak to his client before responding to this attempt to narrow the disagreement.  (Bratten Aff., par. 15.)  However, M2 did not respond to this proposal prior to filing its Motion to Compel on April 7, 2005. (Bratten Aff., par. 15.)

On April 11, 2005, counsel for the parties conferred again and M2 refused to agree to an "attorney's eyes only" designation for any documents other than the Global Price Book. (Bratten Aff., par. 16.)  On March 18 and April 11, 2005, M2's counsel agreed to send MRO an agreement or stipulation providing for an "attorney's eyes only" confidentiality designation for the Global Price Book, however, no such document has

been provided as of the date this Opposition was filed. (Bratten Aff., pars. 15-16.) MRO has repeatedly informed M2 that as soon as it provides an adequate confidentiality agreement, MRO will produce the Global Price Book and all drafts of the same. (Bratten Aff., par. 16.)

Prior to filing its Motion to Compel, M2's counsel did not hold a conference concerning two items requested therein, as required by the Local Rules. Specifically, M2's counsel did not confer or request that MRO provide M2 with a written certification that its search for documents is complete, or that MRO provide M2 access to MRO's email servers. (Bratten Aff., par. 17.)

## ARGUMENT

### I.    MRO's Search For Documents Is Complete And It Has Already Certified Completion To M2's Counsel As Requested

M2's Motion to Compel seeks an Order requiring MRO to complete its search for documents and to certify that it has completed its search for documents in writing to M2's counsel. (Motion to Compel, pp. 1, 8, 13.) On April 20, 2005, MRO provided a written certification (the "Certification") to M2's counsel that it has completed its search for documents. The Certification takes the form requested in M2's Motion. A copy of MRO's Certification is attached as Exhibit A. Thus, this portion of M2's Motion is moot.

### II.    M2's Request For An Order Permitting Unlimited Access To MRO's Email Servers Is Frivolous

M2's request for access to MRO's email servers is utterly without merit. Courts considering this type of request have consistently denied such extreme measures absent some demonstrated pattern of excessive discovery abuse by the respondent. *Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 169 (S.D.N.Y. 2004) (In denying

plaintiff's request for direct access to the defendant's "hard drives, servers and databases", the Court found that "[h]ad [plaintiff] demonstrated widespread destruction or withholding of relevant information by [defendant], then sanctions, together with an order circumventing the normal process of discovery and allowing [plaintiff] to access the data directly, might be appropriate."); *Stallings-Daniel v. The Northern Trust Company*, 2002 WL 385566, at *1 (N.D.Ill. Mar. 12, 2002) (Denial of plaintiff's motion seeking to inspect defendant's "e-mail system" was proper "because it was supported by nothing more than speculation that defendant had somehow altered its emails before producing them."). M2's Motion does not demonstrate any discovery abuse by MRO, and it fails to even allege the type of conduct that would warrant the severe sanction sought from this Court.

M2's Motion is based on pure speculation. M2 claims that based on MRO's supplemental document productions, "it is ***probable*** that a substantial volume of non-privileged responsive email exists which has not been produced." (Motion, p. 10.) (Emphasis added.) M2's Motion is not based on discovery abuse by MRO. Instead, M2 requests unfettered access to MRO's email servers "to ***verify***" M2's suspicions "that no responsive un-produced email exists." (Motion, p. 10.) (Emphasis added.) M2's Motion rests on several examples of "suspicious" gaps in MRO's document production. (Motion, pp. 9-10.) However, these examples are specious. For instance, M2's first example is the purported absence of written responses to an email from MRO's Chief Executive Officer, Chip Drapeau. (Motion, p. 9.) A cursory review of MRO's document production reveals that it has produced numerous documents showing several distinct written responses to the document in question. Copies of three separate email responses to the document in

8

question are marked with bates numbers, MRO 00758, MRO 01734 – MRO 01736 and

MRO 01737 – MRO 01739 and are attached as Exhibit B.  M2's Motion rests on

conjecture and fails to demonstrate anything even approximating a sufficient basis for the

relief sought.

MRO has performed a diligent search for documents and its production is

complete.  (MRO's Certification, Ex. A.)  Since the parties have yet to exchange

privilege logs and M2 has not challenged MRO's objections to its Document Requests,

there could be justifiable bases for M2's perceived gaps in MRO's document production.

If M2 were genuinely concerned about the methodology of MRO's search and collection

of documents, it would have deposed the most knowledgeable person at MRO on the

subject.  However, M2 has made no effort to explore this perfectly reasonable and far less

intrusive alternative.  M2's Motion is baseless and represents a shameless attempt to

create the perception of impropriety where none exists.

Given its own conduct, it is ironic that M2 complains about the timeliness and

alleged "piecemeal" nature of MRO's document production.  MRO spent months holding

discovery conferences and was forced to send numerous letters to M2's counsel in order

to obtain the vast majority of M2's document production - a CD and DVD which

collectively contain approximately 40,290 emails.  (Bratten Aff., pars. 8, 11.)  MRO

produced documents in response to specific searches of its records, several of which were

conducted to accommodate M2's specific requests and, at times, went beyond M2's

Documents Requests and MRO's formal discovery obligations.  (Bratten Aff., pars. 12-

13.)

Furthermore, M2's request for access to MRO's email servers is overbroad since it offers no meaningful parameters. MRO's email servers contain materials subject to the attorney-client privilege and work product doctrine, as well as items that are confidential (which would not be subject to the Protective Order) and irrelevant to this action. For good reason, such requests are routinely denied are overbroad. *Positive Software Solutions Inc. v. New Century Mortgage Corp.*, 259 F.Supp.2d 561, 562-563 (N.D. Texas 2003) (plaintiff's motion to compel the imaging, or copying, of the contents of defendant's servers, which is tantamount to unfettered access to the servers themselves, was properly denied as "overbroad" because "[i]maging would include not only the files at issue, but also anything else that happened to be on a server . . . which could include irrelevant or privileged information not otherwise discoverable . . .").

Unfettered access to MRO's servers should not be used as a discovery verification procedure. Such a radical departure from the normal discovery process must be reserved for situations involving misconduct of the most serious nature. MRO has met and exceeded its discovery obligations in this case. Accordingly, M2's request is without merit.

### III. MRO's "Attorney's Eyes Only" Documents Are The Subject Of A Separate Motion For Protective Order

M2's Motion to Compel seeks the production of MRO's highly confidential or "attorney's eyes only" documents. These documents contain detailed and extremely confidential competitive information about MRO's business, such as its pricing, sales and marketing strategies, the development of these strategies and its customer information. (Newfield Aff., par. 2.) Concurrently with this Opposition to M2's Motion, MRO has filed a Motion for Protective Order, which seeks to amend the existing Confidentiality

10

Stipulation to add an "attorney's eyes only" level of confidentiality.  MRO requests that the Court consider its Motion for Confidentiality Stipulation in combination with M2's Motion to Compel.  M2's Motion should be denied to the extent it seeks MRO's "attorney's eyes only" documents for the reasons set forth in MRO's Motion for Protective Order, which is fully incorporated herein.

## IV.    M2's Request For Expenses Is Unjustified

Under Fed.R.Civ.P. 37(a)(4)(A), the Court has broad discretion to order "sanctions in the form of attorney's fees and costs in bringing the motion to compel discovery, upon a party whose conduct necessitates the filing of a motion to compel if that party's position was not substantially justified." *Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 78, 98 (D.D.C. 1998).  As set forth elsewhere in this Opposition, M2's Motion should be denied in its entirety and MRO's position is substantially justified with respect to all relief sought by M2.

There exists an additional factor that precludes an award of expenses against MRO.  A Court may order sanctions and expenses under the circumstances set forth by Rule 37(a)(4)(A), "unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action . . .." Fed.R.Civ.P. 37(a)(4)(A).  M2's Motion seeks to inspect MRO's email servers and a written certification that MRO has completed its search for documents.  However, M2 made no prior effort to discuss or obtain this relief before filing its Motion to Compel. (Bratten Aff., par. 17.)  M2's request for an award of expenses should therefore be denied.

**V.    M2's Motion Should Be Denied Based On Its Failure To Confer Pursuant To Local Rules 7.1 And 37.1, Which Warrants An Award Of Expenses To MRO**

M2 has consistently ignored its obligation to confer before filing motions in this case, and the instant Motion is another example of this behavior.[1]  Prior to filing its Motion, M2's counsel was required to confer with MRO's counsel and attempt "in good faith to resolve or narrow the issue" (Local Rule 7.1(A)(2)), and "narrow the areas of disagreement to the greatest possible extent" (Local Rule 37.1(A)).  Although M2's counsel conferred with MRO's attorney concerning other aspects of its Motion, it failed to make any attempt to narrow, or even discuss, the issues of access to MRO's email servers and a written certification that MRO's search for documents is complete. (Bratten Aff., pars. 15-17.)  These obligations exist to encourage compromise and dialogue between the parties, and to avoid unnecessary discovery disputes and the waste of judicial resources, among others.  M2 has flagrantly disregarded its obligations to confer and narrow the issues presented to the Court.  M2 has flouted its obligations in this regard and its Motion should be denied on this basis alone.

Based on M2's failure to confer concerning the primary issues set forth in its Motion to Compel, and for the other reasons set forth herein, MRO requests that the Court award MRO its reasonable expenses in opposing this groundless Motion pursuant to Fed.R.Civ.P. 37(a)(4)(B).  *See Converse Inc. v. Reebok Intern. Ltd.*, 328 F.Supp.2d 166, 170-171 (D.Mass. 2004) (imposing sanctions in the amount of attorney's fees and costs based on plaintiff's counsel's failure to comply with Local Rule 7.1).

---

[1]    Another particularly egregious example of this is M2's "Emergency Motion to Enjoin MRO's Misue of Information Produced in Discovery, for Default Judgment, Costs and Sanctions."

For the foregoing reasons, M2's Motion to Compel should be denied in its entirety.

MRO SOFTWARE, INC.

By its attorneys,

/s/ Kurt Bratten
Lee T. Gesmer (BBO No. 190260)
Kurt Bratten (BBO No. 644730)
Gesmer Updegrove LLP
40 Broad Street
Boston, MA 02109
Kurt.Bratten@gesmer.com
(617) 350-6800

Dated:  April 20, 2005