UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| M2 CONSULTING, INC.<br><br>       Plaintiff,<br><br>v.<br><br>MRO SOFTWARE, INC.<br><br>       Defendant. | C.A. No. 03-12589-GAO |

**MRO SOFTWARE, INC.'S MOTION FOR PROTECTIVE ORDER**

Pursuant to Fed. R. Civ. P. 26(C), Defendant/Plaintiff-in-Counterclaim MRO Software, Inc. ("MRO") respectfully moves for entry of an amended confidentiality protective order (the "Amended Protective Order") in the form attached hereto as Exhibit A. Plaintiff/Defendant-in-Counterclaim M2 Consulting, Inc. ("M2") has refused to agree to the Amended Protective Order proposed by MRO because it contains an "attorney's eyes only" level of confidentiality.

In support of this Motion MRO has filed herewith the **Affidavit Of Craig Newfield In Support Of MRO Software, Inc.'s Motion For Protective Order** and the **Affidavit of Kurt Bratten in Support of MRO's Motion for Protective Order and Opposition to Motion to Compel MRO to Produce Documents.**

Fed.R.Civ.P. Rule 26(c) expressly provides for protective orders such as the Amended Protective Order proposed by MRO. This type of protective order is appropriate and routinely allowed in cases where the exchange of sensitive business information presents a substantial risk of competitive injury. Not only are MRO and M2

competitors, but M2 has had negotiations with another direct competitor of MRO about a "strategic alliance" involving information sharing and the potential purchase of M2's business.  M2 has requested, and MRO is prepared to provide (pursuant to an "attorney's eyes only" designation), competitive business information of the most sensitive nature. Absent entry of an "attorney's eyes only" protective order, MRO would bear a substantial and needless risk of competitive injury if it is forced to disclose critically sensitive business data to a competitor.  MRO's Amended Protective Order was designed to prevent abuse by an over-protective party and will adequately safeguard both parties' highly confidential information.

Accordingly, the Court should enter the Amended Protective Order in the form attached hereto as Exhibit A.

## Background

M2 commenced this action in December 2003.  M2's Complaint brought claims for promissory estoppel, unjust enrichment, violation of M.G.L. ch. 93A. and fraud. MRO answered the Complaint and filed a counterclaim for breach of contract.  MRO and M2 recognized the need for a confidentiality stipulation based on the anticipated exchange of confidential business information during discovery.  The parties negotiated and entered into a Stipulated Confidentiality Protective Order (the "Confidentiality Stipulation"), which was executed by the parties on September 13, 2004.  The Confidentiality Stipulation has not been entered as an Order of this Court.  The Confidentiality Stipulation does not provide for an "attorney's eyes only" level of confidentiality whereby the parties can designate and produce documents to the opposing party's counsel, without their disclosure to the opposing party.

After entering into the Confidentiality Stipulation, the parties made dramatic changes to their claims in this action. On January 19, 2005, the Court allowed M2's Motion to file an Amended Complaint which greatly expanded M2's allegations against MRO. M2's Amended Complaint sets forth six new causes of action and numerous new factual allegations, seeks injunctive relief against MRO and adds a new defendant, Craig Newfield, general counsel to MRO. On March 25, 2005, MRO filed a Motion for Leave to File a Verified First Amended Counterclaim (the "Verified Amended Counterclaim"). MRO's Verified Amended Counterclaim includes substantial new legal and factual allegations, including claims for trademark and copyright infringement, false advertising and unfair competition and trade practices.

M2 has served discovery requests seeking a wide range of materials, including "[a]ll documents concerning Internet hosting of MAXIMO (i.e. allowing customers access to and use of MAXIMO via the Internet) . . . by [MRO] or by any other entity, whether actual, prospective, hypothetical, possible, or otherwise." (M2's First Request for the Production of Documents and Things ("Document Requests"), Req. No. 4, Exhibit B.) At least as early as September 2004, MRO informed M2 of a document titled the "Global Price Book" and offered to produce it to M2 pursuant to an "attorney's eyes only" designation. The Global Price Book contains highly confidential and competitive information about MRO's MAXIMO software and is strictly for the internal use of authorized MRO employees. (Affidavit of Craig Newfield in Support of Motion for Protective Order ("Newfield Aff."), par. 2.) After subsequent discussions, M2 agreed in principle to the "attorney's eyes only" designation as applied to the Global Price Book. (Affidavit of Kurt Bratten ("Bratten Aff.,"), par. 9.) On November 9 and November 17,

2004, MRO sent M2 proposed agreements whereby MRO would produce all drafts of the Global Price Book under an "attorney's eyes only" level of confidentiality. M2 rejected these proposed agreements and has offered none of its own. (Bratten Aff., par. 9.)

During MRO's search for and production of documents, it uncovered additional highly confidential or "attorney's eyes only" documents (collectively, the "Subject Documents"), which are responsive to M2's Document Requests or other informal requests made by M2. The Subject Documents reflect detailed and highly confidential information about MRO's business, such as its pricing, sales and marketing strategies, the development of these strategies and MRO's prospective and actual hosting customers. (Newfield Aff., par. 2.) Some of the Subject Documents are drafts of sections of the Global Price Book and correspondence concerning its formulation. The Subject Documents contain MRO's most sensitive competitive information about its business. (Newfield Aff., par. 2.)

Many of the Subject Documents were collected by MRO in response to a January 18, 2005 letter (the "January 18 Letter") from M2's counsel. (Bratten Aff., par. 14.) A copy of the January 18 Letter is attached to the Affidavit of Kurt Bratten as Exhibit D. The January 18 Letter requested documents concerning 34 different issues or topics, none of which were connected to any of M2's Document Requests. (Bratten Aff., par. 12, Ex. D.) Further, the January 18 Letter sought documents not requested by M2's formal Documents Requests, including documents pertaining to M2's new allegations in its Amended Complaint. (Bratten Aff., par. 12, Ex. D.) Nonetheless, MRO searched for and produced approximately 1,119 pages of documents requested by the January 18 Letter. (Bratten Aff., par. 13.)

Until very recently, it appeared that the parties could resolve this matter without judicial intervention. (Bratten Aff., pars. 9, 14-16, Ex. C.) On November 24, 2004, MRO's counsel suggested the parties enter into the Amended Protective Order and M2's counsel agreed to consider it. (Bratten Aff., par. 9, Ex. C.) On November 24, 2004, counsel to MRO sent M2's attorney a copy of the Amended Protective Order. (Bratten Aff., par. 9, Ex. C.) From November 24, 2004 through March 2005, MRO sent numerous letters and correspondence attempting to obtain a response from M2 so that this matter could be resolved. (Bratten Aff., par. 9.) However, M2's counsel failed to respond to these requests or the Amended Protective Order until March 16, 2005. (Bratten Aff., par. 9.)

On March 18 and April 11, 2005, counsel for the parties conferred concerning the Amended Protective Order and MRO's "attorney's eyes only" documents. (Bratten Aff., pars. 15-16.) During these conferences, M2's attorney agreed to an "attorney's eyes only" designation for the Global Price Book. (Bratten Aff., par. 15.) During the April 11, 2005 conference M2's counsel refused to agree to adopt the Amended Protective Order or any other agreement that would permit either party to designate any document other than the Global Price Book as "attorney's eyes only". (Bratten Aff., par. 16.) On March 18 and April 11, 2005, M2's counsel agreed to send MRO an agreement providing for an "attorney's eyes only" confidentiality designation for the Global Price Book, however, no such document has been provided as of the date this Motion was filed. (Bratten Aff., par. 16.) MRO has repeatedly informed M2 that as soon as it provides an adequate confidentiality agreement, MRO will produce the Global Price Book and all drafts of the same. (Bratten Aff., par. 16.)

On April 7, 2005, M2 filed a Motion to Compel MRO's "attorney's eyes only" documents, including the Global Price Book.

### Legal Standard

"Rule 26(c), Fed.R.Civ.P., provides, in pertinent part: 'Upon motion by a party … and for good cause shown, the court in which the action is pending … may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including … (7) that a trade secret or other confidential research, development or commercial information not be disclosed or be disclosed only in a designated way.'" *GTE Products Corp. v. Gee*, 112 F.R.D. 169, 170 (D.Mass. 1986); *see Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir., 1986); *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 790 (1st Cir. 1998).

"A request for a protective order must be made with appropriate specifics and once it is determined that confidential information is being sought, the party opposing confidential treatment must show that the information is sufficiently relevant to outweigh the harm of disclosure. 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, [*Federal Practice and Procedure*], § 2043 (1994). This requires a balancing 'of all pertinent circumstances, including dangers of abuse, good faith, and the availability of other means of proof.' *Id.,* at 559-560." *Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc.*, 200 F.R.D. 255, 260 (M.D.N.C., Apr 18, 2001).

The same "good cause" standard applies when a party seeks to modify an existing confidentiality stipulation or protective order. *Public Citizen*, 858 F.2d at 790 (rejecting respondent's argument that a different standard should apply when the moving party sought to modify an existing protective order).

**Argument**

Protective orders with an "attorney's eyes only" level of confidentiality are routinely entered in cases involving the production of competitive business data. "Ample precedent exists for limiting disclosure of highly sensitive, confidential or proprietary information to attorneys and experts, particularly when there is some risk that a party might use the information or disseminate it to others who might employ it to gain a competitive advantage over the producing party." *Westside-Marrero Jeep Eagle, Inc. v. Chysler Corp., Inc.*, 1998 WL 186728, at *2 (E.D.La. Apr. 17, 1998) (collecting cases); *GTE Products*, 112 F.R.D. at 171 (after citing authority supporting its order granting plaintiff's motion for an "attorney's eyes only" protective order, the Court found that "these cases fully support (1) the power of the Court to issue the protective order which plaintiff seeks in this case and (2) the propriety of issuing such an order to limit the disclosure of the types of confidential commercial information, i.e. customer lists, prices, etc., to which the order relates."); *Doe v. District of Columbia*, 697 F.2d 1115, 1120 (D.C.Cir., 1983) ("attorney's eyes only" protective orders are frequently issued under Fed.R.Civ.P. 26(c)(7) to prevent the disclosure of "trade secret[s], or other confidential research, development or commercial information" to a party's business competitor(s)).

It cannot be disputed that MRO and M2 are direct competitors in the hosted asset and facilities management software market, since M2's Amended Complaint is replete with examples and allegations concerning their competitive activities. (Am. Complaint, pars. 1, 25, 57, 60-69, 115, 117; Newfield Aff., pars. 4-5.) One of the ways in which M2 competes with MRO is by selling a hosted version of MRO's MAXIMO software without right or authorization. (Newfield Aff., pars. 4-5, Ex. B.) It is the dispute over

7

this illicit activity that is the subject of most of the parties' recently amended claims. For example, M2's Amended Complaint asks the Court to grant an injunction restraining MRO from "wrongfully" preventing it from "competing", and adds a declaratory judgment count to clarify its ability to continue selling MRO's MAXIMO software in a hosted environment. (Am. Complaint, pars. 60-69, 103-107, 136-137.) According to its website, M2 also competes with MRO by offering "a leading EAM software in a hosted environment." Attached as Exhibit C is a copy of a printed web page from M2's website. Thus, M2 competes with MRO by selling access to a hosted version of MRO's MAXIMO software and another software manufacturer's EAM software.

The competitive business relationship between M2 and MRO is the decisive factor when their interests are weighed. *Bailey v. Dart Container Corp. of Michigan*, 980 F.Supp. 560, 583 (D.Mass. 1997) ("The risk of competitive injury is particularly high when the opposing party is a business competitor"). To date, M2 has objected strictly on the basis of convenience and has articulated no substantive explanation of need for the Subject Documents and its refusal to enter into the Amended Protective Order. Accordingly, the considerable risk of competitive injury to MRO plainly outweighs any need which M2 may have for access to the Subject Documents. Even if there is some as yet unexplained basis for M2's objections, courts have unequivocally rejected parties' claims for access to confidential competitive business data, in addition to disclosure to counsel. *GTE Products*, 112 F.R.D. at 172 (The Court found "no basis in law for the defendants' contention that they have the right to have confidential commercial information of competitors disclosed to them in addition to having the information disclosed to their attorneys.").

8

In addition, M2 has engaged in negotiations with Indus International ("Indus"), another direct competitor to MRO, about a "strategic alliance" involving information sharing and the potential purchase of M2's business. (Newfield Aff., pars. 6-7, Ex. B; Am. Complaint, pars 44-45.) Discovery produced by M2 shows that as far back as July 2002 -- when M2 was negotiating a new contract with MRO -- it was also negotiating a "strategic alliance" and contract with Indus. (Newfield Aff., pars. 6-7, Ex. B.) As reflected by the letter attached to Craig Newfield's Affidavit, M2 was so concerned about entering into a relationship with Indus (while still promoting MRO's MAXIMO product), that it warned Indus that "MRO Software may sue to protect this market from penetration by Indus" and requested indemnification from this threat. (Newfield Aff., par. 6, Ex. B.) Although these negotiations with Indus appear to have terminated, the risk exists that M2 will resume discussions and enter into a "strategic alliance", or sell its business to Indus (or some other competitor of MRO) in the future. (Newfield Aff., pars. 6-7, Ex. B.) M2's established interest in strategic alliances, information sharing and selling its business to a direct competitor of MRO represents an additional risk of competitive injury to MRO.

The Amended Protective Order will permit MRO, and M2, to adequately safeguard their confidential and "attorney's eyes only" discovery materials and information. M2 incorrectly claims that the Amended Protective Order would permit the parties to use the "attorney's eyes only" designation "at will for almost any document." (M2's Motion to Compel MRO to Produce Documents ("M2's Motion to Compel"), p. 3.) M2's position utterly misapprehends the plain language and purpose of the Amended Protective Order, which includes numerous provisions designed to preclude abuse. The

Amended Protective Order permits counsel for any party producing materials in discovery to designate an item "attorney's eyes only", upon a "good faith" belief that the item "is of such a commercially sensitive nature that disclosure to persons other than those specified herein in paragraph 6 would reasonably be expected to result in injury to the designating party." (Am. Protective Order, par. 1(b), Ex. A.) Furthermore, it provides that such "attorney's eyes only" designation "shall constitute a representation that such document, material or information has been reviewed by an attorney for the Person [making the designation] and that, in such counsel's opinion, there is a good faith basis for such designation." (Am. Protective Order, par. 1(c), Ex. A.) The Amended Protective Order also provides a simple procedure for objecting to and challenging an "attorney's eyes only" designation, should such a dispute arise. (Am. Protective Order, par. 9, Ex. A.).

This action has changed dramatically since the parties entered into the existing Confidentiality Stipulation. M2's Amended Complaint has added a new defendant, six new causes of action and incorporates numerous new factual claims against MRO, including allegations that MRO and co-defendant, Mr. Newfield, have taken steps to wrongfully prevent M2 from competing with MRO. (Am. Complaint, pars. 60-69.) If MRO's Motion to Amend its Counterclaim is allowed, its Verified Amended Counterclaim will raise claims for trademark and copyright infringement, false advertising and unfair competition and trade practices. These new claims by both parties will likely provide further bases for an "attorney's eyes only" level of confidentiality governing the production of discovery materials concerning these new allegations. The

10

parties' relationship as direct competitors and their amended allegations mandate the entry of the Amended Protective Order.

For the foregoing reasons, the Court should enter the Amended Protective Order in the form attached hereto as Exhibit A.

                MRO SOFTWARE, INC.

                By its attorneys,

                /s/ Kurt Bratten
                Lee T. Gesmer (BBO No. 190260)
                Kurt Bratten (BBO No. 644730)
                Gesmer Updegrove LLP
                40 Broad Street
                Boston, MA 02109
                Kurt.Bratten@gesmer.com
                (617) 350-6800

Dated: April 20, 2005

### Local Rule 7.1 Certificate of Compliance

Counsel for MRO Software, Inc. hereby certifies that on April 11, 2005, pursuant to Rule 7.1(A)(2) of the Local Federal Rules of Civil Procedure, he (1) has conferred with counsel for the Plaintiff regarding the attached Motion, and (2) has attempted in good faith to resolve or narrow the issues presented.

                /s/ Kurt Bratten
                Kurt Bratten