UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| M2 CONSULTING, INC.<br><br>    Plaintiff,<br><br>v.<br><br>MRO SOFTWARE, INC.<br><br>    Defendant. | C.A. No. 03-12589-GAO |

**AFFIDAVIT OF KURT E. BRATTEN IN SUPPORT OF
MRO SOFTWARE, INC.'S MOTION FOR PROTECTIVE ORDER AND OPPOSITION
TO MOTION TO COMPEL MRO TO PRODUCE DOCUMENTS**

I, Kurt E. Bratten, state as follows:

1. I am counsel to MRO Software, Inc. ("MRO"), the Defendant in the above-captioned case. I submit this affidavit in support of MRO's Motion for Protective Order and Opposition to M2 Consulting, Inc.'s ("M2") Motion to Compel MRO to Produce Documents. The facts in this affidavit are based upon my personal knowledge, except in those instances where I have indicated otherwise.

2. I worked with several representatives of MRO for the purpose of collecting and producing non-privileged documents in response to M2's First Request for the Production of Documents and Things (the "Document Requests"), and other informal requests for documents by M2.

3. Pursuant to a letter dated September 13, 2004, MRO initially produced approximately 1,000 documents in response to M2's Document Requests. A copy of this letter is attached as Exhibit A.

4.  On October 6, 2004, M2 produced a CD containing a massive text file (the "Text File") purporting to include more than 30,000 emails. The Text File provided by M2 contains no separation or page breaks with which to distinguish one document or email from another.

5.  On October 13, 2004, Lee T. Gesmer, Esq. and I, counsel for MRO, conferred with Mark Resnick, Esq., counsel to M2, about various discovery matters. During this conference, both parties raised issues with the other's production of documents and counsel for both parties agreed to provide additional documents. On behalf of MRO, Mr. Gesmer told Mr. Resnick that MRO would conduct a further search of its records based on concerns raised by M2 and that it would produce all responsive documents. During this conference, Mr. Gesmer told Mr. Resnick that the Text File produced by M2 on October 6, 2004 was inappropriate for numerous reasons, including its size, text file format, lack of email attachments and separation or page breaks, and the fact that its unwieldy size and format created technical problems for MRO. Mr. Gesmer requested that M2 provide its electronic email discovery in PST format because doing so would likely rectify the deficiencies in the Text File. In response, Mr. Resnick agreed to consider MRO's request that it provide electronic discovery in PST format. Mr. Resnick also stated during this conference that M2 would produce a CD containing certain emails and other documents, in PST format, by October 15, 2004. Lastly, Mr. Gesmer described to Mr. Resnick an internal MRO pricing document (the "Global Price Book") and told him that MRO would produce this document to M2 under an "attorney's eyes only" level of confidentiality because of the sensitivity of the information it contains. Mr. Resnick responded by stating that he would need to discuss this matter with his client before responding.

6.     On October 15, 2004, I sent Mr. Resnick a letter confirming the matters discussed and agreed upon during the October 13, 2004 conference. A copy of this October 15, 2004 letter is attached as Exhibit B.

7.     On October 25, 2004, I sent Mr. Resnick another letter after M2 failed to produce the promised CD or any additional discovery by that date. On October 28, 2004, I sent an additional follow up letter to Mr. Resnick concerning various discovery matters, including this one, because M2 still had failed to produce any additional documents to MRO.

8.     In a further effort to address M2's failure to produce documents, on November 8, 2004, I held another discovery conference with Mr. Resnick. During this conference, M2's counsel agreed to enter into an agreement designating the Global Price Book as an "attorney's eyes only" document. Also during this conference, M2 agreed to provide MRO with 2 CD's in PST format, and agreed that the first of these CD's would be produced on or before November 12, 2004, and that a second CD would be provided by November 19, 2004. On November 9, 2004, I sent Mr. Resnick a letter confirming this conversation. When I had not received the first of these CD's, on November 16, 2004, I sent a letter to Mr. Resnick concerning M2's continued failure to produce documents as promised. Shortly thereafter, I received a CD from M2, in PST format. I have been informed by a computer technology professional who works for my firm that the PST file on the CD provided on November 16, 2004 contains 1,116 emails.

9.     After M2's counsel agreed to enter into an agreement designating the Global Price Book as an "attorney's eyes only" document, I sent M2's counsel two different letter agreements on November 9 and November 17, 2004, pursuant to which MRO would produce all drafts of the Global Price Book. M2's counsel rejected these proposals. While conferring concerning M2's objections to the proposed agreements, on November 24, 2004, I suggested that the parties enter

into an Amended Confidentiality Protective Order and Mr. Resnick agreed to consider it. On November 24, 2004, I sent Mr. Resnick a copy of an Amended Confidentiality Protective Order via email. A copy of this email is attached as Exhibit C. From November 24, 2004 through March 2005, I sent numerous letters and correspondence to Mr. Resnick attempting to obtain a response from M2 concerning the Amended Protective Order. However, I received no response to these requests or the Amended Confidentiality Protective Order until March 16, 2005.

10. On November 17, 2004, I forwarded to M2's attorney documents that were searched for and collected based on the parties' October 13, 2004 discovery conference. The documents produced on November 17, 2004 numbered approximately 844 pages. MRO's search for documents based on the parties' October 13, 2004 discovery conference yielded additional documents that were not produced on November 17, 2004. I sent M2's counsel these additional documents on November 23, 2004 (a total of 3 pages) and December 3, 2004 (a total of approximately 171 pages).

11. On November 24, 2004, M2 produced a DVD containing one large PST file containing emails and other documents. I have been informed by the staff at my office that the PST file on the DVD provided on November 24, 2004 contains 39,174 emails.

12. On January 18, 2005, Mr. Resnick sent my office a letter requesting documents from MRO concerning 34 different issues or topics, none of which M2 connected or related to any of M2's Document Requests. A copy of this letter is attached hereto as Exhibit D.

13. On March 24, 2005, I sent Mr. Resnick a letter pursuant to which MRO produced approximately 1,119 pages of documents in response to Mr. Resnick's letter dated January 18, 2005. My letter to Mr. Resnick stated that many of the issues raised in his January 18, 2005 letter were beyond the scope of M2's formal Document Requests.

14. During MRO's search for and production of documents in response to the October 13, 2004 conference and M2's January 18, 2005 letter, it uncovered new "attorney's eyes only" documents in addition to the Global Price Book. I made M2's counsel aware of these documents by describing them during several telephone conferences in late 2004 and early 2005, including the conferences on March 18 and April 11, 2005.

15. On March 18, 2005, I conferred with M2's counsel concerning MRO's "attorney's eyes only" documents. During this conference, M2's counsel agreed to an "attorney's eyes only" designation with regard to the Global Price Book and he agreed to send MRO an agreement or stipulation providing for the same. Also during this conference, I asked M2's counsel if M2 would agree to an "attorney's eyes only" designation for draft portions of the Global Price Book and correspondence and other documents concerning its formulation. M2's counsel said that he would have to speak to his client before responding to this request. I received no response to this proposal before M2 filed its Motion to Compel on April 7, 2005.

16. On April 11, 2005, I conferred with Mr. Resnick regarding MRO's Motion for Protective Order, and attempted in good faith to resolve or narrow the issues presented in MRO's Motion. During our conference, M2's counsel refused to agree to an "attorney's eyes only" designation for any documents other than the Global Price Book. During this conference, M2's counsel agreed to send me an agreement or stipulation providing for an "attorney's eyes only" confidentiality designation for the Global Price Book. As of the below signed date, I have not received an "attorney's eyes only" stipulation or agreement from M2's counsel. Through written and oral communications, I have informed M2's counsel numerous times that as soon as the parties have a written agreement or stipulation concerning the Global Price Book, MRO will produce it and all drafts of the same.

5

17. M2's Motion to Compel seeks access to MRO's email servers and a certification from MRO that its document production is complete. Except for the arguments made in M2's Motion, to my knowledge, M2's counsel has not attempted to obtain or request access to MRO's email servers, or request that MRO certify in writing that its search for documents is complete. During my conferences with M2's counsel, including the March 18 and April 11, 2005 conferences, M2's attorney did not mention or request either of the preceding items.

Signed under the pains and penalties of perjury this 20th day of April 2005.

/s/ Kurt E. Bratten
Kurt E. Bratten