521 BOSTON POST ROAD
SUDBURY, MA 01776
978.440.7000
FAX: 978.440.7650
*www.feelaw.com*

# FEE, ROSSE & LANZ, P.C.

*Attorneys at Law*

MARK S. RESNICK (*mresnick@feelaw.com*)

January 18, 2005

BY FAX AND FIRST CLASS MAIL

Lee T. Gesmer, Esq.
Gesmer Updegrove, LLP
40 Broad Street
Boston, MA
02109

Re: *M2 Consulting, Inc. v. MRO Software, Inc.*, United States District Court, District of Massachusetts, Civil Action No. 03-12589-GAO

Dear Lee,

Although MRO Software, Inc. ("MRO") has made several supplemental productions of documents responsive to certain M2 document requests, its production remains woefully incomplete. We have reached the point where the facts gleaned in discovery and from MRO's document production itself indicate the presence of large categories of responsive documents which we have not seen. I write to review with you the glaring deficiencies in MRO's document production, and to ask one last time for a responsive production. If we cannot resolve these issues, M2 will have no choice but to move to compel. The most significantly deficient areas are set forth and described below.

1. Replies To MRO 00772

As you know, this is an email, on July 7, 2003, from Bill Sawyer to Miciek and Gilroy which is also copied to Newfield. It refers to a meeting with Rick Bevington where Bill Sawyer was in attendance, and where Mr. Bevington presented his interpretation of the MRO/M2 agreement. Mr. Sawyer asked Miciek and Gilroy their view of MRO's obligations to M2. MRO has produced no documents in which Miciek, Gilroy, or anyone else responds to Sawyer's request to provide insights into MRO's obligations to M2. Given Mr. Sawyer's level of interest, and his apparent disagreement with Mr. Bevington's interpretation of MRO's obligation to M2, it is inconceivable that there are no documents which memorialize this response. I have discussed this with Kurt Bratten in the past, and are thus far have not received any response back or any responsive documents. Please produce all replies, whether e-mail or otherwise or any documents which memorialize any such replies to this e-mail from Bill Sawyer.

2. Siebel Relationship

Documents produced by MRO referred to its use of Siebel software for tracking sales prospects. It has produced one Siebel note associated with its reliance on M2 to assist with a prospect called Gas Recovery Systems. MRO 1911, contains specific references to M2 and the pursuit of this prospect. The document indicates that significant additional notes in the Siebel software system used by MRO must also exist relative not only to M2's assistance with this particular prospect, but also with respect to MRO's reliance on M2 in connection with the pursuit of other prospects. Please produce all Siebel notes responsive to our requests.

3. Discussions Re Application Hosting Between Bill Sawyer And Chip Drapeau

MRO has produced documents which evidence significant tension at MRO between utilizing its own hosting center, or honoring its obligations to M2. MRO 01737-01739 is an e-mail discussion which included Chip Drapeau, Ted Williams, Bill Sawyer, and Bob Parker, among others on May 30, 2003. In this discussion, Drapeau states that MRO is in the hosting business, but concedes that MRO has a "spotty history" with hosting. Given the level of Mr. Drapeau's concern evidenced in these documents, it is unusual that MRO has produced no other documents associated with this discussion. This is particularly true where Mr. Drapeau tells Mr. Williams that if "the message isn't out, let's get it out INSTANTLY". At a minimum, documents evidencing efforts by Mr. Williams and Mr. Parker to "get the message out" would be responsive to this request. It is obvious that many additional documents must also exist. Please produce all documents relating to the discussions evidenced in the above referenced documents including but not limited to notes and email.

4. Application Hosting Documents

In addition to the specific application hosting documents referenced above, MRO's production is virtually devoid of documents from other key personnel involved in the application hosting effort, including but not limited to John Kennedy, Rich Caplow, Patti Foye, Dave Gasdia, Terry Saunders, Jon Smit, Bob Daniels, Bill Sawyer, Jane Noland and Rob Bloom. MRO must produce documents by and between those individuals, and any other MRO personnel, outside consultants, advisors, agents, or contractors relating to the subject of application hosting.

5. Katie Doyle Email

MRO's production of e-mail and other documents from Ms. Doyle is exceedingly light. One document, MRO 01734-01736, refers to a request from Bill Sawyer to Ms. Doyle to set up a meeting between him, Miciek, and others to "get us all on the same page" regarding the application hosting issue. We have no documents which reflect that meeting, discuss its scheduling, or mention any of the results from that meeting, much

Lee T. Gesmer, Esq.
January 18, 2005
Page 3

less notes or other documents reflecting what actually occurred at the meeting. This leads to the conclusion that Katie Doyle must be in possession of significant documents associated with Application Hosting, Swiss Valley Farm and /or Ed Hansen. Please produce all documents associated with these topics maintained by Ms. Doyle, or any of the other personnel mentioned or copied in the above referenced document.

### 6. EDS

MRO has produced documents which clearly indicate a relationship with MRO hosting partner EDS. *See,* MRO 01717. MRO's relationship with EDS is directly relevant to the claims and issues in this case, and documents associated with that relationship should be produced immediately in so far as they relate to application hosting.

### 7. Hosting Discussions With Other Entities

MRO 01722 references potential hosting discussions between MRO and several other entities. All documents relating to hosting discussions with these entities are clearly within the scope of our existing document requests and should be produced immediately. Based on the evidence produced to date, those entities would include SAIC, IBM and/or Derek Darkowski. *See,* MRO 01722. In so far as these discussions apparently involved Louisiana Property Management and MRO's response to a request for proposal from that entity, all documents associated with that response should also be produced.

### 8. Negotiation Of Mid-Tier Hosting Agreements

MRO 01725 specifically references the negotiation of mid-tier hosting agreements by Miciek and Parker. With the exception of this reference, MRO has not produced any significant documentation regarding the efforts of those two individuals to negotiate this type of hosting agreement. Clearly the effort must have been substantial, since it was noticed by Ms. Doyle in her email dated August 9, 2002. The contents of this document indicate that there must be substantial additional documentation which MRO has not yet produced. Please produce it. It is relevant.

### 9. Hosting Discussions Between Grubb & Ellis And MRO

Hosting discussions between MRO and Grubb & Ellis are relevant to our requests for MRO hosting business documents. They are even more relevant in light of events which have transpired since the filing of the complaint. To date, MRO has failed to produce this documentation. Please produce all these documents, including but not limited to email, correspondence, notes, discussions, and follow-up pertaining to hosting discussions between Grubb & Ellis and MRO. A variety of MRO personnel including, Katie Doyle, Steve Cascio, Rich Caplow, Bill Sawyer, Mike Dziekan appear to be involved, and all are referenced in Bill Sawyer's email of July 10, 2003. *See,* MRO 01728.

10. <u>MRO 01567</u>

MRO has not provided any documents which would allow M2 to identify and individual who took these notes. Without that identification, M2 cannot pursue discovery of this individual, or determine whether the individual responsible for taking these notes has any other relevant notes.

11. <u>Response To MRO 01714</u>

MRO has produced no documents in response to this e-mail. Since some type of response must have occurred, MRO is obligated to produce it.

12. <u>Responsive Documents From Chip Drapeau</u>

Mr. Drapeau has thus far produced five documents. It is inconceivable that Mr. Drapeau, who was involved directly in the M2 relationship and who had direct discussions with M2 personnel, has only five responsive documents. We request once again, that Mr. Drapeau make a full production of responsive documents.

13. <u>Ted Williams Correspondence</u>

Mr. Williams has thus far produced less than three pieces of correspondence in response to M2's document requests. As with Mr. Drapeau, it is inconceivable that Mr. Williams does not have more responsive documentation. An executive as closely involved with the transaction as Mr. Williams simply must have either created himself or caused to be created additional categories of responsive documents, and we request once again that MRO complete this portion of its production. In addition, MRO 02623, an email from Mr. Williams, states that M2 was not to get Intermat. We have seen no documents associated with this decision.

14. <u>Correspondence Regarding Negotiation Of The 2002 Agreement</u>

Correspondence between MRO personnel regarding the negotiation of the 2002 Agreement is also well within M2's production requests. M2 is entitled to all internal correspondence generated by the MRO personnel involved with this contract negotiation. M2 once again asks for MRO's production of all internal MRO documents regarding this agreement and the associated negotiations.

15. <u>MRO Application Hosting Correspondence With IBM</u>

Documents relating to MRO's application hosting relationships with other entities go directly to M2's claims for misappropriation of its business model, and MRO's suitability to enter that market in the absence of M2's expertise. This is particularly true of MRO's hosting relationship with IBM. M2 specifically requests that MRO provide all correspondence or other documents exchanged with IBM regarding the MRO hosting application, including the contract between IBM and MRO for application hosting

services, and the associated sales compensation and promotion plans which would have been part of this relationship.

16. Application Hosting Documents With Other Entities

As with the prior request, MRO's application hosting correspondence and documents with other entities is also directly relevant to the issues in this action. MRO should produce all application hosting correspondence between MRO and CIM Maintenance, Supply and Service, FME, Project Tech, Johnson Controls, and UNICCO and all documents associated with any entities to whom MRO now refers hosting customers.

17. M2 Agenda Item

As you know, there is an M2 agenda item on a quarterly North American Regional Sales Staff meeting document, MRO 01280, which has been produced without any of its associated notes, presentation materials, or documents arising from any preplanning discussions associated with this agenda item. It would have been inconsistent with any professional meeting of regional sales staff for the parties responsible for presenting this agenda item not to have generated additional documents reflecting the planning for its presentation. At a minimum, someone must have notes or an outline for use in guiding the discussion. MRO must produce all documents associated with this agenda item.

18. Executive Management Meetings

MRO has thus far failed to produce any notes or minutes from any executive management meetings which relate to M2 or application hosting. It is inconceivable that these two subjects were not discussed at some point during those meetings, or that if they were discussed, that no notes or minutes were generated reflecting those discussions. Please produce the notes, minutes, or other documents relating to these management meetings to the extent that they relate to M2 or application hosting.

19. Application Hosting Meetings

Documents produced by MRO indicate that it had internal meetings concerning application hosting. *See,* MRO 01531 and MRO 01538. None of the associated documents of been produced. MRO must produce all presentations, follow-up documents, agendas, notes, minutes, outlines, slide shows, PowerPoint presentations, or other documents relating to meetings concerning application hosting.

20. MRO 00746

As you know, this document is an e-mail from Doug Hubers to Mr. Bevington wherein he requests specific details of M2's hosting business. There has been no documentation produced by MRO to date which provides any information regarding the facts and circumstances which initiated Mr. Huber's e-mail to Mr. Bevington, or any

documentation of the information which Mr. Bevington provided to Mr. Huber. Since these documents go directly to the exchange of information between M2 and MRO, they are relevant and must be produced immediately.

### 21. MRO 00349

MRO's production does not contain material from Steve Caslick regarding application hosting and M2. At least one document produced by MRO indicates that additional material must still be in MRO's possession. This document indicates that Caslick had direct contact with M2 in the competitive marketplace, and must have been associated to some degree with MRO's assessment of M2's hosting capabilities. It is clear that additional documentation which has not been produced must exist. Please produce it immediately.

### 22. David Rothberg

MRO's production contains no documents on Rothberg's marketing strategy, or his involvement with IBM application hosting. Please produce these responsive documents immediately.

### 23. Monthly Sales Meeting Notes

M2 has requested documents concerning MRO's sales efforts and has included in its amended complaint allegations that MRO had business reasons for pursuing its partnership with M2. Monthly sales meeting notes are therefore directly relevant to both the issue of MRO's general financial condition, the performance of its sales force generally, and the extent to which certain decisions which MRO made or chose not to make resulted from sales performance issues. MRO has produced meeting notes from monthly sales reports for February 2000, March 2000, Month 2000, June 2000, July 2000, April 2001, July 2001, September, 2001, November 2001, February 2002, March 2002, August 2002, October 2002, and April 2003. This production is incomplete. We need all of the reports and meeting notes for all of the months of 2000, 2001, 2002 and 2003. This request includes all minutes and attendance sheets from Monthly Sales Meetings for all of 2000, 2001, 2002 and 2003.

### 24. Documents Relating To Joe Leone's Responsibility For The M2 Partnership

Documents produced by MRO indicate that Joe Leone was assigned responsibility for the M2 relationship, in the context of M2 as an alliance partner. This assignment is referred to in an email dated November 2, 2001. *See*, MRO 02517. It is highly improbable that an organization like MRO would consider assigning Mr. Leone this responsibility, without generating significant documentation. MRO has produced nothing which goes to Mr. Leone's assignment to this role, his responsibilities, his performance, and any of the other issues which would be naturally associated with such an assignment. Please provide any and all documents, including but not limited to notes, memos,

conversation transcripts and email that relate to Joe Leone taking over the responsibility for the partnership from the alliance prospective.

25. <u>The Decision Not To Provide Intermat Tools To M2</u>
In addition to the documents associated with this topic from Ted Williams, please produce any documents, including but not limited to notes, memos, conversations, and emails that discuss the decision not to provide Intermat tools to M2, specifically notes from, Paul Cisternelli or Bill Sawyer. *See* MRO 02623.

26. <u>Hosting Documents Pertaining To Other Hosting Providers Of MAXIMO</u>
MRO's production establishes that it did business with and provided MAXIMO to other hosting companies. Documents relating to MRO's relationship with those other companies as it relates to hosting of MAXIMO software is directly relevant to its relationship with M2. M2 is entitled to compare the way those relationships were structured, the specific terms, and to the extent they were terminated, and the position that MRO took relative to any such termination, with the corresponding issues in this case. This will establish whether MRO treated all of its other ASP providers the same way, whether it had a standardized structure for hosting relationships, and the extent to which it was simultaneously pursuing relationships with other Internet hosting providers while it was negotiating with M2. Please provide all documents pertaining to other hosting providers of MAXIMO generally and to the "MAXIMO 5 ASP Model". MRO 01939-MRO 01947, refer to "MAXIMO 5 ASP Model". The documents requested include but are not limited to timelines, agreements, discussions, emails, meeting notes and memos.

27. <u>Planning Of MRO Hosting Center</u>
MRO has not completed production of documents associated with this topic. Specifically, M2 is entitled to all documentation supporting that MRO had, at one point, been in the "planning phase for the past 6 months." *See,* MRO 01737. In addition, MRO should provide all notes, email, memos, and other documents, relating to the planning of the MRO hosting center referenced in email from Bill Sawyer. *See,* MRO 01737.

28. <u>Follow Up To Discussions With Newfield</u>
Any follow up to conversations with Newfield including discussions, memos, emails and meeting notes. To date, none have been provided. *See* MRO 01600.

29. <u>MRO 01735</u>
MRO 01735 specifically states "[T]ell M2 to take a hike until we use up our capacity." Please produce all responses, email, notes, conversations and documents associated with this directive, including documents which define and quantify the "capacity" referenced in this email.

### 30. Why M2 Was Not Provided With Certain Software Updates

Please produce any documents relating to why M2 was not provided with certain software updates or their associated marketing support. This request includes but is not limited to planning decisions, memos, emails, conversations, and notes. *See,* MRO 001360.

### 31. Eagle

Please produce any documents relating to why M2 was not given "Eagle", including any planning decisions, memos, emails, conversations and/or notes.

### 32. All Signed Contracts Between MRO Software And M2 Consulting

Please produce all signed contracts between MRO and M2, including but not limited to all hosting agreements and any signed documents that include discussion of points and practices in "Announcing Application Hosting for MAXIMO." *See,* MRO 01384-01385.

### 33. Marketing Materials Compiled By MRO

To date we have not seen any documents associated with any and all marketing materials compiled by MRO to announce and/or to promote the partnership between MRO Software and M2 Consulting. Please produce these documents.

### 34. Letter Mailed Out By MRO In 2003

MRO 01593 references a letter mailed by MRO in 2003 to all clients marketing "MRO's Application Hosting services." MRO has not produced this letter.

Although this list is not entirely comprehensive, it does contain the major areas where we have glaring deficiencies in MRO's document production. It is imperative that MRO provide full and complete discovery on these issues. To the extent that MRO personnel have not been diligent in their search for responsive documents, it is imperative that they do so and that MRO complete its production within the next week. As you know, M2 is interested in commencing depositions, but cannot until all responsive documents have been produced. We have requested these documents on numerous occasions and in a variety of contexts. Unless we can resolve these issues promptly, we will have no choice but to move to compel.

If you have any questions, please do not hesitate to contact me. If you would like to convene a discovery conference to discuss these particular document production issues, please let me know. Otherwise, I will expect prompt supplementation of MRO's production.

Lee T. Gesmer, Esq.
January 18, 2005
Page 9

Very truly yours,

Mark S. Resnick

Cc: Kurt Bratten (by fax)