UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

M2 CONSULTING, INC.

            Plaintiff,

v.                                          C.A. No. 03-12589-GAO

MRO SOFTWARE, INC.

            Defendant.

**AFFIDAVIT OF CRAIG NEWFIELD IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER**

I, Craig Newfield, state as follows:

1.      I am the Vice President and General Counsel of MRO Software, Inc.

("MRO").  I submit this affidavit in support of MRO's Motion for Protective Order.  The

facts in this affidavit are based upon my personal knowledge, except in those instances

where I have indicated otherwise.

2.      During the course of discovery in this case M2 Consulting, Inc. ("M2")

has demanded highly confidential materials from MRO.  M2 has requested documents

that disclose detailed and highly confidential information about MRO's business of

providing Internet hosting of its MAXIMO software product, including MRO's pricing,

sales and marketing strategies, the development of those strategies and MRO's

prospective and actual hosting customers.  One such document is MRO's Global Price

Book, which contains extremely sensitive pricing and strategic information about MRO's

business and is strictly for use by authorized MRO personnel.  MRO is extremely

protective of these documents and takes considerable measures to ensure that they are

treated with a high degree of confidentiality since they contain MRO's most sensitive

competitive information about its business.  MRO is willing to provide these materials

during the course of discovery in this litigation, but it has designated these highly

confidential documents as "attorney's eyes only".

3.      MRO's flagship software product is MAXIMO, an Enterprise Asset

Management (EAM) software product which is used to maintain the high-value capital

assets of organizations around the world.  For example, many companies use MAXIMO

to address facilities management needs, such as maintaining warehouses or office space.

MRO offers MAXIMO in an Internet hosted environment in which MRO maintains and

hosts the software for its users, or as a software product which is licensed and maintained

by the licensee.

4.      M2 competes directly with MRO in the EAM software hosting or

application service provider (ASP) market.

5.      In addition, M2 unlawfully competes with MRO by selling a hosted

version of MRO's MAXIMO software without its consent or authorization.  In November

2003, MRO terminated its November 4, 2002 Hosting Affiliate Agreement with M2.  The

information provided by M2 in discovery in this case (which is described in greater detail

in MRO's Amended Counterclaims) shows that M2 has continued to market and sell

MRO's MAXIMO software in a hosted environment despite MRO's termination of its

right to do so.  Further, M2's attorneys have taken the position in correspondence that M2

is free to host MAXIMO sold directly to customers by MRO for installation at the

customers' facilities (as opposed to a hosting arrangement).  (Exhibit A).

6.      Finally, materials produced by M2 in discovery show that as far back as July 2002 -- when M2 was negotiating a new contract with MRO -- M2 was discussing a "strategic alliance" and contract with Indus International ("Indus"), a direct competitor of MRO  (Exhibit B).  As the letter attached as Exhibit B reflects, M2 was so concerned about entering into a relationship with Indus (while still promoting MRO's MAXIMO product), that it warned Indus that "MRO Software may sue to protect this market from penetration by Indus."

7.      Additional discovery materials produced by M2 show that following this July 2002 proposal to Indus, M2 entered into negotiations to sell itself to Indus.  M2's documents show that these discussions terminated in October 2002, but the risk exists that M2 will resume negotiations to sell its business and information to Indus (or some other competitor of MRO) in the future.

Signed under the pains and penalties of perjury this 20th day of April 2005.


/s/ Craig Newfield
Craig Newfield

3