UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

| | |
|---|---|
| M$^2$ CONSULTING, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 03-12589-GAO |
| | ) |
| | ) |
| MRO SOFTWARE, INC., | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S OPPOSITION TO MRO SOFTWARE, INC.'S MOTION FOR LEAVE TO SERVE ADDITIONAL INTERROGATORTIES AND DOCUMENT REQUESTS, AND FOR SANCTIONS

### I. INTRODUCTION

In what is clearly a calculated attempt to intimidate the Plaintiff, M2 Consulting, Inc. ("M2") into settling this case by unconscionably increasing the costs of this litigation, the Defendant, MRO Software, Inc. ("MRO") filed a motion for leave to serve additional written discovery on June 13, 2002 ("MRO's Motion"). MRO's Motion also seeks sanctions for M2's alleged failure to respond to a request for a Rule 7.1 conference. MRO's Motion should be denied because: (1) there is no basis for permitting MRO to serve additional written discovery in this case; and (2) MRO's counsel failed to make a reasonable attempt to schedule the request for the Rule 7.1 conference as required by Rule 37.1. In further support of this Opposition, M2 relies upon and incorporates herein by reference the Affidavit of Mark S. Resnick, filed simultaneously herewith.

## II. BACKGROUND

*The Pattern Of MRO's Discovery Conduct Illustrates Its Strategy*

The record of MRO's discovery initiatives in this case illustrates its underlying strategic decision to maximize the expense of this action for M2: (1) by continually attempting to expand the scope of discovery beyond the limits set forth in Local Rule 26.1(C); (2) by consistently refusing to compromise on virtually *any* discovery issue; and (3) by filing discovery motions at every conceivable opportunity. MRO's conduct amounts to nothing less than an abuse of the discovery process.

To date, M2 has produced more than 40,000 pages of documents in response to MRO's document requests. It has responded to 44 interrogatories, 3 "revised interrogatories", and it has supplemented its answers to 8 interrogatories. MRO has filed *seven* discovery related motions thus far. M2 has served but one motion to compel. Notwithstanding its failure to satisfy its own discovery obligations, MRO has ceaselessly professed dissatisfaction with M2's discovery responses.[1] Its bases for objection to those responses have frequently been dismissed by this Court. The frequency of the objections, and that fact that seemingly no matter how detailed the M2 interrogatory responses, or how voluminous and complete the M2 document production, MRO seemingly finds grounds to object. MRO demands discovery conferences, sends self-serving letters to M2's counsel accusing M2 of unreasonably delaying the progress of the case, and demands discovery conferences to discuss its dissatisfaction. During the resulting discovery conferences, MRO's counsel refuses to agree to any compromise whatsoever. Short of a complete capitulation by M2's counsel to the demands of MRO's counsel for supplementation,

---

[1] MRO's discovery responses have been woefully inadequate. From the date of its first document production in September, 2004, it has on one hand professed to have made a diligent effort to locate responsive documents, and on the other made supplemental, piecemeal document productions every few months. Its interrogatory responses have been vague, dismissive, and almost entirely unsatisfactory.

MRO then files a motion to compel. It has already filed, and lost, several motions to compel in this case. Now and apparently in retaliation for M2 bringing abusive and fraudulent discovery conduct by MRO to the court's attention, MRO has now set about attempting to find grounds upon which to seek sanctions against M2's counsel.

MRO's instant motion for leave to serve additional interrogatories and document requests and for sanctions only further illustrates its unconscionable strategy. Not content to utilize the discovery events provided in Local Rule 26.1(C), MRO has already sought and obtained permission to serve more interrogatories than those permitted by the local rules. MRO has served 19 additional interrogatories on M2, bringing the total MRO interrogatories allowed by the Court to 44. Buoyed by its successful attempt to exceed the discovery limitations with respect to interrogatories, MRO now seeks leave to serve more interrogatories, and a third set of document requests. There is simply no basis for the allowance of either additional discovery events for MRO.

*Both Sides Have Amended Their Claims*

Recently, both sides' motions to amend their respective claims have been allowed. M2's motion to amend its complaint was allowed to include claims against MRO for certain conduct which MRO engaged in subsequent to the filing of the initial complaint. Specifically, MRO, and its representatives, intentionally and tortiously interfered with certain advantageous business relationships which M2 was engaged in. The amended M2 claims focus on conduct which MRO personnel engaged in within a very limited period of time. The facts associated with this conduct are known by MRO.

MRO was permitted to amend its counterclaims to include claims for copyright infringement, and related causes of action. The MRO amended claims essentially re-style its

-3-

existing claims under federal copyright statutes, and they center on allegations that M2 copied or modified portions of the MRO software if obtained in the course of its commercial relationship with MRO.[2]

*Recent Communications Between Counsel*

Following the most recent hearing in this case, M2 began a substantial effort directed at the additional discovery tasks to be completed in case. These included providing answers to certain revised interrogatories which MRO had been ordered to narrow during an earlier hearing on its motion to compel.[3] On June 2, MRO's counsel sent a letter to M2's counsel regarding the availability of deposition witnesses and requesting a Rule 7.1 conference on a variety of outstanding discovery issues (the "June 2nd Letter"). The letter suggested that Mr. Bratten would be available June 3rd or June 6th to confer regarding the contents of the letter. M2's counsel was unavailable to conduct discovery conference either telephonically or in person on June 3 or June 6, the two dates suggested by Mr. Bratten in his letter. (Resnick Aff. ¶ 5)

On June 3, 2005, M2's counsel wrote to MRO's counsel concerning service of supplemental interrogatory response. On June 6, 2005, M2's counsel wrote MRO's counsel regarding certain issues associated with M2 supplemental responses to M2's interrogatories and revised interrogatories and certain issues associated with the production of certain documents.[4]

---

[2] The claims are specious, because alteration of the software files are necessary to utilize it, and this fact is known to MRO.

[3] At this hearing which occurred on March 23, 2005, MRO's motion to compel M2 to respond to certain specific interrogatories was denied, and MRO's counsel was ordered to narrow the interrogatories and submit them to M2's counsel. These revised interrogatories were the subject of M2's discovery activity immediately following most recent hearing.

[4] A true and accurate copy of this correspondence is attached hereto as Exhibit "A".

M2's counsel also communicated with Mr. Bratten regarding the contents of the June 2nd Letter by e-mail on June 6, 2005.[5] On that date, Mr. Bratton sent M2's counsel an e-mail setting forth a list of M2 personnel which MRO wished to depose, the same list contained in the June 2nd Letter. (Resnick Aff. ¶ 5) M2's counsel responded to Mr. Bratten by email requesting clarification on one of the designees, and Mr. Bratten clarified that designation. *Id.* Because they were discussing the contents of the June 2nd Letter in what M2's counsel assumed to be their relative order of importance to MRO, M2's counsel interpreted Mr. Bratten's silence on the Rule 7.1 scheduling conference to indicate that the scheduling of this conference was less important than the deposition scheduling issues which they were discussing, and that Mr. Bratten would provide additional dates and times within the seven-day period in which he would be available. *Id.*

Although they were communicating by e-mail, at no time during this e-mail communication on June 6th did Mr. Bratten attempt resolve the scheduling of the requested Rule 7.1 conference. (Resnick Aff. ¶ 6) He did not ask M2's counsel whether they could proceed with the conference on that date. *Id.* He did not ask if they could schedule the conference at another day within the seven-day period provided in Rule 37.1, and he did not indicate that he would seek sanctions for failure to convene a conference within the seven-day period the forth in that Rule. *Id.* In fact, he made no reference whatsoever to the fact that the discovery conference had not occurred, or to the fact that they were communicating by e-mail on one of the dates Mr. Bratten had suggested for the conference, nor did he at any time refer to any alternate availability. *Id.*

---

[5] A true and accurate copy of this email chain is attached hereto as Exhibit "B".

When the seven day period set forth in Rule 37.1 elapsed and M2's counsel had not heard from Mr. Bratten regarding the scheduling of the requested conference, he assumed Mr. Bratten's silence was the result of his own scheduling difficulties, and waited to hear from him regarding alternate dates when he would be available to conduct the conference. (Resnick Aff. ¶ 7) Because M2's counsel fully expected that Mr. Bratten would discuss the scheduling of the requested rule 7.1 conference with him in the context of the ongoing communications on discovery issues within a day or two, he did not address the matter further. (Resnick Aff. ¶ 8) On June 13, 2005, M2's counsel wrote MRO's counsel regarding the belated production by MRO of documents pursuant to its automatic disclosure obligations which were originally produced a year earlier. On June 15, 2005, M2's counsel wrote to MRO's counsel regarding M2's response to MRO's revised document requests. In addition, counsel for M2 and MRO corresponded by e-mail on June 8, 2005, June 16, 2005, June 21, and June 23, 2005.[6] On June 27, 2005, M2's counsel wrote to MRO's counsel in response to yet another MRO request for a Rule 7.1 conference on yet another set of discovery issues, and offered to conduct the conference requested by Mr. Bratten in the June 2nd Letter at the same time.[7] (Resnick Aff. ¶ 11)

The first time that M2 became aware of MRO's intention to take issue with the parties' inability to schedule this conference, other than the initial request from MRO's counsel on June 2, 2005, was when MRO filed its Motion on June 13, 2000 5, eleven days after the initial request was made. (Resnick Aff. ¶ 10)

## ARGUMENT

*MRO Should Not Be Permitted To Serve Additional Written Discovery.*

---

[6] A true and accurate copy of this email correspondence is attached hereto as Exhibit "C".

[7] A true and accurate copy of this correspondence is attached hereto as Exhibit "D".

At a hearing on March 23, 2005, when MRO's motion to compel, this court, Bowler J.,
noted that much of the information sought by MRO for interrogatories, and much of the
information which MRO sought to compel M2 to provide for interrogatories was information
which was properly obtained through the deposition process. Exh A. The Court noted, even in
March of 2005, that no depositions had occurred in the case, and that this was clearly the avenue
which MRO should utilize its attempt to obtain the discovery information which it sought to
compel M2 provide in written form. *Id.*

MRO's request to serve additional interrogatories and additional document requests
concerning its claims for trademark and copyright infringement, false advertising and unfair
competition are entirely unnecessary. It can obtain all the information it seeks by deposing M2
personnel.[8] MRO has produced every relevant non-privileged document it has. MRO simply
does not need to serve any additional interrogatories in this case. To date, MRO has served M2
with 44 interrogatories, 19 more than the 25 provided in the Local Rules. It should not be
permitted to serve any more. The information which it seeks is not information which it needs to
obtain through the interrogatory process. MRO has to date taken only one deposition in this
case. It is entitled to nine more. There is no indication that the nine depositions which it is
allowed would in any way deprive MRO of the information which it would presumably seek in
written form from interrogatories. The deposition process is available, appropriate, and almost
entirely unused by MRO.

MRO's request is all the more objectionable when it is viewed in perspective with its
conduct relative to M2's interrogatory and document request responses to date. The pattern is
predictable. No matter how M2 answers these additional requests, MRO will find some ground

---

[8] The parties are in the process of scheduling those dispositions now.

-7-

for objecting to the responses, convene a conference, and when M2 does not agree to every MRO request, MRO will file yet another motion to compel. M2 will be required to expend attorney and party time and resources to first respond to the requests, then conduct the conference, then draft opposition papers to the inevitable motion to compel, and then to attend the hearing. A result clearly sought by MRO. The discovery itself is largely irrelevant. It is the burden on M2 of responding that is MRO's objective.

The burden on M2 which would result from further expanding MRO access to discovery beyond what the rules provide is unjustified. The discovery limitation in the Local Rules were put in place precisely to discourage and deter tactics like those MRO is engaging in here. Nothing about this case justifies the expansion of written discovery sought by MRO. Significant in MRO's motion is the absence of any fact which support its request for additional discovery.

MRO should be required to utilize the remaining discovery processes provided in the rules, namely depositions. If, after the conclusion of the depositions in this case, MRO can make a credible argument that additional written discovery is somehow necessary, it would of course be free to return to the court with some type of credible proof.

*There Is No Basis For Sanctions*

In the June 2nd Letter which it requested a Rule 7.1 conference, MRO's counsel suggested only two dates on which he was available. (Resnick Aff. ¶ 5) Neither date was available to M2's counsel. *Id.* The parties communicated by e-mail on June 6 at approximately 2 o'clock in the afternoon. Exh. B. At no time during these communications did MRO's consul even raise the issue as to when the Rule 7.1 conference could be scheduled. The scheduling issue was obvious. The conference had not occurred on June 3, and most of the business day for June 6 had already elapsed at the time these communications took place. Rule 37.1 specifically

provides that it is the moving party and has the responsibility for scheduling a conference. L.R. 37.1(A). The responsibility for scheduling the conference requires more than simply suggesting two possible dates and waiting for seven days to elapse. This responsibility is even more pronounced when the moving party is in virtually daily communication with the other party regarding discovery issues. MRO had multiple occasions between the time it made its request and the expiration of the seven-day period required in Rule 37.1 to explore potential scheduling of a conference. Counsel for M2 did not refuse to respond to MRO's discovery issues. It responded by e-mail on June 6 to a substantial portion of the discovery issues contained in the June 2nd Letter. In doing so, M2's counsel was making a good faith effort to address MRO's discovery issues which were contained in June 2nd Letter. It was counsel for MRO, clearly looking for an opportunity to move for sanctions against M2's counsel, who elected not to responsibly discharge its responsibility to arrange for the conference. He chose instead to await the expiration of the seven day period and then use it as a pretext to seek sanctions. The facts are clear, M2's counsel did respond to the June 2nd Letter within seven days, and MRO's counsel failed to make good faith reasonable efforts to schedule the conference as required by Rule 7.1. Having failed to make a good faith effort, MRO's counsel should be precluded from invoking Rule 37.1 in support of its request for sanctions.

The scheduling issues which prevented M2's counsel from conducting the discovery conference on the dates and times suggested by MRO's counsel do not amount to a refusal to respond or to a failure to conduct the conference. Had MRO's counsel suggested other dates and times after June 6th, the conference would have occurred. (Resnick Aff. ¶ 10) On the record before this Court, there is no basis whatsoever for the award of sanctions.

## CONCLUSION

For the reasons set forth above, MRO's Motion for leave to serve additional

interrogatories and document requests and for sanctions should be denied, and this court should

enter an order precluding MRO from filing any additional discovery motions with this Court

prior to the completion by MRO of the taking of depositions in the case.

M2 Consulting, Inc.
By its Attorneys
Fee, Rosse & Lanz, P.C.

By:

Michael C. Fee, Esq. (BBO NO. 552796)
Mark S. Resnick, Esq. (BBO NO. 559885)
Fee, Rosse & Lanz, P.C.
321 Boston Post Road
Sudbury, MA 01776
(978) 440-7000

Counsel:

John M. Teitler
Teitler & Teitler
1114 Avenue of the Americas
New York, NY 10036
Tel. (212) 997-4400

June 27, 2005

## **CERTIFICATE OF SERVICE**

I, Mark S. Resnick, hereby certify that Plaintiff's Opposition to Defendant/Plaintiff-in-Counterclaim's Motion to Compel Discovery was served upon the Defendant, by mailing this opposition, first class mail and by telecopier to Lee Gesmer, Esq., Gesmer Updegrove LLC, 40 Broad Street, Boston, MA 02109, on June 27, 2005.