UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

M2 CONSULTING, INC.,
    Plaintiff,

v.                                                         CIVIL ACTION NO.
                                                          03-12589-GAO

MRO SOFTWARE, INC.
    Defendant.

**REPORT AND RECOMMENDATION RE:
PLAINTIFF'S EMERGENCY MOTION TO ENJOIN MRO'S MISUSE
OF INFORMATION PRODUCED IN DISCOVERY, FOR DEFAULT
JUDGMENT, COSTS AND SANCTIONS
<u>(DOCKET ENTRY # 45)</u>**

**July 6, 2005**

**BOWLER, U.S.M.J.**

    Plaintiff M2 Consulting, Inc. ("M2") seeks the drastic remedy of dismissing with prejudice the counterclaims filed by defendant MRO Software, Inc. ("MRO") as a sanction for abusing the information M2 produced to MRO through discovery. The abuse revolves around MRO's unauthorized access to M2's customer database system on February 24 and 25, 2005. In addition to a dismissal of the counterclaims, M2 seeks discovery into the transgression as well as injunctive and monetary relief.

    This court heard ample argument regarding the issues on May 20, May 27 and June 7, 2005, and, after receiving additional briefs, took the motion (Docket Entry # 45) under advisement.

BACKGROUND

The facts regarding the transgression as they exist to date are adequately set forth in the sealed affidavits and need not be repeated in detail. Although troubling, they fall short of necessitating the drastic relief requested by MRO.

At the time of the February 2005 transgression, the parties did not have a protective order signed by the court in place. Rather, the parties had filed a stipulated protective order in September 2004.[1] (Docket Entry # 10). The stipulated protective order remained unsigned.[2] The parties therefore had a contract with the understanding and expectation that the protective order would be signed by the court.

M2 proceeded to supply MRO certain information as part of the discovery process. MRO then used the information provided through discovery by M2 to penetrate M2's customer database system in an unauthorized manner. MRO insists it was accessing the data only to learn about M2's use of illegal copies and its entry into licenses for MAXIMO software with new customers after termination of the parties' hosting agreement. The material

---

[1] Due to the absence of a court issued protective order, sanctions under Rule 37(b), Fed. R. Civ. P., are improper. See R.W. International Corporation v. Welch Foods, Inc., 937 F.2d 11, 15 (1st Cir. 1991) (Rule 37(b)(2) "requires two things as conditions precedent to engaging the gears of [Rule 37(b)(2)'s] sanction machinery: a court order must be in effect, and then must be violated").

[2] This court has since allowed a subsequent motion for a protective order (Docket Entry # 41).

obtained provided a basis for the amended counterclaims, which include counts for copyright infringement and false advertising, and is therefore relevant to such counterclaims.[3]

Although MRO's conduct does not violate a court imposed protective order, it is nonetheless grave, as evidenced by the various state and federal statutes cited by M2 at the May 20, 2005 hearing and in the motion. MRO's assertion of a violation of LR. 7.1 is also disingenuous and without merit.[4]

M2 seeks an affidavit detailing the nature of the access including the method by which M2 accomplished the intrusion. At the May 20, 2005 hearing, M2 also requested the opportunity to conduct a deposition into the matter. That said, MRO has been quick to alleviate and thereby diminish the effect of the conduct. It has agreed to enter into a preliminary injunction restraining it from using any information obtained from M2 in discovery to access any M2 computer system or Internet site. (Docket Entry # 56, Ex. A, ¶ 1). As well as additional restraints (Docket Entry # 56, Ex. A, ¶¶ 2 & 3), MRO has also agreed not to use any information obtained from M2's Internet web site on February 24 and 25, 2005, other than in connection with

---

[3] MRO filed a motion for leave to amend to add additional counterclaims on March 25, 2005. (Docket Entry # 19). The district judge electronically allowed the motion on April 22, 2005.

[4] MRO's request for attorney's fees and costs incurred in opposing the emergency motion is likewise without merit.

this action, and to certify in writing that no M2 customer data has been altered or distributed.  (Docket Entry # 56, Ex. A, ¶¶ 4 & 5).

DISCUSSION

Contrary to M2's assertion of a fraud on the court, MRO's conduct does not rise to this level.  Fraud on the court has its genesis in the federal court's inherent power to regulate and control abusive litigation tactics effecting the institutional integrity of the court.  See Aoude v. Mobil Oil Corporation, 892 F.2d 1115, 1117-1118 (1st Cir. 1989).  The conduct at issue focuses to a far greater degree on MRO's business as opposed to the institutional integrity of this court through the filing of the counterclaims.  While this court does not discount the severity of the misconduct or the harm to M2's application hosting business, a remedy for M2's misconduct is more properly addressed through a breach of contract claim as opposed to sanctions for abusing the discovery process and/or the filing of the counterclaims.  See Jepson, Inc. v. Makita Electric Works, Ltd., 143 F.R.D. 657, 660 (N.D.Ill. 1992), rev'd on other grounds, 30 F.3d 854 (7th Cir. 1994); see generally Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 789 (1st Cir. 1988) ("Rule 26(c)'s good cause requirement means that, '[a]s a general proposition, pretrial discovery must take place in the public

4

unless compelling reasons exist for denying the public access to the proceedings'").

Similar to the authority to sanction conduct as a fraud on the court, this court has the inherent power "to sanction parties for litigation abuses." John's Insulation, Inc. v. L. Addison and Associates, Inc., 156 F.3d 101, 108 (1st Cir. 1998). This authority necessarily includes the ability to issue a default judgment, John's Insulation, Inc. v. L. Addison and Associates, Inc., 156 F.3d at 108, and/or dismiss the counterclaims. The sanction of entering a default judgment, however, is "drastic" and customarily reserved only for "'an extreme situation.'" Ungar v. Palestinian Authority, 325 F.Supp.2d 15, 60 (D.R.I. 2004), aff'd, 402 F.3d 274 (1st Cir. 2005); see also Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003) (dismissal ordinarily employed as sanction where "misconduct is extreme"). At this juncture and given the record before this court at this time, the conduct does not warrant sanctions in the form of a dismissal of the counterclaims.

As to the request for injunctive relief, the parties have agreed to enter into a preliminary injunction extending, at a minimum, to the categories set forth in MRO's proposed preliminary injunction (Docket Entry # 56, Ex. A). In light of the parties' agreement, this court recommends that a preliminary injunction issue in the form set forth in exhibit A to docket

entry number 56.  The June 5, 2005 date set forth in paragraph five shall be changed to July 12, 2005.

Finally, because the information obtained concerns the subject of the amended counterclaims, it is relevant to this proceeding.  On this basis, M2 is therefore entitled to conduct a deposition.  <u>See</u> Fed. R. Civ. P. 26(b)(1).  The deposition may relate to the method by which MRO obtained the information as well as the nature of the information obtained.

CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[5] that the emergency motion (Docket Entry # 45) be **DENIED** except to the extent of allowing M2 to conduct a deposition and entering the proposed preliminary injunction set forth in exhibit A to docket entry number 56.  The June 5, 2005 date in paragraph five is changed to July 12, 2005.  This court further **RECOMMENDS**[6] that the request for monetary relief be reserved until the conclusion of the trial or other disposition

---

[5]  Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection.  Any party may respond to another party's objections within ten days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order. <u>United States v. Escoboza Vega</u>, 678 F.2d 376, 378-379 (1st Cir. 1982); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

[6]  See the previous footnote.

on the merits of this action.

   /s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge