(a)   the other party breaches any material provision of this Agreement and, in the case of a breach capable of remedy, fails to cure such breach within thirty (30) days of the receipt by the breaching party of notice specifying the breach and requiring its remedy;

(b)   the other party (i) becomes insolvent, (ii) makes a general assignment for the benefit of creditors, (iii) suffers or permits the appointment of a receiver for its business and assets, (iv) becomes subject to any proceeding under the bankruptcy or insolvency law, whether domestic or foreign, and such proceeding is not dismissed within sixty (60) days, or (v) has liquidated, voluntarily or otherwise.

7.3         Effect of Termination:  Upon any expiration or termination of this Agreement, the licenses granted to Customer hereunder will immediately terminate, and at a party's request and option, the other party will either promptly return and provide to the requesting party all documents, copies, disks and other material of any kind containing any Proprietary Information of the requesting party [other than Customer Data] or destroy all such documents, copies, disks and other material of any kind. An officer of the other party will certify to the requesting party that the other party has complied with the terms of the preceding sentence respecting Proprietary Information.  The expiration or termination of this Agreement for any reason will not relieve Customer of its obligation to pay any amount due and owing prior to the date of expiration or termination and will not affect any other rights or liabilities of the parties which may have accrued prior to the date of expiration or termination.

7.4         Survival:  In addition to such other surviving obligations as are expressly identified elsewhere in this Agreement, the provisions of Section 8 will survive any expiration or termination of this Agreement.


8.          **Confidentiality**.

8.1         Proprietary Information:  "Proprietary Information" will mean all of the information, data and software furnished by one party to the other in connection with this Agreement, whether in oral, written, graphic or machine-readable form, including without limitation object code, source code, software tool specifications, functions and features, integration and shared data block specifications, financial statements, corporate and stock information, file layouts, marketing strategies, business, product or acquisition plans, current business relationships or strategies and customer lists.  Notwithstanding the foregoing, and excepting any proprietary financial information, "Proprietary Information" will not include information which:  (i) may be publicly disclosed by the party disclosing the information either prior to or subsequent to the receipt of such information by the receiving party; (ii) is or becomes generally known in the trade through no fault of the receiving party; (iii) may be lawfully disclosed to the receiving party by a third person to this Agreement who has lawfully acquired the Proprietary Information; or (iv) was independently developed by the receiving party; provided, however, that the receiving party hereby stipulates and agrees that, if it seeks to disclose, display, divulge, reveal, report, publish or transfer, for any purpose whatsoever, any Proprietary Information, such receiving party will bear the burden of proving that any such information was independently developed or is or became publicly available without any such breach.  Without limiting the generality of the foregoing, the parties stipulate and agree that "Proprietary Information" will specifically include: (i) the Software; (ii) the Hosted Environment; [and (iii) any Customer Data provided by Customer to Company hereunder].  A party's failure to mark any Proprietary Information as confidential, protected or proprietary will not affect its status as Proprietary Information under this Agreement.

8.2         Treatment of Proprietary Information:  Each party acknowledges that, in performing its obligations and exercising its rights hereunder, a party may acquire the Proprietary Information of the other party.  As a material inducement to the other party to disclose such Proprietary Information, each party covenants and agrees that it will not, except with the prior written consent of the other party, at any time directly by itself or indirectly through any agent or employee: (i) reproduce, distribute, transmit, publicly display, modify, create derivative works based upon, or disclose, deliver, display, divulge, reveal, report, publish or transfer to any person or entity, for any purpose whatsoever, any Proprietary

Information of the other party or (ii) use Proprietary Information of the other party for any purpose other than in connection with the performance of its obligations or the exercise of its rights hereunder.
Each party further covenants and agrees to handle the Proprietary Information of the other party in the same manner that the party handles its own most confidential information and, in any event, to take all steps reasonably necessary to preserve the confidentiality of Proprietary Information, including without limitation adopting appropriate confidentiality policies, inserting appropriate confidentiality terms in agreements with all employees and subcontractors, and maintaining Proprietary Information in a manner designed to assure that it will not be used or disclosed improperly.

8.3     Remedying Unauthorized Use:  A party will promptly notify the other party if it becomes aware of any unauthorized use or disclosure of any Proprietary Information of the other party and, at the other party's request, will take such action as may be reasonably necessary and legally permissible to terminate or remedy any unauthorized use or disclosure that results from any act or omission of the party or any of its employees, subcontractors or agents.

8.4     Injunctive Relief:  Each party stipulates and agrees that the disclosing party will suffer irreparable harm in the event of any breach of the provisions of this Section 8 and that monetary damages will be inadequate to compensate the disclosing party for such breach.  Accordingly, each party stipulates and agrees that, in the event of a breach or threatened breach of any of the provisions of this Section 8, in addition to and not in limitation of any other rights, remedies or damages available at law or in equity, the disclosing party will be entitled to a temporary restraining order, preliminary injunction and permanent injunction in order to prevent or restrain any such breach or threatened breach.

9.      **Warranties and Representations**.

9.1     Mutual Representations and Warranties: Each party represents and warrants that (a) it has the right to enter into this Agreement, and (b) all necessary actions, corporate or otherwise, have been taken to authorize the execution and delivery of this Agreement, which constitutes a valid and binding obligation of the party.

9.2     ASP Environment; Support Services:  Notwithstanding any provisions herein to the contrary, Company does not warrant that: (i) Customer will at all times be able to gain access to the Hosted Environment; (ii) Customer's access to the Hosted Environment will at all times be uninterrupted or error-free; (iii) Hosted Equipment will at all times operate at stated maximum data transmission speeds; or (iv) Company will be able to resolve all problems related to the Software, Hosted Environment, Hosted Equipment, Hosted Technical Support or Software Support Services.  Customer stipulates and agrees that data processing and use of the Internet and World Wide Web entail the likelihood of some human and machine errors, omissions, delays and losses and represents and covenants that Customer will adopt reasonable measures to limit its exposure to such potential losses.

9.3     Title and Non-Infringement Warranty: Company warrants that it has the authority to grant the rights and licenses granted by this Agreement to Customer.  Company warrants that the use of the Software by Customer according to the terms of this Agreement will not infringe any United States patent or United States copyright of any third party.  In the event that any portion of the Software is held to infringe a United States patent or United States copyright of any third party, or a third party alleges that any portion of the Software infringes its United States patent or United States copyright, then Company, at its sole option, will either (i) procure for the Customer the right to continue use of the Software, (ii) replace or modify the Software so that it is non-infringing without substantially diminishing its capability, or (iii) if Company determines in its sole discretion that neither (i) nor (ii) are economically feasible, terminate this Agreement in its entirety and refund to Customer a pro rata portion of the License Fee paid by Customer based upon a five (5) year earning of such fee by Company.

9.4     **Limited Warranty**: Customer assumes all responsibility for the selection of the Software and its use in an application service provider environment as appropriate to achieve the results intended by Customer. Company warrants that, for a period of ninety (90) days after the Effective Date, the Software will materially conform to the technical specifications as published or as amended by the Developer from time to time ("Limited Warranty"). Any unauthorized changes to the Software will render null and void the Limited Warranty. If, at any time during the warranty period, Customer discovers a material defect in the Software, Company will use its best efforts to correct such material defect and restore the Software to conformity with the Limited Warranty.

9.5     **Disclaimer of Warranties**: THE EXPRESS WARRANTIES CONTAINED IN SECTIONS 9.1 THROUGH 9.4 HEREOF ARE THE ONLY WARRANTIES MADE BY COMPANY CONCERNING THE SOFTWARE, ASP ENVIRONMENT, ASP TECHNICAL SUPPORT, SOFTWARE SUPPORT SERVICES, AND THE LICENSES GRANTED HEREUNDER. COMPANY HEREBY DISCLAIMS ALL OTHER WARRANTIES OF ANY KIND (WHETHER EXPRESS, IMPLIED, STATUTORY OR ARISING BY CUSTOM OR TRADE USAGE), INCLUDING WITHOUT LIMITATION THE IMPLIED WARRANTIES OF MERCHANTABILITY, DESIGN AND FITNESS FOR A PARTICULAR PURPOSE. NO ORAL OR WRITTEN INFORMATION OR ADVICE GIVEN BY COMPANY IN PERFORMING ITS OBLIGATIONS HEREUNDER WILL CREATE ANY WARRANTY OR IN ANY WAY INCREASE THE SCOPE OF THE WARRANTIES MADE BY COMPANY.

10.     **Indemnification.**

Company agrees to indemnify and hold harmless Customer, its corporate affiliates and any employee, director, officer or agent thereof, against all liability to third parties (including reasonable attorney's fees) arising from any breach of the express warranty contained in Section 9.3 hereof, provided, however, that Customer promptly notifies Company in writing of any such third party claim. Company, at its sole option, may elect to conduct the defense of any such third party claim, including without limitation any settlement thereof, and Customer agrees to cooperate fully with such defense.

11.     **Limited Liability.**

COMPANY SHALL NOT BE LIABLE FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL, INDIRECT, PUNITIVE OR EXEMPLARY DAMAGES OF ANY KIND WHATSOEVER, INCLUDING WITHOUT LIMITATION DAMAGES RESULTING FROM INTERRUPTION OF BUSINESS OR LOSS OF ANTICIPATED PROFITS, REVENUES, DATA OR BENEFITS, EVEN IF IT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES AND REGARDLESS OF THE FORM (E.G., CONTRACT, TORT, WARRANTY OR OTHERWISE) OF ANY LEGAL OR EQUITABLE ACTION BROUGHT AGAINST COMPANY. IN NO EVENT WILL COMPANY'S LIABILITY FOR ANY DAMAGES ARISING OUT OF OR RELATED TO THIS AGREEMENT OR ANY DEFAULT OF COMPANY HEREUNDER, REGARDLESS OF THE FORM OF THE ACTION, EXCEED THE AMOUNT OF FEES ACTUALLY PAID TO COMPANY BY CUSTOMER HEREUNDER.

12.     **Rights and Liabilities of Developer(s).**

Customer and Company each agree that each Developer (including without limitation MRO Software, Inc., the Developer of MAXIMO) and its respective subsidiaries, affiliates and licensors (a) shall be third party beneficiaries of this Agreement and shall be entitled to directly enforce Customer's obligations hereunder, and (b) shall not be liable or responsible for any of Company's covenants or obligations under this Agreement (including without limitation Company's obligations reagarding warranty, services, support, or infringement), and Customer's sole rights or remedies with respect to this Agreement shall be against Company.

13.     **Publicity.**

Customer will not use the name or any trademarks, trade names and service marks of Company or its licensors, or the name of any person associated with Company or its licensors, for any purpose, including without limitation advertising and marketing, without the prior written consent of Company.

13.     **General Provisions.**

13.1    <u>Notices</u>: All notices permitted or required by this Agreement will be personally delivered, sent by reputable private overnight courier with established tracking capability (such as FedEx, UPS, DHL or Airborne) postage pre-paid and marked for next business day delivery, or sent via certified mail postage prepaid to the address first set forth above marked to the attention of the signatory of this Agreement for the party, or to such other address or person as a party may designate in writing from time to time above. Any notice sent in conformity with the preceding sentence will be deemed to have been received when (i) delivered in person, (ii) one (1) day after being sent by overnight courier, or (iii) five (5) days after being sent by certified mail.

13.2    <u>Entire Agreement</u>: This Agreement, together with the attached Exhibits, which are incorporated by this reference as though fully set forth herein, constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior or contemporaneous written or oral understandings, agreements and communications with respect to such subject matter. This Agreement may be modified or amended only by a writing signed by both parties.

13.3    <u>Non-Waiver</u>: The failure of either party to demand any performance when due, or to pursue any right or remedy arising from the other party's non-performance of any obligation, will not waive such party's right to demand such performance at a later time or estop or otherwise bar such party from asserting any claims, allegations or causes of actions, or seeking any remedies that arise from or relate to the other party's failure to perform.

13.4    <u>Force Majeure</u>: Company will not be liable for any failure of or delay in performance directly or indirectly caused by acts of Customer, its agents, employees, or subcontractors, causes beyond the control of the Company, including but not limited to acts of God, acts of the public enemy, acts of the United States, any state or territory of the United States, or any political subdivision of the foregoing or the District of Columbia, fire, floods, epidemics, quarantine restrictions, strikes, civil commotions, freight embargoes, any unusually severe weather conditions, or defaults of or delays by Customer's employees, sub-contractors and suppliers.

13.5    <u>Governmental Laws and Regulations</u>: To the extent that the Software is used for the purpose of complying with governmental laws, regulations or reporting, Customer will assume all responsibility for determining that the Software and any output from the Software is accurate and complete and satisfies any governmental requirements. Any Software provided to or used by any governmental agency will be provided with "Restricted Rights," and Customer will place an appropriate Restricted Rights legend, in addition to all applicable copyright notices, on the Software prior to providing any governmental agency access to the Software.

13.6    <u>Choice of Law, Venue</u>: This Agreement will be governed by the law of The State of Georgia without regard to its principles of conflicts of laws. The parties stipulate and agree that any litigation arising from or relating to this Agreement will be filed and prosecuted before a court of competent subject matter jurisdiction in Georgia. The parties consent to the jurisdiction of such courts over them, stipulate to the convenience, efficiency and fairness of proceeding in such courts, and covenant not to assert any objection to proceeding in such courts based on the alleged inconvenience, inefficiency or unfairness of such courts.

13.7    <u>Independent Contractors</u>: Each party and its respective employees are independent contractors in relation to one another with respect to all matters arising under this Agreement. Nothing herein will be deemed to establish a partnership, joint venture, association or employment relationship between the parties.

13.8    <u>Severability</u>:  If any provision of this Agreement is unenforceable, the remaining provisions will remain in effect, to be construed as if the unenforceable provisions were originally deleted.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the Effective Date by their duly authorized representatives.

| **FOR CUSTOMER:** | **FOR COMPANY:** |
|---|---|
| By: _____ | By: _____ |
| Title: _____ | Title: _____ |
| Name: _____ | Name: _____ |
| Date: _____ | Date: _____ |

# EXHIBIT A

## Mantis<sup>SM</sup> for Maximo® Services

**Customer Name:**                                                              **NSTAR Services Company**

Term of Software License and Hosting Services Agreement:    **24 Months**

Number of Concurrent Users:                                              **Concurrent users six (6)**

Monthly Hosting Fee:                                                             **$340/concurrent user/month**

**Product Functionality: Maximo® Enterprise**

| PROGRAMS LICENSED | Hosting Service |
|---|---|
| Equipment | Included |
| Work Orders | Included |
| Preventive Maintenance | Included |
| Job Plans | Included |
| Resources | Included |
| Labor | Included |
| Calendars | Included |
| Purchase Requisitions | Included |
| Purchase Orders | Included |
| Inventory | Included |
| Safety | Included |
| Work Manager – Dispatch | Included |
| Work Manager - Planning | Included |
| Sqr Integration | Included |
| Crystal Integration | Included |
| Purchase Quotations | Included |
| Invoice Matching | Included |
| Hyperlink (App. Launching) | Included |
| Custom Applications | Included |
| Asset Catalog | Included |
| GI Account Configuration | Included |

Database S/W:          **SQL Server 7.0**

Thin Client S/W:        **Citrix® XP**

Operating System:    **Windows 2000 Advanced Server**

## Implementation Services (One-time Fees)

1. Migrate exiting Database to Hosting Platform ................................................................. N/C

2. Register and Administer Named Users ................................................................. $75/each

# EXHIBIT B

## Client Workstation Requirements

1. Client machines shall meet the following minimum hardware/software specifications:

   - Any Internet-enabled workstation
   - If client printing is required, workstation must be Microsoft Windows based

2. Outbound TCP/IP Port used by Citrix® ICA Protocol: 1494 (for initial connection)

# EXHIBIT C

# Application Hosting
# Support & Services

M² Consulting will provide Maintenance Service to our Application Hosting customers as described below, for all supported products.

**Hours of Operation:**

M² provides telephone and email support from 6:00 am to 6:00 pm Monday through Friday. This does not include U.S Holidays. After-hours support is provided with two (2) hour response.

| Technical Support can be reached by: | Telephone<br>FAX<br>E-Mail | 866-262-6847<br>770-253-6628<br>Support@m2.com |
|---|---|---|

**Support Access Methods:**

Clients may access M² support in any of the ways listed above. M² encourages clients to use telephone support for all Priority 1 issues.

**Scope of Service Provided:**

Customer support includes the provision of information and assistance on technical issues related to the administration and operation of the services and software, as well as assistance in determining why the product may not be performing.

- Assigned Account Manager
- Support of all MAXIMO Applications as installed
- Support all Reports as Installed: SQR & Crystal
- Support Limited Screen Customizations
- Priority Escalation on all Priority 1 reported issues.
- Provide patches; both Hot fixes and standard patches as necessary
- Provide 24 hour Application Server availability
- Remote "Shadow" Troubleshooting
- Remedial "Shadow" Training
- Software Upgrades when released
- Backup and Monitor databases on a predetermined schedule.
- Act as the liaison to all software vendors in Hosted environment.
- Provide Administrator-level support

**Services not covered:**

- Training – Customer support does not cover in-depth training over the phone. If instruction time will exceed 30 minutes then the customer will be provided a quotation for training
- Assistance in Product Customization – Customers requesting customization that was not part of the original implementation will be provided a quotation for services
- Assistance in the identification of defects in user environment or enabling technologies – If $M^2$ support personnel suspect that the problems a customer is encountering are due to a defect in the user environment or the enabling technologies, $M^2$ personnel will notify the Customer and will inform the Customer that $M^2$ can continue providing billable assistance with the problem resolution. These services will be bill at $M^2$'s then current time and materials rates. If it ultimately determined that the defect is in the $M^2$ product, then the work will not be billed to the customer.

**Problem Severity and Resolution Criteria**

Problem severity is determined by the impact on the client's ability to continue business activities and will be mutually agreed upon between the customer and $M^2$. The target response for Technical Support is determined by the severity of the problem reported. Target resolution for non-application or OS-related issues is one (1) call.

**Problem Escalation**

If the source of the problem is determined to be software developer related, $M^2$ will escalate these problems for resolution through our preferred agreement with each developer. We will keep the Customer informed of all such actions and activities.

**Product Upgrade Policy**

During the hosting period and as part of the service provided, $M^2$ will, from time to time, provide upgrades to the application and database at its sole discretion with 30 days notice to the customer. This service covers upgrades that can be executed without error using the standard, commercially available upgrade routines offered with the products. $M^2$ is not responsible for any problems encountered during the upgrade due to erroneous data that may have been input into the system through user errors. Any additional assistance with such upgrades that is required by the client will be offered under separate contract on a time and materials basis. Client is responsible to acquire the necessary training as it relates to any updated version placed in the hosted environment during the hosting period.



**EXHIBIT C**
**REFERRAL REGISTRATION**

Date Submitted: [ ]

*Description:*

<u>**5% or $5,000 whichever is the lesser amount:**</u> *Hosting Affiliate will provide MROI with a qualified lead where the customer has indicated interest and budget in purchasing a maintenance management application. The client information should, at a minimum, consist of customer name, phone number and customer contact. This opportunity must close within <u>**180**</u> days of the referral acceptance date.*

## ASSUMPTIONS/FACTS:

- *Registration acceptance by MROI within 5 days of receipt.*
- *Both parties must verify Opportunity.*

| | | | |
|---|---|---|---|
| Hosting Affiliate Representative: | | Phone #: | |
| MROI Representative: | | Phone #: | |
| Accepted by MROI: | | Date: | |

**Prospect Data:**
Company:
Contact Name:
Address:
City, State, Zip:
Phone #:
Fax #:
Email:

**Hosting Affiliate Relationship with Prospect (Describe):**

Revised 8/01