UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

M²CONSULTING, INC.,                :
                                    :
                    Plaintiff,      :
                                    :
v.                                  :        C.A. No. 03-12589-GAO
                                    :
MRO SOFTWARE, INC.,                 :
                                    :
                    Defendant.      :

---

**MRO SOFTWARE INC.'S ANSWERS TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Pursuant to Fed. R. Civ. P. 33, MRO Software, Inc. ("MRO") hereby responds to the First Set of Interrogatories of M2 Consulting, Inc. ("M2"), as follows:

**General Objections**

1. MRO objects to these interrogatories and to the definitions and instructions preceding them to the extent that they seek to impose obligations on MRO in addition to or different from those specified by the Federal Rules of Civil Procedure.

2. By responding to these interrogatories MRO does not concede the relevance or materiality of the interrogatory or of the subject to which such interrogatory refers. MRO's response to any interrogatory is made expressly subject to, and without in any way waiving or intending to waive, any questions or objections as to the competence, relevance, materiality, privilege, or admissibility as evidence or for any other purpose, of any of the interrogatories referred to or of the responses given herein or of any documents produced in response to these interrogatories, or of the subject matter thereof, in any proceeding.

3. MRO objects to each interrogatory request to the extent that it seeks the disclosure of any information that is privileged or protected for any reason, including information protected by the attorney-client privilege, the work-product doctrine, and/or other applicable privileges or protections. MRO further reserves the right to redact from otherwise responsive and non-privileged documents that contain information that is irrelevant, non-responsive, privileged, or protected. MRO objects to the identification of attorney-client and work-product communications generated subsequent to the institution of this action. MRO's inadvertent production of any privileged documents is not to be

deemed a waiver of privilege, and MRO expressly reserves the right to object to the introduction or other use of any privileged document that may be inadvertently produced.

    4.    MRO objects to these interrogatories to the extent that they purport to require the production of trade secret, proprietary or confidential information without any showing of need for such information. Any offers to provide confidential information are conditioned upon the entry of an appropriate protective order.

    5.    The foregoing general objections shall be deemed to be incorporated in full in the response to each interrogatory set forth below.

### Specific Responses

<u>Interrogatory No. 1</u>    Please identify each and every individual who participated in the collection of information and/or the drafting of responses to these interrogatories.

Response:

| Name | Business Address |
|---|---|
| Chip Drapeau | 100 Crosby Drive Bedford, MA 01730-1402 |
| Raymond Miciek | 100 Crosby Drive Bedford, MA 01730-1402 |
| William Sawyer | 100 Crosby Drive Bedford, MA 01730-1402 |
| Robert Parker | 100 Crosby Drive Bedford, MA 01730-1402 |
| Holly Jaaouani | 100 Crosby Drive Bedford, MA 01730-1402 |
| Jason Kasper | 100 Crosby Drive Bedford, MA 01730-1402 |
| Jonathan Kennedy | 100 Crosby Drive Bedford, MA 01730-1402 |
| Katie Doyle | 100 Crosby Drive Bedford, MA 01730-1402 |
| Joseph Leone | 300 Motor Parkway, Suite 200 Hauppauge, NY 11788 |
| Craig Newfield | 100 Crosby Drive Bedford, MA 01730-1402 |
| Nancy Gilroy | 100 Crosby Drive Bedford, MA 01730-1402 |
| Pat McHale | 100 Crosby Drive Bedford, MA 01730-1402 |

<u>Interrogatory No. 2</u>   Please state in full and complete detail each and every step or action undertaken by MRO to promote M2's MAXIMO Internet hosting capabilities through its North American sales force, including in your answer: (1) the date upon which MRO decided to take that particular step or action; (2) the MRO executive or employee in charge of implementing that step or action; (3) the internal procedure at MRO whereby the implementation off that step or action would be verified; *(4)* the executive at MRO ultimately responsible for implementing that step or action.; (5) the specific department, group, or division of MRO tasked with carrying out that specific step or action; (6) the extent to which that specific step or action was actually carried out; and (7) the results, whether quantifiable or not, of the implementation of that at step or action.

<u>Response:</u>

MRO objects to this interrogatory on the grounds that it is vague, ambiguous and unduly burdensome.

MRO made no commitment to M2 that it would market or promote M2's MAXIMO Internet hosting capabilities, and had no contractual obligation to do so under either the 2000 Hosting Agreement or the 2002 Hosting Agreement. However, as contemplated by both the 2000 Hosting Agreement and the 2002 Hosting Agreement, MRO did provide M2 with leads, as it deemed appropriate, and attempted to make the MRO sales force aware of M2 as a referral option for potential customers that wanted MAXIMO to be hosted remotely, rather than installed directly at the customer's site. The following is a list of some, but not all, attempts, to make the MRO sales force aware of M2 as a referral option. The format is (1) the approximate date, (2) the MRO employees involved, and (3) the action.

January-99
Bill King, Jeff Clem, Ray Miciek, multiple customers and prospects
M2 attended Atlanta Maximo Seminar and promoted services during session.

June-00
Ray Miciek, MidTier Team Region
Meeting introducing M2 consulting.

July-00
Bob Parker, Ted Williams, Ray Miciek, Executive Team
Monthly region report described the positioning of M2 Consulting into Jones Lang Lasalle.

August-00
Ray Miciek, MidTier Team
Hosting was topic of the MRO region meeting. At the time MRO had its own hosting services and comparisons were made as to the advantages and disadvantages of MRO and M2's services.

January-01
Ray Miciek, Rick Bevington, Tony Prelec
Mr. Prelec was introduced to MRO as VP of Business Development, and it was explained that he would concentrate on new business development at M2.

January-01
Jason Kasper, Atlanta Sales Team
M2 presented to MRO Atlanta Sales Office in front of Customer Base Sales.

February-01
Ray Miciek, Matt Logdson
Sales Consultant was directed to contact M2 in order to joint bid on Princeton Plasma Labs.

February-01
Bob Parker, Ted Williams, Ray Miciek, Executive Team
Monthly region report states there were multiple hosting opportunities delivered to M2 Consulting, including enterprise team members Nancy Neese, Mary Bunzel and Ivo Finotti.

February-01
Jason Kasper
Jason Kasper created a document titled, "M2 Announcement" and emailed it to the entire MRO sales force.

March-01
Bob Parker, Ted Williams, Ray Miciek, Executive Team
Monthly region report states that MRO was turning over hosting to offset Datastream.

March-01
Bob Parker, James Fair, Frank Geisler, European Middle East Africa Midmarket Team, Katie Doyle, Bob Conors, Ray Miciek
World Wide MidTier Team meeting in Stuttgart; discussed strategy for dealing with small deals, note M2 Consulting as hosting partner of choice.

April-01
Bob Parker, Ted Williams, Ray Miciek, Executive Team
Monthly region report indicated that M2 was helping the team structure deals to offset Datastream.

July-01
Ray Miciek, Peter Snowden, Steve Pillow, Bob Parker
M2 was introduced to large hosting opportunity for Fleet Pride. MRO assisted in coordinating another partner, Facilities Management Inc., a company that works with handhelds, connected with M2 to provide a more robust solution.

July-01
Alicia Armstrong
Sold Dynamic Value List to M2 at discounted rate to help with the project.

July-01
Bob Parker, Larry Roe, Ted Davis, John Murphy, AnnMarie O'Toole, Ray Miciek
Quarterly Managers meeting involved a discussion of M2 hosting as part of region update.

July-01
Ray Miciek, MidTier Team
Distributed Mantis Application Hosting Description to Mid-Market sales team.

August-01
Ray Miciek, Mary Bunzel, Larry Roe, Ed Hansen
Mary brought Meijer opportunity to M2 (Tom Schulte) which turned into a pure hosting opportunity. Ed Hansen became the lead for the opportunity at MRO. The sale did not close.

September-01
Ray Miciek, Bill King
MRO provided a quote for Gwinnett County Water and discount/delayed Annual Customer Support Package to help out M2. Deal eventually closed.

October-01
Alicia Armstrong, Brenda Schulte, Keita Wallace, Larry Roe
Alicia Armstrong, a Business Sales Manager, introduced M2 to SSI a contractor for the United States Navy - Naval Support Services.

November-01
Ray Miciek, Steve Cascio
MRO Brought M2 (Tom Schulte) into a deal for Liberty Mutual. This was a deal where the customer wanted to purchase software and wanted M2 to host.

November-01
Bob Parker, Larry Roe, Ted Davis, John Murphy, AnnMarie O'Toole, Rudy Roy, Bill Goldbach, Ray Miciek
M2 was discussed at the North America Manager's meeting and the team was updated as to the progress in using them for hosting opportunities.

January-02
Patti Foye, Steve Caslick, Dave Rothberg, Tina Scott, Ray Miciek
Discussions about how M2 Consulting was MRO's preferred hosting partner.

February-02
Ray Miciek, Helen Murphy
Resolved issues of M2 going to alternate sources for information on releases and product shipments.

February-02
Ray Miciek, Pat Mchale, Scott Peluso
Discussions begin regarding moving MRO's hosting customers, primarily N-Star, to M2 Consulting.

February-02
Ray Miciek, MidTier Team
During weekly conference call with the MidTier Team, the "Tip of the Week" was to use M2 Consulting for hosting.

March-02
Ray Miciek, MidTier Team
Weekly conference call, discussed Value Added Resellers, including M2 Consulting.

April-02
Ray Miciek, Alicia Armstrong, Peter Wowk
MRO engaged M2 as a service provider for Computer Associates.

May-02
Ray Miciek, Kristin Butler, Larry Roe
An MRO Sales Consultant was advised to discuss United States Air Force with M2 Consulting.

May-02
Ray Miciek, Pat Mchale
Discussions with Pat Mchale regarding the protocol related to Service Level Agreements and customer expectations with M2. Worked to coordinate the eventual meeting between Pat Mchale and Rick Bevington in M2's Atlanta office.

May-02
North America Sales, International Sales, Ray Miciek, Tara Leuci

Internal newsletter is distributed to entire sales team noting M2 as a sponsor and exhibitor for MRO World.

July-02
All MRO personnel and approximately 1,000 Users at MRO World
M2 is allowed to present and have a booth at MRO World.

July-02
Ray Miciek, Peter Wowk
Discussion with Peter Wowk regarding "Eat n Park" opportunity for 76 stores in a service management capacity and his desire to push this opportunity to M2.

September-02
Bob Parker, Jim Davis, Larry Roe, Rich Fecher, John Murphy
There was a discussion during the North American Sales Manager's meeting to introduce new M2 agreement.

September-02
John Kennedy, Keith Carmen, Ray Miciek
John Kennedy sent a note to a Sales Consultant informing him that any information about hosting should go to Mr. Miciek.

September-02
Ray Miciek, Larry Roe, Mark Oakey
Manager's meeting to plan the agenda for the Sales meeting. Discussed M2 Consulting as an agenda topic and how to present this to the team.

October-02
Ray Miciek, Jane Nolan
Provided background on M2 Consulting and their role as our recommended hosting provider for the Mid-Market accounts.

October-02
Ken Ludwig, Ray Miciek
Sales Consultant was provided with information and told to contact M2 about referring a hosting opportunity within his territory.

October-02
Tina Scott, Ray Miciek
Sales Consultant lists M2 Consulting as part of her business plan to achieve revenue objectives.

October-02
Geography Aviation Public Sector Team, Including Marketing, AnnMarie O'Toole, Stacey Donovan, Business Sales Manager

M2 was introduced as MRO's official hosting partner at the Geography Aviation Public Sector Region meeting and the participants discussed the proposed compensation plan for the MRO sales force.

October-02
Marketing, Ray Miciek, Bob Parker, Bob Connors
There was a discussion regarding inviting M2 to an MRO Sales Meeting. The participants decided that M2 could attend and were considered a Reseller.

December-02
Erin Riley, Ray Miciek
M2 was asking for updates and enhancements, clarified how M2 consulting paid MRO software for rights via royalty agreement.

December-02
Keith LaFrance, Ray Miciek
Sales Consultant described a potential deal for MAXIMO for SAP facility via Enron Services.

October-03
Ray Miciek, Larry Roe, Jim Davis, Mark Oakey
The Region Business plan was distributed to the Mid-Market Team, which listed M2 Consulting as a channel for ASP hosting.

Further responding, Ray Miciek was primarily responsible for managing MRO's relationship with M2. During the approximate time periods provided above, Bill Sawyer, Ray Miciek, Jason Kasper and Katie Doyle were also involved in promotional activities similar to those described in this response.

Further responding, pursuant to Fed. R. Civ. P. 33(d), the answer to this interrogatory may be derived from the relevant business records produced by MRO since the burden of deriving or ascertaining the answer is substantially the same for M2 as for MRO.

<u>Interrogatory No. 3</u>    Please state in detail each and every M2 employee or executive with whom any MRO executive, employee, agent, or representative met concerning MRO's commitment to market and promote M2's MAXIMO Internet hosting capabilities.

<u>Response:</u>

8

MRO objects to this interrogatory on the grounds that it is vague, ambiguous, overly broad and unduly burdensome. Further stating, MRO made no commitment to M2 that it would market or promote M2's MAXIMO Internet hosting capabilities and had no contractual obligation to do so. Consequently, there were no such meetings.

<u>Interrogatory No. 4</u>   Please identify each and every lawsuit, legal proceeding, official investigation, or administrative action in which MRO has been a party, and for each proceeding so identified, please state the following: (1) the other parties to the proceedings; (2) the case name, case action, and/or other identifying information. for the proceedings; (3) the substance of the claims asserted in that proceeding; and (4) the date on which it was resolved, if applicable; and (5) the manner in which it was resolved.

<u>Response:</u>

MRO objects to this interrogatory on the grounds that it seeks information that is irrelevant and unlikely to lead to the discovery of admissible evidence in this action.

<u>Interrogatory No. 5</u>   Please identify each and every document which refers to, reflects, or constitutes MRO's commitment to instruct its North American sales force to market affirmatively M2's MAXIMO Internet hosting capabilities.

<u>Response:</u>

MRO objects to this interrogatory on the grounds that it is vague, ambiguous, overly broad and unduly burdensome. Further stating, MRO made no commitment to M2 that it would market or promote M2's MAXIMO Internet hosting capabilities and had no contractual obligation to do so. Accordingly, there are no responsive documents.

<u>Interrogatory No. 6</u>   Please identify each and every MRO employee assigned either in whole or in part to work with M2 regarding the implementation of MRO's commitment to market and promote M2's MAXIMO Internet hosting capabilities.

<u>Response:</u>

MRO objects to this interrogatory on the grounds that it is vague and ambiguous. Further stating, MRO made no commitment to M2 that it would market

9

or promote M2's MAXIMO Internet hosting capabilities and had no contractual obligation to do so.

Interrogatory No. 7    Please describe in full and complete detail the precise commission and compensation to be paid by MRO to its North American sales force in connection with MRO's commitment to promote and market M2's MAXIMO Internet hosting capabilities

Response:

MRO objects to this interrogatory on the grounds that it is vague and ambiguous. Further stating, MRO made no commitment to M2 that it would market or promote M2's MAXIMO Internet hosting capabilities and had no contractual obligation to do so.

Interrogatory No. 8    Please describe in full and complete detail the analysis or decision making process at MRO which led to MRO's request, in the summer of 2002, for an increase in the percentage of revenue paid to MRO from M2 Consulting for any work resulting from MRO's marketing and promotion of M2's MAXIMO Internet hosting services, including in your response the identification of each and every document which reflects this analysis.

Response:

MRO objects to this interrogatory on the grounds that it is overly broad and unduly burdensome.

Subject to the foregoing objections, MRO states that at no time did MRO request "an increase in the percentage of revenue paid to MRO from M2 Consulting for any work resulting from MRO's marketing and promotion of M2's MAXIMO Internet hosting services."

Interrogatory No. 9    Please describe each and every step, action, or plan developed to announce, distribute and inform MRO's North American sales force of the planned marketing and promotion of M2's Internet hosting capabilities, and its associated commission structure, including in your answer: (1) whether that particular step action or plan was undertaken, and (2) the identity of each and every individual who received any associated notices or announcements.

10

Response:

MRO objects to this interrogatory on the grounds that it is overly broad and unduly burdensome.

Subject to the foregoing objections, MRO refers M2 to its response to interrogatory number 2. Pursuant to Fed. R. Civ. P. 33(d), the answer to this interrogatory may be derived from the relevant business records produced by MRO since the burden of deriving or ascertaining the answer is substantially the same for M2 as for MRO. MRO specifically identifies documents marked with bates stamp numbers MRO 00827 – MRO 00837.

Interrogatory No. 10   Did MRO ever inform its North American sales force that it had committed to market and promote M2's MAXIMO Internet hosting capabilities, or that it planned to do so?

Response:

MRO objects to this interrogatory on the grounds that it is vague and ambiguous. Subject to the foregoing objections, MRO refers M2 to its response to interrogatory number 2.

Further responding, MRO personnel had discussions, both internally and with Mr. Bevington, regarding the development of a commission structure to encourage MRO's sales force to market and promote M2's MAXIMO Internet hosting capabilities. However, MRO made no commitment to M2 that it would market or promote M2's MAXIMO Internet hosting capabilities and had no contractual obligation to do so. Accordingly, MRO never informed its North American sales force that it had committed to market and promote M2's MAXIMO Internet hosting capabilities.

Interrogatory No. 11   If the answer to the preceding interrogatory is affirmative, please describe in full and complete detail each and every step, communication, action, and/or communication which MRO directed it to its North American sales force communicating that information.

Response:

MRO objects to this interrogatory on the grounds that it is vague, ambiguous, overly broad and unduly burdensome.

Subject to the foregoing objections, MRO refers M2 to its response to interrogatory number 2. Pursuant to Fed. R. Civ. P. 33(d), the answer to this interrogatory may be derived from the relevant business records previously produced by MRO since the burden of deriving or ascertaining the answer is substantially the same for M2 as for MRO.

Interrogatory No. 12   Please describe in full and complete detail every conversation or communication between Chip Drapeau, Ted Williams, Robert Parker, Andrew Moore, and Ray Miciek, either individually, respectively, or collectively, in which MRO's relationship with M2 was discussed or referred to, and for each and every conversation or communication so identified please state: (1) its date; (2) the individuals participating in it; (3) if individuals were present who did not participate in the conversation or communication, the identity of each such individual; (4) the substance of what was discussed; and (5) whether the conversation or communication was memorialized in any notes or other documents; and (6) if the conversation or communication was so memorialized, the identity of each and every document containing that information.

Response:

MRO objects to this interrogatory on the grounds that it is overly broad and unduly burdensome.

The relationship between MRO and M2 lasted for over three years, during which time there were many conversations relating to M2. MRO objects to M2's request that the individuals involved attempt to recall each conversation and describe in these

12