interrogatory responses. However, during this time period there were conversations and communications among Chip Drapeau, Ted Williams, Robert Parker, Andrew Moore and Ray Miciek relating to the following general topic areas: MRO's relationship with M2, MRO's decision to refer certain prospects to M2, the terms of the two agreements between MRO and M2 and the matter of compensation for members of MRO's North American sales force related to successful referrals to M2.

Responding further, pursuant to Fed. R. Civ. P. 33(d), the answer to this interrogatory may be derived from the relevant business records previously produced by MRO since the burden of deriving or ascertaining the answer is substantially the same for M2 as for MRO.

Interrogatory No. 13  Please state in full and complete detail each and every step, action, or planned action associated with the development and preparation of a web cast by MRO's marketing department to be released in the spring of 2003 to MRO's sales force for the purpose of announcing MRO's sales initiative to market M2's MAXIMO Internet hosting services.

Response:

MRO objects to this interrogatory on the grounds that it is overly broad and unduly burdensome. MRO further objects to this interrogatory on the grounds that it made no commitment to M2 that it would market or promote M2's MAXIMO Internet hosting capabilities, and MRO had no contractual obligation to do so.

Subject to the foregoing objections, there were conversations and communications among Robert Parker, Ray Miciek and Katie Doyle regarding the development and preparation of a web cast by MRO concerning M2's MAXIMO Internet hosting capabilities. However, the web cast was never developed and never occurred.

13

Pursuant to Fed. R. Civ. P. 33(d), the answer to this interrogatory may be derived

from the relevant business records previously produced by MRO since the burden of

deriving or ascertaining the answer is substantially the same for M2 as for MRO.

**Interrogatory No. 14** Please state in full and complete detail each and every MRO
executive, employee, agent, or representative with whom Robert Parker spoke or
communicated prior to informing M2 on or about June 17, 2003 that MRO would not
instruct its North American sales force to market M2's MAXIMO Internet hosting
services, and with respect to each person so identified please state: (1) the date on which
the communication or communications occurred; (2) their substance; (3) whether any
documents memorialized the communication; and (4) identify any such documents.

**Response:**

Subject to the foregoing objections, Mr. Parker advised M2 on or about June 17,

2003 that MRO intended to offer its own MAXIMO hosting solution, and that MRO's

own solution would be MRO's solution of choice, but Mr. Parker did not state that MRO

would not instruct its North American sales force to market M2's MAXIMO internet

hosting services.  Prior to having such conversation with M2, Mr. Parker communicated

with Ray Miciek, Ted Williams and Bill Sawyer; Mr. Parker does not recollect the dates

and exact substance of these communications, and there is no documentation of these

communications.

**Interrogatory No. 15** Please identify each and every person known or believed by MRO
to have personal knowledge of any of the facts, circumstances, agreements, business
relationships, or accounting issues alleged in the complaint in this action and for each
person so identified please state: (1) whether they are a current or former executive,
employee, agent, or representative of MRO; and (2) for any former executives,
employees, agents, or representatives, please state their last known residential and or
mailing address.

**Response:**

The relationship between MRO and M2 lasted for over three years and involved a

considerable number of MRO employees.  Therefore, the list below identifies the

principal individuals believed to have personal knowledge of the pertinent facts and

issues relevant to this action:

| Name | Employment Status |
|------|-------------------|
| Chip Drapeau | presently employed by MRO |
| Raymond Miciek | presently employed by MRO |
| William Sawyer | presently employed by MRO |
| Robert Parker | presently employed by MRO |
| Holly Jaaouani | presently employed by MRO |
| Jason Kasper | presently employed by MRO |
| Jonathan Kennedy | presently employed by MRO |
| Katie Doyle | presently employed by MRO |
| Joseph Leone | presently employed by MRO |
| Craig Newfield | presently employed by MRO |
| Nancy Gilroy | presently employed by MRO |
| Pat McHale | presently employed by MRO |
| Andrew Moore | no longer employed by MRO |
| Ted Williams | no longer employed by MRO |

Interrogatory No. 16   Please describe in full and complete detail each and every fact
upon which MRO relies for its allegation in paragraph 6 of MRO's Answer that M2
breached the 2002 Agreement "by reason of nonpayment of monies owed", including in
the answer the identity of each and every invoice provided by MRO to M2 for monies
owed tinder the 2002 Agreement, and a full and complete description of each and every
request for payment submitted by MRO to M2 for monies allegedly due and owing under
the 2002 Agreement.

Response:

    MRO objects to this interrogatory on the grounds that it is unduly burdensome.

    Subject to the foregoing objections, M2 failed to satisfy its payment obligations

pursuant to Section 5 and Exhibit A of the 2002 Agreement and such failure constitutes a

breach of the 2002 Agreement.  Further responding, pursuant to Fed. R. Civ. P. 33(d), the

answer to this interrogatory may be derived from the relevant business records previously

produced by MRO since the burden of deriving or ascertaining the answer is substantially

the same for M2 as for MRO.  MRO specifically identifies documents marked with bates stamp numbers MRO 00873 – MRO 00879.

Interrogatory No. 17   Please describe in full and complete detail each and every communication, both written, electronic, or oral, by and through which MRO "told M2 that it would refer prospective customers to M2 that were not interested and licensing the MAXIMO software directly from MRO, at the discretion of MRO", including in the answer: (1) the date and time of the communication; (2) the person making the communication; (3) the individual at M2 either receiving the communication or to whom the communication was directed; (4) the substance of the communication; (5) all persons at MRO who were aware of the communication; and (6) all persons at M2 of whom MRO is aware who were present during each specific communication or who MRO believes to have received information regarding each specific communication.

Response:

   MRO objects to this interrogatory on the grounds that it is unduly burdensome. Subject to the foregoing objections, the relationship between MRO and M2 lasted for more than three years, and therefore there are too many conversations and communications to identify in response to this interrogatory.  Throughout the parties' relationship, MRO repeatedly told M2 that, at the discretion of MRO, it would refer prospective customers to M2 that were not interested in licensing the MAXIMO software directly from MRO.

   Further responding, pursuant to Fed. R. Civ. P. 33(d), the answer to this interrogatory may be derived from the relevant business records previously produced by MRO since the burden of deriving or ascertaining the answer is substantially the same for M2 as for MRO.

Interrogatory No. 18   Please describe in full and complete detail each and every fact upon which MRO relies for its assertion in paragraph 14 of MRO's Answer that "MRO repeatedly told M2 that MRO would itself the entering the application hosting business and offering MAXIMO via Internet hosting".

Response:

MRO objects to this interrogatory on the grounds that it is unduly burdensome.

Subject to the foregoing objections, the relationship between MRO and M2 lasted for over three years, and therefore there are too many conversations and communications to identify in response to this interrogatory. Throughout the parties' relationship, MRO repeatedly told M2 that MRO would be entering the application hosting business and that it would offer a hosted MAXIMO solution via the Internet, including but not limited to the following instances:

> (a) During a golf outing on October 11, 2001, Robert Parker and Chip Drapeau provided the above information to Thayer Stewart and Rick Bevington.

> (b) In addition to the above example, on numerous occasions between early 2000 and 2003, Chip Drapeau, Ray Miciek, Ted Williams and Robert Parker had conversations and communications on this subject with Steve Platt, Jeff Foley, Dave Bigler, Tom Shulte, Rick Bevington and Tony Prelec.

Further responding, pursuant to Fed. R. Civ. P. 33(d), the answer to this interrogatory may be derived from the relevant business records previously produced by MRO since the burden of deriving or ascertaining the answer is substantially the same for M2 as for MRO. MRO specifically identifies documents marked with bates stamp numbers MRO 01681 – MRO 01683 and MRO 02628.

Interrogatory No. 19    Please describe in full and complete detail each and every fact upon which MRO relies for its assertion in paragraph 17 of the MRO's Answer, that "MRO encouraged its sales force to refer to plaintiff companies, that needed Internet hosting services, and which were not appropriate customers for the direct purchase of MAXIMO software from MRO", including in the answer each and every fact upon which MRO relies for its assertion that MRO encouraged its sales force to refer prospective customers to M2.

Response:

MRO objects to this interrogatory on the grounds that it is unduly burdensome.

Subject to and without waiving the foregoing objections, MRO refers M2 to its responses to interrogatory numbers 2, 7, 9, 11, 12 and 13.

Interrogatory No. 20   Please describe in full and complete detail each every fact upon which MRO relies for its allegation in paragraph 21 of MRO's Answer that "[A]t all times relevant to this suit MRO told M2 that referring customers to M2 was a less desirable and less profitable alternative to selling the MAXIMO software directly, and therefore MRO could not make 'any commitment' to M2. [M]oreover MRO repeatedly told M2 that MRO would itself be hosting MAXIMO at some point in the future, and that M2 needed to prepare for this event, which would have the effect of ending most of all referrals to M2", including in the answer: (1) the identity of each and every person at MRO who was involved in any communications regarding this subject; (2) the date upon which the specified communications were made; (3) the M2 recipient who either received the communication. or to whom the communication was directed; and (4) the response of any M2 recipients, if any.

Response:

MRO objects to this interrogatory on the grounds that it is unduly burdensome.

Subject to and without waiving the foregoing objections, the relationship between MRO and M2 lasted for over three years, and therefore there are too many conversations and communications to identify in response to this interrogatory.  There are numerous conversations, communications and documents which MRO relies upon in responding to this interrogatory, including but not limited to those identified in its responses to interrogatories number 17 and 18.

Interrogatory No. 21   Describe in full and complete detail each and every communication, conversation, or the identity of each and every piece of correspondence upon which MRO relies for its allegation in paragraph 46 of the MRO's Answer that MRO discussed with M2 for two years prior to June 2003 MRO's intention to provide its own MAXIMO Internet hosting services, including in the description: (1) the date and time of the communication; (2) the person making the communication; (3) the individual(s) at M2 either receiving the communication or to whom the communication was directed; (4) the substance of the communication; (5) all persons at MRO who were aware of the communication; and (6) all persons at M2 who were present during each specific communication, or who MRO believes to have received information regarding each specific communication.

18

<u>Response:</u>

MRO objects to this interrogatory on the grounds that it is unduly burdensome. Subject to the foregoing objections, the relationship between MRO and M2 lasted for over three years, and therefore there are too many conversations and communications to identify and relate in response to this interrogatory. There are numerous conversations, communications and documents which MRO relies upon in responding to this interrogatory, including but not limited to those identified in its response to interrogatory number 18.

Signed under the pains and penalties of perjury, this _15th_ day of December 2004.

Craig Newfield, Esq.

Objections By:

Lee T. Gesmer, Esq. (BBO No. 190260)
Kurt E. Bratten, Esq. (BBO No. 644730)
Gesmer Updegrove LLP
40 Broad Street
Boston, MA 02109
Tel.: (617) 350-6800