UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| M2 CONSULTING, INC.<br><br>                Plaintiff,<br><br>   v.<br><br>MRO SOFTWARE, INC.<br><br>                Defendant. | C.A. No. 03-12589-GAO |

**MRO SOFTWARE, INC.'S MOTION TO COMPEL PRODUCTION OF A WITNESS PURSUANT TO ITS RULE 30(b)(6) DEPOSITION NOTICE**

Defendant MRO Software, Inc. ("MRO") hereby submits this motion respectfully seeking an order compelling the production of M2 Consulting, Inc. ("M2") for a Fed.R.Civ.P. Rule 30(b)(6) deposition concerning its alleged trade secrets.

**Introduction**

M2 was supposed to be deposed regarding its alleged trade secrets on January 24, 2006 in connection with MRO's Rule 30(b)(6) deposition notice. In blatant disregard for its discovery obligations, M2's designee appeared for this deposition unprepared to testify about this topic. As an accommodation, MRO agreed to give M2's designee additional time to prepare himself, so the parties reached an informal agreement to suspend the deposition and promptly reschedule its conclusion. Several weeks later, however, M2 took the position for the first time that its Rule 30(b)(6) designee must be permitted to review all of MRO's "attorney's eyes only" documents because this was necessary for M2 to adequately respond to the topics in MRO's deposition notice. Now,

437083.2

more than one month later, M2 refuses to produce a witness or take any action to conclude this Rule 30(b)(6) deposition.

MRO is entitled to an order compelling M2 to produce a witness and conclude MRO's Rule 30(b)(6) deposition of M2 concerning its trade secrets. First, if M2 truly felt that it was necessary that its designee review MRO's "attorney's eyes only" documents, it was obligated to seek a protective order before the commencement of this deposition – something it has failed to do even now, one month after it first made this belated request. Second, the Court already addressed this issue when it allowed MRO's April 20, 2005 motion for a protective order regarding MRO's "attorney's eyes only" documents, the basis of which was to allow both parties to protect certain sensitive business information since they are competitors. The circumstances that warranted the "attorney's eyes only" level of confidentiality in 2005 are unchanged in 2006 and M2 has not advanced a reasonable basis for the glaring exception it has requested of MRO. Further, as is customary under the circumstances, M2 can simply use the procedure outlined in the Confidentiality Order approved by the Court to designate an expert witness to review MRO's "attorney's eyes only" documents.

Therefore, MRO is entitled to an order compelling M2 to produce a witness and conclude this Rule 30(b)(6) deposition within 10 business days of the Court's order. In addition, MRO seeks an order dismissing M2's unjust enrichment claim in the event that M2 fails to abide by this requirement that MRO's Rule 30(b)(6) deposition be completed within 10 business days of the Court's order.

**Factual Background**

On September 7, 2005, MRO served M2 with a Rule 30(b)(6) Deposition Notice ("Notice of Deposition") regarding M2's alleged confidential information and/or trade secrets. (Tab A). This discovery is relevant to M2's unjust enrichment claim based on allegations that MRO improperly obtained proprietary and confidential data owned by M2 and that this conferred some benefit on MRO. (Amended Complaint, pars. 108-122). After considerable scheduling delays by M2, this deposition was eventually scheduled to proceed on January 24, 2006, just days before the deadline for the completion of fact discovery on January 31, 2006.

On November 20, 2005, in connection with this deposition, M2 sent MRO a letter requesting that MRO permit "Rick Bevington [M2's CEO] . . . to view" certain MRO documents produced to M2 with the "attorney's eyes only" designation pursuant to the Confidentiality Agreement entered into by the parties. (Tab C). As M2 explained in its November 20, 2005 letter, "[Mr. Bevington's] review of these materials is necessary, because only he can analyze the extent to which facts contained in these documents implicate the misappropriation of M2 trade secrets and know how, and the extend [sic] to which certain MRO conduct reflected in these documents comports with its obligations . . . .." (Tab C). After extensive review and consideration, MRO consented and removed the "attorney's eyes only" designation from over 800 pages of material ("Declassified Documents"), as requested by M2. (Tab C).

On January 24, 2006, Mr. Bevington, appeared at this deposition to testify on behalf of M2 regarding its alleged trade secrets. Despite the clear language of MRO's Notice of Deposition and the requirements of Rule 30(b)(6), Mr. Bevington was

unprepared to testify on behalf of M2 on the designated topics. (Tab A). Specifically, Mr. Bevington was unprepared in the following respects:

- First, Mr. Bevington stated during this deposition that, aside from speaking to one other M2 executive, he had done nothing to prepare himself or become knowledgeable concerning the matters described in the Deposition Notice. (January 24, 2006 Rule 30(b)(6) Deposition Transcript of M2 Consulting, Inc. ("Transcript"), at 4, Tab B).

- Second, topic 3 of the Deposition Notice requested that M2 "identify all documents which contain or show M2's Confidential Information, including any documents showing that M2 shared its Confidential Information with MRO." (Tab A). Mr. Bevington testified that he had not reviewed any documents in preparation for this deposition, including the Declassified Documents, which MRO declassified based on M2's representation that their review by Mr. Bevington was "necessary" to assess "the misappropriation of M2 trade secrets." (Transcript, at 4-5, Tab B; Tab C).

- Third, topic 4 of the Deposition Notice sought testimony from M2 regarding its "sharing or communication of its Confidential Information to MRO." (Tab A). On January 24, 2006, Mr. Bevington testified that he did not know of any M2 confidential or proprietary information that was used by MRO and he had no evidence of misuse by MRO.[1] (Transcript, at 7, Tab B).

Due to M2's failure to produce a witness capable of testifying on behalf of M2 regarding its trade secrets, the parties reached an informal agreement to suspend the deposition in order to give Mr. Bevington additional time to adequately prepare himself. Accordingly, the deposition was suspended on January 24, 2006 with the understanding

---

[1] Based on the testimony of M2's Rule 30(b)(6) designee, M2's recent attempts to review all of MRO's "attorney's eyes only" documents are obviously nothing more than an elaborate "fishing expedition" to create a record of factual support for its meritless unjust enrichment claim. In fact, on January 24, 2006 Mr. Bevington admitted that M2 possesses no factual basis for its unjust enrichment claim when he testified as follows:

> Q. What information that is confidential or proprietary to M2 has been used by MRO?
> A. I wouldn't know.
> Q. So as you sit here today, you can't identify anything in response to that question?
> A. I don't have access to that information. (Transcript, at 7, Tab B).

437083.2                                4

that M2 would promptly schedule the conclusion of this deposition and produce a witness who was actually capable of testifying on its behalf concerning this subject. (Transcript, at 46-48, Tab B).

However, since this agreement was reached on January 24, 2006, M2 has refused to respond to repeated requests by MRO to reschedule this deposition and has refused to produce a witness pursuant to MRO's Deposition Notice. In fact, on January 26, 27, 31, February 3, 8, 9, 22, 24, and March 3, 2006, MRO has sent written requests to M2 seeking compliance with the parties' agreement and the conclusion of this Rule 30(b)(6) deposition.

In response, M2 has refused to make any effort to complete this deposition and has just recently claimed that M2's designee, Mr. Bevington, must be permitted to review all of MRO's "attorney's eyes only" documents produced during the course of discovery. For the first time, on February 8, 2006, M2 requested that MRO permit M2's Rule 30(b)(6) designee to review all of MRO's "attorney's eyes only" documents. (Tab D). On February 9, 2006, MRO's counsel rejected M2's request that MRO declassify its entire document production due to M2's failure to articulate a reasonable basis why MRO should expose its highly confidential information and trade secrets to the CEO of one of its competitors. (Tab E). MRO rejected subsequent similar requests on February 24 and 28, 2006. (Tab E). Since the suspension of this deposition on January 24, 2006, M2 has refused to produce a witness or take any other steps to conclude it. Moreover, when MRO's counsel held a discovery conference with M2's attorney on February 28, 2006,

M2's counsel stated that M2 would not produce a witness to complete this deposition and that it would file a motion for a protective order in connection therewith.[2]

Due to M2's failure to proceed with the Rule 30(b)(6) deposition regarding M2's trade secrets, MRO was forced to file a motion extending the Scheduling Order deadlines with respect to expert discovery. This motion was allowed on March 2, 2006.

On April 20, 2005, pursuant to Rule 26(c), MRO filed a motion for a protective order ("Motion for Protective Order") [Docket Entry #41] with an "attorney's eyes only" level of protection in order to facilitate the exchange of sensitive business information among M2 and MRO because such an exchange presents a substantial risk of competitive injury. This motion was opposed by M2. On May 20, 2005, the Court allowed MRO's motion for a protective order.

**Argument**

MRO is entitled to an order compelling M2 to produce a witness in response to its Deposition Notice in order to conclude MRO's Rule 30(b)(6) deposition of M2 concerning its alleged trade secrets. Pursuant to Rule 37(a)(2)(B), MRO, as the discovering party, has the right to compel M2 to produce a witness and conclude this deposition. MRO properly served its Deposition Notice six months ago and this deposition was commenced on January 24, 2006. M2 has failed to seek judicial relief in connection with MRO's Deposition Notice and has previously agreed to proceed with the conclusion of this deposition. (Transcript, at 46-48, Tab B).

---

[2] During this discovery conference on February 28, 2006, M2's counsel stated that he would file a motion for a protective order by March 3, 2006. Since no such motion was filed as of March 8, 2006, MRO was left with no choice but to file this motion to compel.

437083.2                                6

M2's purported basis for refusing to proceed with this deposition is disingenuous, untimely and fails to meet the "good cause" standard set forth in Rule 26(c). During a discovery conference held on February 28, 2006 between counsel for the parties, M2's attorney stated that M2 was entitled to have its Rule 30(b)(6) designee review all of MRO's "attorney's eyes only" documents because this was necessary for M2 to adequately respond to the topics in MRO's Deposition Notice.

First, M2's complaints about MRO's "attorney's eyes only" documents are untimely and have been effectively waived by M2. If M2 felt it imperative that Mr. Bevington be permitted to review all of MRO's "attorney's eyes only" documents before testifying about M2's confidential information, it had an obligation to seek judicial relief before the commencement of this deposition. However, M2 failed to do so before this deposition began on January 24, 2006 and, despite several refusals of its subsequent requests that MRO declassify additional documents, it has failed to seek judicial relief to date. Moreover, M2's claims regarding the necessity of reviewing MRO's "attorney's eyes only" documents are belied by Mr. Bevington's failure to even glance at the Declassified Documents prior to appearing on January 24, 2006. Indeed, if M2's recent assertions about the importance of reviewing MRO's documents can be trusted, it is tantamount to an admission that M2 unnecessarily and unfairly put MRO to the trouble and expense of spending several hours taking the deposition of an unprepared witness in January. Finally, M2's delay in raising this issue has forced MRO to file a motion extending the discovery deadlines concerning expert discovery and has thereby unnecessarily delayed this case.

Second, the Court has already rejected M2's position with regard to MRO's "attorney's eyes only" documents and M2 has utterly failed to provided a reasonable basis for such a fundamental departure from the Court's May 20, 2005 Order allowing MRO's Motion for Protective Order. The precise nature of the data protected by MRO's "attorney's eyes only" designation is described with particularity in connection with MRO's Motion for Protective Order and includes information about MRO's business, such as its pricing, sales and marketing strategies, the development of these strategies and MRO's prospective and actual hosting customers. (Motion for Protective Order, p. 4; Affidavit Of Craig Newfield In Support Of MRO Software, Inc.'s Motion, par. 2 [Docket Entry #44]). As detailed in MRO's Motion, MRO and M2 are not only competitors, but M2 has had negotiations with another direct competitor of MRO about a "strategic alliance" involving information sharing and the potential purchase of M2's business. (Motion for Protective Order, pp. 7-9). The circumstances that led to the Court's approval of MRO's Confidentiality Protective Order ("Confidentiality Order") on May 20, 2005, have not changed and the "attorney's eyes only" level of confidentiality continues to be appropriate.

What is more, Massachusetts courts have routinely allowed an "attorney's eyes only" level of confidentiality where there exists a competitive business relationship between parties and have unequivocally rejected parties' claims for access to confidential business data where their counsel is permitted access. *Bailey v. Dart Container Corp. of Michigan*, 980 F.Supp. 560, 583 (D.Mass. 1997) ("The risk of competitive injury is particularly high when the opposing party is a business competitor"); *GTE Products Corp. v. Gee*, 112 F.R.D. 169, 172 (D.Mass. 1986) (The Court found "no basis in law for

the defendants' contention that they have the right to have confidential commercial information of competitors disclosed to them in addition to having the information disclosed to their attorneys."). Accordingly, an order requiring MRO to reveal its sensitive business information to M2 would unnecessarily burden MRO with a substantial risk of competitive injury.

As an additional matter, M2 can easily resolve this dispute by simply hiring an expert witness to testify about M2's trade secrets and unjust enrichment claim. The Confidentiality Order expressly provides both parties with the ability to use an expert witness to review and submit a report concerning documents that have been designated "attorney's eyes only." (Confidentiality Order, par. 5, 7 [Docket Entry #57]).

## Conclusion

For the reasons set forth above, this Motion should be allowed and M2 should be compelled to produce a witness and conclude MRO's Rule 30(b)(6) deposition concerning M2's alleged trade secrets within 10 business days of the Court's order. The Court's order should stipulate that M2's unjust enrichment claim will be dismissed if M2 fails to abide by this requirement that MRO's Rule 30(b)(6) deposition be completed within 10 business days of the Court's order.

                                          MRO SOFTWARE, INC.,

                                        By its attorneys,

                                        /s/ Kurt Bratten
                                        Lee T. Gesmer (BBO No. 190260)
                                        Kurt Bratten (BBO No. 644730)
                                        Gesmer Updegrove LLP
                                        40 Broad Street
                                        Boston, MA 02109
                                        Kurt.Bratten@gesmer.com
                                        (617) 350-6800

Dated: March 8, 2006

## Local Rule 7.1 Certification

      Counsel for MRO Software, Inc. hereby certifies that, on February 28, 2006 at approximately 11:00 am, pursuant to Rule 7.1(A)(2) of the Local Federal Rules of Civil Procedure, he (1) has conferred with counsel for M2 Consulting, Inc. regarding the issues raised in the attached motion, and (2) has attempted in good faith to resolve or narrow the issues presented.

                                        /s/ Kurt Bratten
                                        Kurt Bratten