1

Volume I
Pages 1 to 50
Exhibits 155 - 163

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

- - - - - - - - - - - - - - - - -x
                                  :
M2 CONSULTING, INC.,              :
        Plaintiff,                :
                                  :
    vs.                           :  Civil Action
                                  :  No. 03-12589-GAO
MRO SOFTWARE, INC., and CRAIG     :
NEWFIELD,                         :
        Defendants.               :
                                  :
- - - - - - - - - - - - - - - - -x

    DEPOSITION OF THOMAS RICKEY BEVINGTON AS 30(b)(6) DESIGNEE OF M2 CONSULTING, INC., a witness called on behalf of the Defendants, taken pursuant to the Federal Rules of Civil Procedure, before Daniel P. Wolfe, Registered Professional Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the Offices of Gesmer Updegrove LLP, 40 Broad Street, Boston, Massachusetts, on Tuesday, January 24, 2006, commencing at 2:15 p.m.

PRESENT:

    Fee, Rosse & Lanz, P.C.
        (By Mark S. Resnick, Esq.)
        321 Boston Post Road, Sudbury, MA 01776,
        for the Plaintiff.

    Gesmer Updegrove LLP
        (By Lee T. Gesmer, Esq.)
        40 Broad Street, Boston, MA 02109,
        for the Defendants.

                * * * * *

4

1    A.    Yes.

2    Q.    Tell me, please, what you have done to prepare for your testimony on topics related to trade secrets and confidential information.

5    A.    I have discussed with Jeff Foley the topics of the deposition and gotten his input.

7    Q.    Anything else?

8    A.    That's it.

9    Q.    Your attorney, Mark Resnick, sent me or sent my office a letter four to six weeks ago asking us to redesignate certain documents that had been marked "attorneys eyes only" as "confidential." Are you aware of that?

14    A.    Yes. I was told, I believe, that everything that had originally been designated "attorneys eyes only," except for one document, was now not "attorneys eyes only."

18    Q.    In other words, you were told that we had agreed to redesignate those documents as "confidential"?

21    A.    I believe so.

22    Q.    And have you reviewed those documents, the documents that were reclassified from "attorneys eyes only" to "confidential"?



5

1    A.   No.
2    Q.   Have you reviewed any of MRO's document
3 production in this case --
4    A.   Yes.
5    Q.   -- in preparation for this deposition?
6    A.   Let me think.  No.
7    Q.   Has M2 retained an expert to testify on
8 issues relating to confidential information in this
9 lawsuit?
10   A.   No.
11   Q.   Has M2 interviewed any prospective
12 witnesses on that topic?
13   A.   No.
14   Q.   Have you taken any steps to determine
15 whether MRO has used or is using any confidential
16 information disclosed to it by M2?
17   A.   Probably.
18   Q.   What have you done?  And let me just
19 rephrase that question.  What I really meant to say
20 is have you or has M2 or has anyone on behalf of M2
21 taken any steps to determine whether MRO has used or
22 is using any confidential information or trade
23 secrets owned by M2?
24        MR. RESNICK:  I caution you here not to



1  clients -- can I stop for a minute?
2      Q.   I would like you to stop because my
3  question to you was in fact --
4         MR. GESMER:  Dan, would you read back the
5  original question.
6      Q.   Because I don't think you were addressing
7  the question.
8         *(Question read)
9      A.   And why I was stopping was
10 "misappropriated" is a legal issue.  MRO had access
11 to a lot of our confidential and proprietary
12 information the receipt of which would not be
13 inappropriate under confidentiality arrangements
14 that were in place.
15     Q.   You are right.  I used a legal term, and we
16 spend our whole lives following law school trying to
17 unlearn the use of those terms, but we never
18 succeed.  What information that is confidential or
19 proprietary to M2 has been used by MRO?
20     A.   I wouldn't know.
21     Q.   So as you sit here today, you can't
22 identify anything in response to that question?
23     A.   I don't have access to that information.
24     Q.   Do you believe that M2's pricing of hosting



1  Q.  But he never followed up with a --
2  A.  Sure.  They started pushing for a second
3  agreement.  And they followed that up a lot.
4     MR. GESMER:  It's 4:30.  Let's go off the
5  record.
6     (Discussion off the record).
7     MR. GESMER:  We are going to suspend this
8  deposition.  Mr. Resnick and I have discussed how we
9  are going to proceed.  Mr. Bevington is going to
10 review the MRO documents and determine which
11 documents reflect alleged trade secrets or
12 confidential information of M2.  The deposition will
13 be resumed by telephone at a mutually convenient
14 date.  And in addition, there were several topics,
15 topics involving trade secrets or confidentiality,
16 that Mr. Bevington listed that I hadn't gotten to
17 and will reserve discussions of those two or three
18 or four -- three topics, I believe, until the
19 resumption of the deposition.
20     Is that a fair statement of what we
21 discussed?
22     MR. RESNICK:  Yes, we are in agreement, and
23 we will undertake the efforts necessary to address
24 your concerns and timely recommence.

1       MR. GESMER: The only other side of the
2  coin on this is if there are documents from -- if
3  there are documents created by M2 that were given to
4  MRO that reflect trade secrets or confidential
5  information which M2 believes have been
6  misappropriated, I think we are entitled to that as
7  well. So there are two sides. There are the MRO
8  documents like Exhibits 155 to 163 that reflect,
9  according to M2, confidential information of M2.
10 But there may be documents reflecting information
11 that M2 transmitted to MRO which, independent of any
12 MRO documents, M2 believes MRO has misappropriated.
13 And I believe we are entitled to that as well.
14      MR. RESNICK: We will conduct that review
15 and see what can be located. That will involve,
16 however, doing some e-mail searching with a search
17 engine.
18      MR. GESMER: I wouldn't put the tail before
19 the beast on that. I would think about what
20 evidence you have, independent of MRO documents
21 based on watching MRO's activities in the
22 marketplace, reflects the misappropriation of trade
23 secrets. Once you have identified that item, then
24 thinking is there anything that suggests that that

48

1   was communicated orally or in writing by MRO to M2
2   that would support a misappropriation claim, because
3   there may be nothing at the far end.
4           MR. RESNICK:  Understood.
5           MR. GESMER:  It may be an unnecessary
6   exercise given what Mr. Bevington has said about
7   MRO's activities.  There may be nothing outside of
8   the documents.  But it is very important to MRO that
9   it understand what M2's misappropriation claims are
10  so that it can defend against them properly.
11          All right.  We will suspend now.
12                  (Whereupon, the deposition was
13                  suspended at 4:45 p.m.)